Maurice VerStandig, Esq.
Nevada Bar No.: 15346
**THE VERSTANDIG LAW FIRM, LLC**
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012
Telephone: (301) 444-4600
Facsimile: (301) 444-4600
Email: *mac@mbvesq.com*

Matthew E. Feinberg (*pro hac vice* forthcoming)
Todd Reinecker (*pro hac vice* forthcoming)
Mansitan Sow (*pro hac vice* forthcoming)
Matthew T. Healy (*pro hac vice* forthcoming)
**PILIEROMAZZA PLLC**
1001 G Street, NW, Suite 1100
Washington, D.C. 20001
Telephone: (202) 857-1000
Email: *mfeinberg@pilieromazza.com*
Email: *trienecker@pilieromazza.com*
Email: *msow@pilieromazza.com*
Email: *mhealy@pilieromazza.com*

*Attorneys for Plaintiff VSolvit LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| VSOLVIT LLC, a Nevada limited liability company, | Case Number 2:23-cv-454 |
| Plaintiff, | |
| v. | *Plaintiff's, VSolvit LLC, Verified Complaint for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing* |
| SOHUM SYSTEMS, LLC, a Kansas limited liability company | |
| and | |
| CREATIVE INFORMATION TECHNOLOGY, INC., a Maryland corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

1    Plaintiff, VSolvit LLC ("Plaintiff" or "VSolvit"), a Nevada limited liability company, in

2    the above-entitled action, by and through its undersigned counsel, hereby demands judgment

3    against Defendants, Sohum Systems, LLC ("Sohum"), a Kansas limited liability company, and

4    Creative Information Technology, Inc. ("CITI"), a Maryland corporation (collectively,

5    "Defendants"), jointly and severally, for the equities and amounts set forth herein, and as its

6    Complaint, states as follows:

## NATURE OF THE CASE

8    1.    This matter arises out of a dispute between government contracting teaming

9    partners.

10    2.    In preparation for bidding on a lucrative federal contract with the United States

11    Department of Agriculture, VSolvit, Sohum, and CITI (collectively, the "Parties") entered into an

12    exclusive teaming agreement that set forth the requirements of the Parties' joint business

13    relationship.

14    3.    Specifically, VSolvit or its designee was to serve as the prime contractor (the

15    "Prime") for the bid, while Sohum and CITI were to serve as subcontractors.

16    4.    As the formal bidding process neared, however, Sohum and CITI colluded to

17    breach the exclusivity requirements of the teaming agreement, remove VSolvit as the Prime, and

18    bid together using VSolvit's confidential and proprietary information to do so.

19    5.    VSolvit now seeks emergency equitable relief in the form of a temporary

20    restraining order and preliminary and permanent injunction to prevent Defendants' breach of the

21    teaming agreement and to preclude them from teaming with each other or other contractors, as

22    prohibited by the teaming agreement.

## PARTIES, JURISDICTION, & VENUE

6.      Plaintiff, VSolvit LLC, is a Nevada limited liability company, duly organized and existing and owned and operated under and by virtue of the laws of the State of Nevada, with a principal place of business at 4171 Market Street, Suite 2, Ventura, California, 93003.  For purposes of subject-matter jurisdiction, VSolvit is a citizen of Nevada and Tennessee, which are the states of citizenship of all of its members.

7.      Defendant Sohum Systems, LLC is a Kansas limited liability company, duly organized and existing and owned and operated under and by virtue of the laws of the State of Kansas, with a principal place of business at 9232 W. 143rd Terrace, Overland Park, Kansas 66221.  On information and belief, for purposes of subject-matter jurisdiction, Sohum is a citizen of Kansas, which is the state of domicile of all of its members.

8.      Defendant Creative Information Technology, Inc. is a Maryland corporation, duly organized and existing and owned and operated under and by virtue of the laws of the State of Maryland, with a principal place of business at 12709 Greenbriar Road, Potomac, Maryland 20854. On information and belief, for purposes of subject-matter jurisdiction, CITI is a citizen of Maryland, which is the state of its incorporation and where its principal place of business is located.

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship among the Parties and the amount in controversy exceeds the value of $75,000.00.

10.      This Court has personal jurisdiction over Defendants because Sohum and CITI have purposefully availed themselves of the privilege of conducting activities in the State of Nevada and have sufficient minimum contacts with the State of Nevada such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.  Specifically, Sohum and

1   CITI agreed to the exclusive jurisdiction of the state and federal courts in and for the State of

2   Nevada for resolution of disputes related to breach of the exclusivity provisions of their teaming

3   agreement and for any requests for injunctive relief.

4         11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

5   part of the events or omissions giving rise to this suit occurred in this judicial district, and the

6   Parties agreed that the state and federal courts in and for the State of Nevada would be the

7   stipulated venue for resolution of disputes related to breach of the exclusivity provisions of their

8   teaming agreement and for any requests for injunctive relief.

9                     **FACTS COMMON TO ALL COUNTS**

10  **A.**      **Federal Government Contracting**

11        12.    The Federal Acquisition Regulations ("FAR") system governs the federal

12  government procurement process.  The FAR is a codification and publication of uniform

13  procedures for acquisition by all executive agencies.

14        13.    When a government agency has a requirement to be fulfilled by contractors, it may

15  issue a Request for Proposals ("RFP") or Solicitation for bids ("Solicitation").  The type of

16  economic activity that will be performed under the contract is classified under the North American

17  Industry Classification System ("NAICS").  NAICS uses a six-digit hierarchical coding system to

18  classify all economic activity into twenty industry sectors.

19        14.    Contractors that operate under the corresponding NAICS code(s) assigned to the

20  RFP may submit an offer/proposal/bid for award of a federal government contract.

21        15.    Contractors that operate under the same NAICS codes are competitors because they

22  are eligible to bid and actually bid on federal contracts available under those NAICS codes.

23        16.    Upon submissions of offers/proposals/bids by proposed contractors, the

1   government agency issuing the federal contract reviews the offers and issues a contract award to

2   the successful offeror.

3       17.    Depending on the RFP and contract in question, the Government can award a stand-

4   alone contract; a contract vehicle under which awardees will compete for and/or receive task

5   orders; or task orders under those vehicles.

6   **B.**    **Teaming Arrangements**

7       18.    Under FAR 9.602(a), contractors can combine their capabilities to bid on federal

8   procurement opportunities by executing a teaming arrangement in order to submit a well-rounded

9   proposal that they believe presents better value than submitting a proposal on their own.

10       19.    Teaming arrangements permit contractors to better respond to Solicitations while

11   offering the federal government the benefits of an improved team bid.

12       20.    Pursuant to FAR 9.603, the Government is required to recognize the integrity and

13   validity of contractor teaming arrangements provided those arrangements are identified and

14   company relationships are fully disclosed in an offer.

15       21.    In accordance with FAR 9.601, a teaming arrangement can be composed of a

16   partnership/joint venture or one of the members of the teaming arrangement can act as the prime

17   contractor with the other companies acting as the prime contractor's subcontractors.  The latter

18   type of these arrangements is commonly referred to as a "teaming agreement."

19   **C.**    **Background on the Parties**

20       22.    VSolvit has been in operation since 2006 as a government contractor that offers

21   various services and products primarily centered on Information Technology ("IT").  VSolvit's

22   services include cyber security management, cloud computing, engineering services, and program

23   and project management.

23.     As part of its business, VSolvit participates in the Federal Government's procurement process, wherein VSolvit and other contractors compete against one another by submitting respective bids in response to Solicitations released by various federal agencies.  Also as part of its business, VSolvit performs work as a subcontractor under prime contractors that were awarded government contracts.

24.     VSolvit operates under the following NAICS codes: 541715, 541330, 541370, 541511, 541512, 541513, 541519, 541611, 541614, 541618, 541620, 541690, 541810, 541990, 561110, 561210, 561410, 561990, and 611420.

25.     CITI has been in operation since 1996 as a government contractor that offers various services and products primarily centered on IT.  CITI's services include cyber security management, cloud computing, engineering services, and program and project management.

26.     As part of its business, CITI participates in the Federal Government's procurement process, wherein CITI and other contractors compete against one another by submitting respective bids in response to Solicitations released by various federal agencies.  Also as part of its business, CITI performs work as a subcontractor under prime contractors that were awarded government contracts.

27.     CITI operates under the following NAICS codes: 541511, 323111, 334111, 334112, 334118, 334290, 334511, 334614, 423430, 488119, 488210, 488390, 488490, 488999, 511120, 511210, 517911, 518210, 519120, 519130, 519190, 532420, 541330, 541370, 541430, 541490, 541512, 541513, 541519, 541611, 541614, 541618, 541690, 541990, 561110, 561210, 561320, 561410, 561621, 561990, 611420, 611430, 611710, 621999, 811212, and 811213.

28.     Sohum has been in operation since 2013 as a government contractor that offers various services and products primarily centered on IT.  Sohum's services include cyber security

1  management, cloud computing, engineering services, and program and project management.

2      29.    As part of its business, Sohum participates in the Federal Government's

3  procurement process, wherein Sohum and other contractors compete against one another by

4  submitting respective bids in response to Solicitations released by various federal agencies.  Also

5  as part of its business, Sohum performs work as a subcontractor under prime contractors that were

6  awarded government contracts.

7      30.    Sohum operates under the following NAICS codes: 541511, 541330, 541512,

8  541513, and 541519.

9  **D.    CIO-SP3 Small Business Contract Vehicle**

10     31.    "Chief Information Officer-Solutions and Partners 3 Small Business" ("CIO-SP3

11  SB") is an Indefinite Delivery/Indefinite Quantity ("IDIQ"), unrestricted multiple award contract

12  ("MAC"), small business contract vehicle held by 307 businesses, including VSolvit and Sohum.

13     32.    VSolvit was awarded CIO-SP3 on May 11, 2020, and Sohum received it via

14  Government-approved novation (i.e., acquisition or transfer from another contractor) on December

15  5, 2022.

16     33.    Under CIO-SP3, the Government issues RFPs for task orders.

17  **E.    USDA FPAC Farm Programs Software Delivery (Beech)**

18     34.    USDA FPAC Farm Programs Software Delivery ("Beech") is a task order that is

19  expected to be imminently issued by the United States Department of Agriculture ("USDA"), most

20  likely under the CIO-SP3 SB contract vehicle.

21     35.    By issuing Beech under CIO-SP3 SB, the USDA is limiting competition to

22  contractors who hold a CIO-SP3 SB prime contract.

23     36.    Beech is expected to be a consolidation of several existing task orders, including

1    two task orders currently being performed by VSolvit and the Defendants under a subcontracting

2    relationship: (1) USDA FSA Application Development Common Farm Program Systems; and (2)

3    USDA FSA Application Development Subsidy and Disaster Systems (hereinafter collectively

4    referred to as the "Task Orders" for the "PARMO" contract). Beech is a long-term contract;

5    bidding opportunities do not arise often for such lucrative, long-term contracts, particularly for

6    small businesses.

7    **F.    PARMO Contract**

8    37.    On or about May 23, 2012, the Department of Health and Human Services awarded

9    the CIO-SP3 unrestricted vehicle to CITI.

10    38.    On or about August 15, 2017, the USDA issued to CITI the Application

11    Development Subsidy and Disaster Systems Task Order under the CIO-SP3 unrestricted vehicle.

12    39.    On or about September 11, 2017, the USDA issued, to CITI, the Application

13    Development Common Farm Program Systems Task Order under the CIO-SP3 unrestricted

14    vehicle.

15    40.    On October 12, 2017 and October 16, 2017, VSolvit and the Defendants entered

16    into agreements ("PARMO Agreements") to split the workshare of the Task Orders, with each

17    party being guaranteed at least 25% of the work performed under the PARMO contract.

18    41.    Per the PARMO Agreements, VSolvit and the Defendants were to share revenue

19    and profits equally. Each of the Parties was to receive a 25% workshare, with the remaining 25%

20    to either be allocated to a third party or split evenly among the parties. The parties were to true up

21    the revenue share at the end of each quarter in order to ensure each of them met their desired goal.

22    42.    Over the term of the PARMO Agreements, Defendants failed to allocate equal

23    workshare and revenue to VSolvit. In the quarter ended December 31, 2022, for instance, VSolvit

1   received only 13.46% of the workshare on the PARMO contract, while CITI and Sohum have

2   unduly benefited from 36.77% and 49.77% workshare, respectively.

3   **G.**    **Teaming Agreements for Beech RFP**

4         43.    Given the importance of the Beech contract to the Parties' businesses, in Spring

5   2022, approximately a year before the Beech RFP would be issued, the Parties began to prepare

6   for the upcoming bid.

7         44.    VSolvit, Sohum, and CITI decided to team together because they each possess

8   unique capabilities, experience, and past performance with USDA, including all serving as

9   incumbent contract performers for USDA on the PARMO contract.

10       45.    On June 13, 2022, VSolvit and Defendants entered into and executed Teaming

11   Agreement T724-20889 (hereinafter, the "Agreement") for the pursuit of Beech.  A true and

12   correct copy of the Teaming Agreement, redacted of confidential and proprietary information, is

13   appended hereto and marked as Exhibit A.

14       46.    Under Article 1.1 of the Agreement, VSolvit has the sole and exclusive discretion

15   to serve as or designate the prime contractor ("Prime") for the pursuit of Beech.  Exhibit A § 1.1.

16       47.    Indeed, VSolvit could choose to designate itself or a teaming partner or joint

17   venture in which it was an owner as the Prime, depending on the procurement vehicle under which

18   the Beech RFP would be issued.  *Id.*

19       48.    The position of Prime is of critical importance to VSolvit because it permits VSolvit

20   to maintain control over its workshare, which, as described above, it was not able to do when CITI

21   was Prime for the PARMO contract.

22       49.    The Agreement also requires Defendants to commit to an exclusive relationship

23   with each other to support the designated Prime in the pursuit of Beech.  *Id.* § 1.3.

50.     Specifically, under Article 1.3 of the Agreement, Defendants agreed to

> commit to an exclusive agreement for Subcontractors to support Prime Contractor.  Subcontractors shall not act as a Prime offeror, have not entered into any teaming arrangements with other offerors under the Program prior to this Agreement, nor will they enter into any teaming arrangements with other offerors under the program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. [ ] Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.

*Id.*

51.     Exclusivity was the primary and material purpose of the Agreement.  The fact that the parties had agreed to team exclusively gave VSolvit the trust and peace of mind necessary for VSolvit to share its win themes and strategies and its confidential and proprietary information in pursuit of the best possible proposal for the Beech contract.

52.     VSolvit expected Defendants to abide by the exclusivity provisions in the Agreement.

53.     The exclusivity provision was material to VSolvit, and VSolvit would not have entered into the Agreement without Defendants' promises of exclusivity.

54.     As early as April 2022, VSolvit and Defendants began discussing win themes for their pursuit of the Beech contract.

55.     On May 2, 2022, VSolvit sent an Initial Gate Review email to Defendants indicating that VSolvit would be the Prime under Beech.  Subsequent documentation and correspondence reinforced this designation, including, without limitation, VSolvit's Request For Information response and USDA FPAC Beech 1 - Pre-Proposal Kickoff Presentation.

56.     On May 6, 2022, Plaintiff and Science Application International Corporation (hereinafter, "SAIC"), executed Teaming Agreement T712-20889 for the pursuit of Beech, with

1    SAIC to act as a separate subcontractor to VSolvit.

2        57.    This separate teaming arrangement between VSolvit and SAIC was specifically

3    permitted by Section 1.3 of the Agreement.  *Id.* ("Prime Contractor shall have the right to contract

4    with other entities to supplement Prime Contractor's team for this Solicitation.").

5        58.    The agreement with SAIC contained the same exclusivity provision that was

6    included in the Agreement.  SAIC agreed to this exclusive relationship with VSolvit.

7        59.    VSolvit, Defendants, and SAIC began pre-proposal activities in September 2022.

8        60.    Over the course of the parties' work toward obtaining the Beech contract, VSolvit

9    conducted many team planning meetings designed to move the team's proposal forward in a

10   cohesive and collaborative way.

11       61.    From September 2022 through February 2023, the Parties exchanged confidential

12   and proprietary information related to the upcoming bid, including VSolvit's proposed technical

13   approach to the Beech work.

14       62.    VSolvit provided Defendants its confidential and proprietary information in order

15   to coordinate and enhance the parties' efforts on the Beech bid.

16       63.    From September 2022 through January 2023, the Parties and SAIC worked in

17   collaboration to develop win themes (i.e., strategies for success in the bidding process) for the

18   Beech proposal submission.

19       64.    The win theme documents discuss current known challenges on all programs and

20   developed concepts for mitigation strategies to be employed.  They contain VSolvit's internal

21   process of developing win theme statements as well as complete win theme statements and

22   differentiators.  Essentially, these documents set forth VSolvit's detailed win strategy for the Beech

23   procurement.  Therefore, a competitor's use of this information would give the competitor an

1  undue and unfair competitive advantage in the bidding process and allow the competitor to develop

2  similar win themes or develop points of emphasis against VSolvit's solution to discredit it.

3      65.    These win themes were shared with Sohum and CITI only because the Parties had

4  agreed to an exclusive teaming arrangement where they would combine their capabilities to create

5  the best possible chance that the team, with VSolvit as the Prime, would win the Beech award.

6      66.    Meanwhile, unbeknownst to VSolvit, Sohum and CITI were negotiating and

7  colluding behind the scenes to improperly exit the teaming arrangement, wrest control of the

8  upcoming bid, minimize VSolvit's participation (just as they had done with regard to the PARMO

9  contract workshare), and utilize VSolvit's confidential and proprietary information for their own

10  substantial benefit.

11  **H.    Defendants' Improper Termination for Convenience & Anticipatory Breach of the**
12  **Agreement**
13
14      67.    Sohum's and CITI's scheme came to fruition when, on February 9, 2023, Sohum

15  sent an email to VSolvit stating its desire to terminate the Agreement for convenience pursuant to

16  Article 10.4 and pursue Beech as a Prime offeror.  Sohum also stated its desire to engage SAIC as

17  a subcontractor and to modify the terms of VSolvit's teaming agreement with SAIC.

18      68.    That same day, February 9, 2023, CITI also sent an email to VSolvit stating that it

19  was terminating the Agreement for convenience pursuant to Article 10.4 and would be moving

20  forward under Beech on a team with Sohum as Prime. CITI also expressed its desire to use in its

21  alternate teaming arrangement with Sohum as Prime all of the information it has collected thus far

22  from VSolvit.

23      69.    A termination for convenience does not absolve Defendants from their obligation

24  to team exclusively with VSolvit as the Prime.

25      70.    Sohum's and CITI's notices to VSolvit that they intended to enter into a separate

teaming arrangement for the Beech RFP with SAIC were anticipatory breaches or repudiations of the Agreement.

71.    Section 1.3 of the Agreement specifically states that the Parties "shall not act as a Prime offeror" and will not "enter into any teaming arrangements with other offerors under the Program after this Agreement[,]" which is a specific reference to exclusivity continuing even after a termination.

72.    Nevertheless, on February 9, 2023, both Sohum and CITI expressly and/or impliedly informed VSolvit that they would not perform their obligations under the Agreement.

73.    On February 11, 2023, VSolvit responded back to Sohum to inform it that VSolvit did not agree to a change in Prime.  In this email, VSolvit also reminded Sohum that discussions with SAIC were unacceptable given VSolvit's exclusive relationship with SAIC.  CITI was copied on this email.

74.    SAIC also informed VSolvit that CITI reached out to SAIC directly to discuss Beech.

75.    On February 21, 2023, VSolvit sent letters to Defendants demanding that the Defendants cure their breach of the Agreement by February 23, 2023.  Defendants refused.

76.    Thereafter, the parties continued to discuss possible solutions to resolve Defendants' anticipatory breach of the Agreement.

77.    Defendants are still currently in anticipatory breach of the Agreement and have refused to cure or to commit to performing their obligations under the Agreement.

I.    **Defendants' Access of VSolvit's Beech Team Drive**

78.    After Defendants terminated the Agreement, and while VSolvit was attempting to resolve Defendants' anticipatory breaches, Defendants continued to access, review and copy

confidential and proprietary documents in the VSolvit Beech team drive, including VSolvit's confidential and proprietary information and technical approach to the Beech program. Such information would give Defendants an unfair advantage over VSolvit in competing for Beech if they were permitted to breach the exclusivity clause they agreed to and compete on a separate team.

79.     The day after Sohum notified VSolvit of its termination for convenience of the Agreement, on February 10, 2023, Sohum viewed and copied a technical outline the Parties had compiled for their team use on the Beech proposal.

80.     This document outlines VSolvit's strategy for developing its technical response to the upcoming RFP. Use of this information by a competitor would give that competitor insight into VSolvit's technical approach and knowledge of how VSolvit would present that information to the Government, which they could exploit as a building block to improve upon their proposal.

81.     On February 14, 2023, Sohum viewed and copied a number of other technical documents, including other technical outlines, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information that had been created for use on VSolvit's bid for the Beech contract.

82.     On February 15, 2023, Sohum viewed and copied documents related to the Parties' prior experience on similar projects and resumes of key personnel.

83.     On March 2, 2023, Sohum viewed VSolvit's technical outline. The document includes highly confidential and proprietary details leading into VSolvit's proposed solution for the Beech RFP.

84.     Sohum viewed the USDA Beech Technical 1 Outline twice: first during a live collaborative technical outline discussion in which Sohum was able to see all of the updates made

1    to the document as they occurred; and the second time after the discussion had concluded.

2    85.    A bidding party's technical approach is a critical factor—indeed often the most

3    critical factor—in government procurements.    Technical capability is what distinguishes a

4    successful contractor from an unsuccessful one.

5    86.    All of the information viewed and downloaded was confidential and proprietary

6    and, if obtained by a competitor, would give that competitor an unfair advantage in the bidding for

7    the Beech contract through detailed knowledge of VSolvit's approach to winning the contract.

8    87.    The only reason Sohum and CITI would access, review, and download VSolvit's

9    confidential and proprietary information after termination is to use the same to compete against

10    VSolvit for Beech.

11    88.    VSolvit invested many hours and company resources in proposal preparation

12    efforts for the benefit of all team members, and exchanged confidential and proprietary

13    information with Defendants, in reliance on the Parties' mutual promises, as set forth in the

14    Agreement, specifically their agreement to combine their capabilities and team exclusively to

15    respond to the Beech RFP.

16    89.    Those exclusivity requirements were intended by all Parties to last even "after this

17    Agreement" was terminated.  Exhibit A § 1.3.

18    90.    VSolvit's attempts to encourage Defendants to cure their anticipatory breach were

19    unsuccessful, and Defendants refused to abide by the exclusivity requirements of the Agreement

20    continues.

21    91.    If Defendants are not enjoined immediately from breaching the exclusivity

22    provision of the Agreement, VSolvit will suffer imminent and irreparable harm.  The Beech RFP

23    is expected to be released within weeks, and VSolvit does not have sufficient time to create a new

1    proposal approach or locate and team with other capable contractors on the Beech effort.  Proposals

2    are expected to be due either two weeks or one month following release of the RFP, in the USDA's

3    discretion, consistent with industry practice.

4    92.    Given the imminent release date for the Beech RFP, all or virtually all quality

5    teammates are already part of other teams and deep in the process of preparing proposals.  Most,

6    if not all, competitive teams have been preparing for proposal submission for months.

7    93.    Even if VSolvit was able to identify teaming partners, VSolvit would not have the

8    time to prepare a competitive proposal or develop relationships where the parties would be

9    comfortable exchanging the kind of confidential and proprietary information necessary for a

10   successful bid.  It takes months of persistent work and team collaboration to prepare a successful

11   bid for a contract like Beech.  If Defendants are permitted to breach their exclusivity obligations,

12   VSolvit would be forced to start over from scratch to compete for Beech.

13   94.    With the odds stacked heavily against it, VSolvit may not be able to submit a bid

14   for Beech at all.

15   95.    If it can submit a bid, VSolvit will have virtually no chance to meaningfully

16   compete for award and will be assured of certain defeat in the bidding process, unless the

17   Agreement is enforced.

18   96.    Moreover, VSolvit will suffer imminent and irreparable harm because Sohum and

19   CITI will be able to use Vsolvit's confidential and proprietary information to compete against

20   Vsolvit for the Beech contract, giving them an unfair competitive advantage during the

21   procurement process.

22   97.    Plaintiff also will suffer irreparable harm in the form of the loss of a fair opportunity

23   to compete for a lucrative federal contract.

98.     Defendants will suffer no harm if they are enjoined from competing against Vsolvit, because such an injunction would merely compel Defendants to comply with the obligations to which they previously agreed.  Defendants will still be permitted to bid on Beech as part of the Vsolvit team and will still be able to obtain the same workshare on any eventual Beech award to Vsolvit as the Prime.

99.     Because Vsolvit will suffer imminent irreparable harm in the event Defendants are permitted to breach the exclusivity requirements of the Agreement, but Defendants will not suffer any harm if they are compelled to comply with the terms of the Agreement, the balance of hardships weigh in favor of entering a temporary restraining order and preliminary and permanent injunctive relief preventing Defendants from breaching the exclusivity provision of the Agreement.

100.    The public interest is best served by enforcing contracts, particularly those entered into at arms-length, such as the Agreement.

101.    As a direct and proximate result of Defendants' anticipatory breach and repudiation of the Agreement, their improper access and use of VSolvit's confidential and proprietary information, and the other wrongdoing described herein, Plaintiff has been and will continue to be damaged.

## CAUSES OF ACTION

### Count I – Anticipatory Breach of Contract
### (Against Defendants Sohum and CITI)

102.    VSolvit incorporates by reference the allegations contained in Paragraphs 1 through 101 of this Complaint as if fully set forth and restated herein.

103.    On June 13, 2022, Plaintiff and Defendants entered into the Agreement, which is a valid and binding contract.

104.    Plaintiff satisfied and performed all of its conditions under the Agreement and is ready, willing, and able to continue performing under the terms of the Agreement.

105.    The Agreement contains an exclusivity clause at Article 1.3, which obligated Defendants to "commit to an exclusive agreement for Subcontractors to support Prime Contractor" and "be teamed exclusively with Prime Contractor with regards to the" Beech program and prohibited Defendants from "enter[ing] into any teaming arrangements with other offerors under the Program after this Agreement . . . ."  It also expressly prohibited Defendants from acting as a Prime offeror for the Beech contract.  Exhibit A § 1.3.

106.    Defendants anticipatorily breached the Agreement on February 9, 2023 by, *inter alia*, informing VSolvit that they were terminating the Agreement for convenience in order to team together to submit a bid for the Beech contract with Sohum to serve as the Prime.

107.    For Sohum to serve as a Prime was in direct violation of Sohum's contractual obligation to "not act as a Prime offeror" on the Beech contrat.  *Id.*

108.    For CITI to team with Sohum without VSolvit as the Prime was in direct violation of CITI's contractual obligation not to "enter into any teaming arrangements with other offerors" for the Beech contract.

109.    As a direct and proximate result of Defendants' anticipatory breach and repudiation of the Agreement, their improper access and use of VSolvit's confidential and proprietary information, and the other wrongdoing described herein, Plaintiff has been and will continue to be damaged.

110.    If Defendants are not enjoined immediately from breaching the exclusivity provision of the Agreement, VSolvit will suffer imminent and irreparable harm.  The Beech RFP is expected to be released within weeks, and VSolvit does not have sufficient time to create a new

1  proposal approach or locate and team with other capable contractors on the Beech effort.

2  Moreover, VSolvit will suffer imminent and irreparable harm because Sohum and CITI will be

3  able to use VSolvit's confidential and proprietary information to compete against VSolvit for the

4  Beech contract, giving them an unfair competitive advantage during the procurement process.

5      111.    Defendants will suffer no harm if they are enjoined from competing against

6  VSolvit, because such an injunction would merely compel Defendants to comply with the

7  obligations to which they previously agreed.  Defendants will still be permitted to bid on Beech as

8  part of the VSolvit team and will still be able to obtain the same workshare on any eventual Beech

9  award to VSolvit as the Prime.

10     112.    Because VSolvit will suffer imminent irreparable harm in the event Defendants are

11  permitted to breach the exclusivity requirements of the Agreement, but Defendants will not suffer

12  any harm if they are compelled to comply with the terms of the Agreement, the balance of

13  hardships weighs in favor of entering an injunction preventing Defendants from breaching the

14  exclusivity provision of the Agreement.

15     113.    The public interest is best served by enforcing contracts, particularly those entered

16  into at arms-length, such as the Agreement.

17     **Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing**
18                     **(Against Defendants Sohum and CITI)**
19
20     114.    VSolvit incorporates by reference the allegations contained in Paragraphs 1 through

21  101 of this Complaint as if fully set forth and restated herein.

22     115.    On June 13, 2022, Plaintiff and Defendants entered into the Agreement, which is a

23  valid and binding contract.

24     116.    Plaintiff satisfied and performed all of its conditions under the Agreement and is

25  ready, willing, and able to continue performing under the terms of the Agreement.

117.   The Agreement contains an exclusivity clause at Article 1.3, which obligated Defendants to "commit to an exclusive agreement for Subcontractors to support Prime Contractor" and "be teamed exclusively with Prime Contractor with regards to the" Beech program and prohibited Defendants from "enter[ing] into any teaming arrangements with other offerors under the Program after this Agreement . . . ."

118.   The exclusivity provisions of the Agreement were an integral and material part of the Agreement because they fostered trust among the Parties and allowed VSolvit to share confidential and proprietary information about the upcoming bid and VSolvit's strategy for winning the Beech contract as a Prime without the inherent risk and concern that such information would be shared with competitors or used to VSolvit's detriment.

119.   Defendants breached their duty of good faith and fair dealing when they undermined the intent and spirit of the Agreement which was centered around exclusivity.

120.   Specifically, on February 9, 2023, Defendants breached the implied covenant of good faith and fair dealing by, *inter alia*, informing VSolvit that they were terminating the Agreement for convenience in order to team together to submit a bid for the Beech contract with Sohum to serve as the Prime.

121.   Even if Defendants' termination for convenience technically complied with the terms of the Agreement, the termination was made in bad faith in an attempt to circumvent Defendants' obligations under the Agreement and undermined the intent and spirit of the Agreement which was centered around exclusivity and collaboration.

122.   The parties explicitly agreed that VSolvit would designate the Prime and the others would serve as subcontractors in sole pursuit of Beech.  Sohum's independent decision to serve as Prime despite the prohibitions it agreed to in the Agreement, and CITI's desire to team with Sohum

1    in lieu of its binding arrangement with VSolvit, all facilitated through a misguided and bad faith

2    termination for convenience, deprives VSolvit of the benefit of the bargain it justifiably expected

3    at the time of contracting.

4         123.    Furthermore, Defendants' termination for convenience with the intention of

5    bidding competitively against VSolvit is an unfair act that works to VSolvit's disadvantage since

6    it deprives VSolvit of its right to designate the Prime and the benefit of teaming with the other

7    parties as subcontractors.

8         124.    Because Defendants terminated the Agreement for convenience in an attempt to

9    avoid their obligations under the exclusivity clause, they deprived VSolvit of its justified

10   expectations under the Agreement, specifically that it would exclusively team with and combine

11   capabilities with Sohum and CITI in order to put forth a strong bid for the Beech work.

12        125.    As a direct and proximate result of Defendants' breach of the implied covenant of

13   good faith and fair dealing Plaintiff has been and will continue to be damaged.

14   **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiff VSolvit prays for judgment against Defendants, jointly and

16   severally, and respectfully requests that this Court award the following relief:

17        1.    A temporary restraining order, and preliminary and permanent injunction, upon the

18   filing of a proper motion, enjoining Defendants from bidding on the Beech RPF as a Prime

19   (whether independently or as part of a team) or as a subcontractor on any team other than the

20   VSolvit team expressly contemplated by the Agreement;

21        2.    A temporary restraining order, and preliminary and permanent injunction, upon the

22   filing of a proper motion, enjoining Defendants from entering into any teaming arrangements with

23   other offerors under the Beech program now or at any time hereafter;

3.      A temporary restraining order, and preliminary and permanent injunction, upon the filing of a proper motion, compelling Defendants to team with VSolvit on an exclusive basis for the award of the Beech contract, including the submission of a proposal in good faith;

4.      An award of actual damages, compensatory damages, and consequential damages in an amount to be proven at the time of trial, but in no event less than $1,000,000.00;

5.      An award of pre-judgment and post-judgment interest on such monetary relief;

6.      An award of restitution and the disgorgement from the Defendants of all amounts obtained through their wrongful conduct;

7.      An award of attorneys' fees and costs VSolvit incurs in litigating this dispute; and

8.      Any and all other relief which this Court deems necessary and appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury on all matters so triable as of right.

1

2

3

4

5

6

7

8

9

10

11

12

13

**VERIFICATION**

**OATH AND AFFIRMATION**

    I, the undersigned, a citizen of the United States and a resident of the State of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the entirety of this document and that the foregoing is true and correct to the best of my knowledge.

Executed this _27th_ day of March 2023 at _4171 Market Street Suite2, CA_.
                                          _Ventura_

Stephen J. Lee
General Counsel
VSolvit, LLC

{00164156 }                                22

Dated: March 27, 2023                    Respectfully Submitted,

                                         **VSolvit, LLC**
                                         By Counsel:

                                         /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig
                                         Nevada Bar. No. 15346
                                         **THE VERSTANDIG LAW FIRM, LLC**
                                         1452 W. Horizon Ridge Pkwy, #665
                                         Henderson, Nevada 89012
                                         Telephone: (301) 444-4600
                                         *mac@mbvesq.com*

                                         Matthew E. Feinberg (*pro hac vice* forthcoming)
                                         Todd Reinecker (*pro hac vice* forthcoming)
                                         Mansitan Sow (*pro hac vice* forthcoming)
                                         Matthew T. Healy (*pro hac vice* forthcoming)
                                         **PILIEROMAZZA PLLC**
                                         1001 G Street, NW, Suite 1100
                                         Washington, D.C. 20001
                                         Telephone: (202) 857-1000
                                         *mfeinberg@pilieromazza.com*
                                         *trienecker@pilieromazza.com*
                                         *msow@pilieromazza.com*
                                         *mhealy@pilieromazza.com*