# EXHIBIT A



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

This Teaming Agreement, together with the Exhibits and Attachments hereto (hereinafter referred to as this "**Agreement**"), is entered into and made effective as of June 13, 2022 ("**Effective Date**"), by and between:

1. **VSolvit LLC**, a Nevada limited liability company with an office located at 4171 Market Street, Suite 2, Ventura, CA 93003, (hereinafter referred to as "**VSolvit**"),
2. **Sohum Systems, LLC**, a Kansas limited liability company with an office located at 7900 College Boulevard, Suite 135, Overland Park, KS 66210 (hereinafter referred to as a "**Sohum**"), and
3. **Creative Information Technology, Inc. (CITI)**, a Maryland corporation with an office located at 7799 Leesburg Pike, Suite 500N, Falls Church, VA 22043 (hereinafter referred to as a "**Subcontractor**").

Prime Contractor (defined below) and Subcontractors may be individually referred to herein as a "**Party**" or together as the "**Parties**."

**WHEREAS**, the USDA (hereinafter referred to as "**Customer**") intends to issue a Solicitation No. TBD (hereinafter referred to as the "**Solicitation**") for the acquisition of USDA FPAC Beech (hereinafter referred to as the "**Program**");

**WHEREAS**, Prime Contractor intends to pursue the Program in response to the Solicitation and has proposed that Prime Contractor and Subcontractors team their diverse and complementary capabilities in accordance with Federal Acquisition Regulations (FAR) Subpart 9.6—Contractor Team Arrangements;

**WHEREAS**, Prime Contractor and Subcontractors have determined, by teaming their complementary talents and capabilities they will offer the Customer a superior combination of management, technical performance, cost, and delivery schedule to meet the Customer's requirements for the Program and will not significantly reduce competition for the Program; and

**WHEREAS,** Subcontractors wish to support Prime Contractor's pursuit of the Program as team members and, if Prime Contractor is awarded a prime contract (hereinafter referred to as the "**Prime Contract**") by the Customer and the Customer approves of Prime Contractor's use of Subcontractors, to execute and perform subcontracts (each hereinafter referred to as the "**Subcontract**") with Prime Contractor for the work described in the Statement of Work appended as Exhibit A hereto.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and conditions hereinafter set forth, it is mutually agreed by and between the Parties as follows:

## ARTICLE 1 - RELATIONSHIP OF THE PARTIES

**1.1** At this time, it is unclear under what contract vehicle the Program will be released. Once a contract vehicle is determined for the Program, VSolvit may, at its sole discretion, designate itself, one of its SBA-approved proteges (e.g., Sohum), one of its SBA-approved Mentor-Protégé Joint Venture (e.g., SV Synergies, LLC, a joint venture between VSolvit and Sohum), or one of its industry partners as the prime contractor for pursuit of the Program. The entity ultimately designated by VSolvit to serve as the prime contractor in pursuit of the Program shall hereinafter be referred to as the "**Prime Contractor**." The Parties agree to execute any and all separate teaming agreements under the same terms herein necessary to formalize the final arrangement based on VSolvit's prime contractor designation.



# TEAMING AGREEMENT
## VSolvit, Sohum Systems, and CITI
### T724-20889

**1.2** In the event that a Prime Contract is awarded to Prime Contractor for the Program, Prime Contractor shall act as prime contractor and Subcontractors shall act as first-tier subcontractors to Prime Contractor under the Prime Contract.

**1.3** Exclusivity: Under this Agreement, Subcontractors and Prime Contractor commit to an exclusive agreement for Subcontractors to support Prime Contractor. Subcontractors shall not act as a Prime offeror, have not entered into any teaming arrangements with other offerors under the Program prior to this Agreement, nor will they enter into any teaming arrangements with other offerors under the Program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. Prime Contractor shall have the right to contract with other entities to supplement Prime Contractor's team for this Solicitation. Further, as a material condition under this Agreement, Subcontractors shall not compete directly or indirectly as a teammate or otherwise participate in proposal activities or capture activities for renewals, options or natural follow-on business to Prime Contractor's Prime Contract, without the prior written approval of Prime Contractor. Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.

**1.4** Nothing herein shall be deemed to confer any right or impose any obligation or restriction on the Parties with respect to any other program effort or marketing activity at any time undertaken by the Parties, jointly or separately; or limit the rights of either Party to promote, market, sell, lease, license, or otherwise dispose of its standard products or services, so long as the Parties comply with the terms of Article 6.

## ARTICLE 2 - RESPONSIBILITIES OF THE PARTIES

**2.1** The Parties shall use good faith efforts to secure the Prime Contract under the Program.  The Parties agree to work together to pursue the Program and to ensure that appropriate resources are assigned to the pursuit.

**2.2** Subcontractors' responsibilities in connection with the work under the Solicitation shall be as set forth in the Statement of Work appended as Exhibit A hereto.

**2.3** Upon mutual agreement, Subcontractors shall:
    **2.3.1** Prepare appropriate and qualified personnel to support the pursuit and, on a schedule agreed to by the Parties, provide Prime Contractor with sufficient technical, management, price, past performance, and any other relevant information that is responsive to the portion of the Solicitation set forth in Exhibit A hereto for which Subcontractors are responsible;
    **2.3.2** Provide accurate pricing information in sufficient detail to be responsive to the Solicitation and to permit the negotiation of a Prime Contract with the Customer and a subcontract between the Parties;
    **2.3.3** Provide sanitized cost or pricing data to Prime Contractor in all instances where Prime Contractor is required by the Solicitation and/or Prime Contract or otherwise requested or required by the U.S. Government or Customer to provide cost or pricing data.  Subcontractors agree that they shall submit their best possible price for the Program in accordance with its corporate policies and procedures. Subcontractors agree to cooperate with Prime Contractor in establishing a competitive pricing strategy for their proposal. Upon request of Prime Contractor, Subcontractors will provide certifications or other required pricing documentation or support,



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

unless Subcontractors are exempt from such disclosures. Subcontractors, at their option, may submit any proprietary supporting cost or pricing data directly to the Customer or appropriate Government audit agency; and

**2.3.4** Shall ensure that direct costs are within an acceptable range so that there is little price/cost realism risk**;** and

**2.3.5** Complete and provide to Prime Contractor all appropriate questionnaires, forms, representations, or certifications that may be required of subcontractors.

**2.3.6** Provide relevant past performance references in the required format in accordance with the Solicitation and Prime Contractor directions, and satisfy all requests for past performance information made in the Solicitation. Subcontractors agree to inform Prime Contractor of any potentially adverse past performance information as soon as possible after becoming aware of the adverse information.

**2.4** Prime Contractor shall, unless the restrictions on classified materials precludes otherwise:

**2.4.1** Furnish Subcontractors all solicitations, amendments and modifications thereto, and any other information pertinent to the work to be performed by Subcontractors that is issued in connection with the Program;

**2.4.2** Inform Subcontractors of significant events, dealings, and milestones regarding the Program;

**2.4.3** Maintain overall responsibility for pursuing the Program in accordance with the Solicitation;

**2.4.4** Identify Subcontractors as a proposed subcontractor for that portion of the work that will subsequently be defined per the SOW and resulting Subcontract using the process set forth in Exhibit A hereto, and using criteria that are mutually developed by the Prime and its first-tier subcontractors;

**2.4.5** Maintain on behalf of the team, exclusive responsibility for all contacts, communications, and negotiations with the Customer relating to the Program;

**2.4.6** Provide to Subcontractors a copy of all technical proposals (or portions thereof) submitted to the Customer that refer to the Subcontractors' proposed scope of work, or that would commit any of the Subcontractors' resources to perform work under the resulting Subcontract; and

**2.4.7** Prior to Prime Contractor's submission of its proposal to the Customer, and any subsequent revised proposal(s), Prime Contractor shall notify Subcontractors of any changes to Subcontractors' proposal to Prime Contractor, including but not limited to pricing adjustments, as it is utilized in Prime Contractor's proposal(s) to the Customer. Pricing adjustments to Subcontractors' proposals must be agreed to in writing by Subcontractors prior to submission to the Customer.

## ARTICLE 3 - CONFLICT OF INTEREST

**3.1** Subcontractors must immediately notify Prime Contractor if, at any time during the term of this Agreement, Subcontractors become aware that they have an actual or potential conflict of interest, including without limitation a relationship of any nature which may affect or which may reasonably appear to affect Subcontractors' objectivity or ability to perform the Work ("Conflict of Interest") in accordance with FAR Subpart 9.5.

**3.2** As a condition to this Agreement, Subcontractors must complete, execute, and adhere to the Subcontractor Organizational and Consultant Conflicts of Interest ("OCCI") Statement, attached hereto as Exhibit B.



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**3.3** As a material obligation hereunder, Subcontractors agree that they will not, during the term of this Agreement, form a relationship that results in a Conflict of Interest.

## ARTICLE 4 - COSTS, EXPENSES, AND LIABILITY

**4.1** Each Party shall be liable for and bear its own costs and expenses incurred in connection with the performance of its other obligations under this Agreement.

**4.2** ALONG WITH WHAT IS PROVIDED FOR IN THAT CERTAIN NON-DISCLOSURE AGREEMENT BETWEEN THE PARTIES, VS1622-20889, DATED JUNE 13, 2022 (the "NDA"), INCORPORATED INTO THIS AGREEMENT AS EXHIBIT C, THE PARTIES MAY BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE, AND ANY OTHER TYPE OF INDIRECT DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH OF ANY TERMS THEREOF, UNDER ANY THEORY OF LAW OR EQUITY EVEN IF THAT PARTY HAS NOT BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS INCLUDES RECOVERY OF LOSS OF USE, LOST INCOME, LOST OR ANTICIPATED PROFITS, LOST REVENUE OR BUSINESS, AND THE COST OF PROCURING SUBSTITUTE GOODS OR SERVICES.

## ARTICLE 5 – SUBCONTRACT

**5.1** In the event Prime Contractor is awarded a Prime Contract for the Program, the Parties shall promptly enter into good faith negotiations to reach agreement with respect to the terms and conditions of a Subcontract. The Subcontract shall be executed within thirty (30) days from the date the Prime Contract is awarded or such longer period if the Parties mutually agree in writing.

**5.2** The Subcontract shall include, among other appropriate provisions, those provisions of the Prime Contract that by their terms should be passed on to the Subcontractors.

**5.3** The Subcontract shall be subject to the following conditions:

**5.3.1** Mutual written agreement upon a schedule, statement of work, and subcontract terms and conditions;

**5.3.2** Pricing terms and Subcontractors' scope of work shall be consistent with those terms set forth in any quotation or pricing submitted by Subcontractors and Exhibit A, or as otherwise mutually agreed to in writing between Prime Contractor and Subcontractors resulting from Prime Contractor's negotiations with the Customer. Pricing shall be consistent with the last prices proposed in writing by the Subcontractors and accepted by Prime Contractor; and

**5.3.3** Customer approval of Subcontractors as subcontractors to Prime Contractor, provided that Prime Contractor shall take reasonable action to obtain such Customer approval.

**5.4** The Parties acknowledge and agree that the Customer may mandate certain flow-down provisions in the Prime Contract and that such provisions may impact the terms of the Subcontract.

## ARTICLE 6 - DISCLOSURE AND PROTECTION OF PROPRIETARY AND CONFIDENTIAL INFORMATION

**6.1** During the term of this Agreement, the Parties may exchange proprietary and confidential information. Such disclosures shall be made in accordance with the NDA, the terms of which may survive the termination of this Agreement.



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**6.2** To the extent that the obligations of the Parties hereunder require or involve access to information protected under the security laws of any country, the regulations, provisions, and instructions contained in applicable government security laws and manuals shall apply.

## ARTICLE 7- INTELLECTUAL AND PROPRIETARY PROPERTY RIGHTS

Nothing contained in this Agreement shall be construed as granting to any party (including the Customer, the Parties to this Agreement, the U.S. Government or any third party) a license, express or implied, under any patent, copyright, trade secret, or other intellectual property right now or hereafter owned, obtained, or licensable by a Party to this Agreement. Any intellectual property made in the performance of this Agreement solely by the personnel of one Party shall be or remain the sole and exclusive property of that Party, regardless of whether it is completed or reduced to practice thereafter. In the event that employees of the Parties jointly produce copyrightable material, copyright registration shall be filed by attorneys mutually acceptable to both Parties, such material shall be jointly owned and copyrighted with rights reserved for both Parties, and both Parties shall share equally in the cost of registering the copyright. Notwithstanding the foregoing, nothing in this clause is intended to extend property claims in a manner that conflicts with standing U.S. law.

## ARTICLE 8 - INVENTIONS

If during the performance of this Agreement inventions result, the following shall apply: each invention, discovery, or improvement (hereinafter referred to as "**Invention**") conceived or first actually reduced to practice by one or more employees of one of the Parties, shall be the sole property of the Party whose employee or employees made the Invention. Any Inventions conceived or first actually reduced to practice jointly by employees of both Parties hereto shall be jointly owned by both Parties. Patent applications covering such joint Inventions shall be filed by attorneys mutually acceptable to both Parties and the cost therefore shall be equally shared. In the event one of the Parties does not desire to file a patent application covering a joint Invention in any particular country or to equally share in the expenses therefore, the other Party shall have the right, at its own expense, to file such application and shall have control over the prosecution of such application and maintenance of any patent which may issue thereon, including the sole right to abandon such application or patent at any time. Notwithstanding the foregoing, nothing in this clause is intended to extend property claims in a manner that conflicts with standing U.S. law.

## ARTICLE 9 – PUBLICITY

**9.1** Any publicity or advertising in connection with the subject matter of this Agreement proposed by Subcontractors shall be subject to the prior written approval of the Prime Contractor, if such approval is required. The Prime Contractor will not grant such approval without having first obtained the written approval of the Customer. Approval shall not be unreasonably withheld by the Prime Contractor.

**9.2** No name, logo, and/or trademark of a Party hereto may be used by the other for any purpose without the prior written approval of such Party, which shall not be unreasonably withheld.

**9.3** Notwithstanding the foregoing, the content of this Agreement may be made known to appropriate Customer and/or U.S. Government representatives.



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**ARTICLE 10- TERM AND TERMINATION**

**10.1** This Agreement shall become effective as of the Effective Date and shall terminate upon the earliest of the following occurrences, unless mutually extended in writing:

**10.1.1** Cancellation of the Program, or formal retraction of the Solicitation;

**10.1.2** The Customer materially changes the requirements of the Solicitation and both Parties agree that a teaming agreement is no longer in the best interests of the Parties;

**10.1.3** The Customer releases the Solicitation under a different competition type (e.g., full and open, set aside) than what is specified in this Agreement.

**10.1.4** Award of a prime contract to a party other than Prime Contractor (unless such award has been formally protested by Prime Contractor and the Parties agreed to remain as a team during the pendency of the protest);

**10.1.5** Award of a negotiated subcontract by Prime Contractor to Subcontractors that reflects the Parties' obligations set forth in pertinent provisions of this Agreement, in which case the terms of the Subcontract shall govern the relationship between the Parties and shall supersede the terms hereof;

**10.1.6** The Customer (or appropriate U.S. Government agency) specifically rejects the portion of the proposal relating to Subcontractors' work or disapproves the intended award of a subcontract to Subcontractors; provided that the terms of the Subcontract between Prime Contractor and Subcontractors cannot be reasonably altered or changed to effect approval thereof by the Customer (or the U.S. Government);

**10.1.7** Mutual consent of the Parties as set forth in a rescission agreement.

**10.1.8** Inability of the Parties negotiating in good faith to finalize the terms of a subcontract within thirty (30) days from the date of the commencement of negotiations between Prime Contractor and Subcontractors, or such longer period as allowed by Section 5.1 herein;

**10.1.9** A decision by either Party that it does not wish to participate in the Procurement or in any response to the Solicitation, in any manner, provided that such decision is communicated in writing to the other Party at least thirty (30) days prior to the due date of the initial proposal, offer or quote;

**10.1.10** The elapse of one (1) year after the Effective Date hereof, provided however, that this Agreement shall be extended automatically for one (1) additional year if the Customer has not yet awarded the Prime Contract, or by mutual agreement for a reasonable period of time for completion of pre-contract procurement activities by the Customer, including, without limitation, review and approval of the Prime Contract award, if such have been initiated but not completed by the termination date of this Agreement, or to secure the U.S. Government's Contracting Officer consent/approval for the placement of the Subcontract between Prime Contractor and Subcontractors, to the extent such consent/approval is required by the Prime Contract;

**10.1.11** If either Party is suspended, debarred or otherwise unable to perform its obligations in connection with this Agreement or the Program;

**10.1.12** If either Party becomes insolvent, files for bankruptcy, is the subject of involuntary bankruptcy proceedings, has a receiver appointed, or has its assets assigned; or

**10.1.13** If either Party determines that an organizational conflict of interest (OCI) exists in accordance with FAR Subpart 9.5 that cannot be reasonably mitigated to the satisfaction of the Customer, despite the submission of an OCI Mitigation Plan for the Customer's review and approval; or

**10.1.14** Either Party does not possess, or is unable to obtain, the requisite security clearance(s).



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**10.2** RESERVED

**10.3** RESERVED

**10.4** Any Party may, for its convenience, terminate this Agreement, or any portion thereof, upon written notice to the other Parties.

**10.5** Either Party may terminate this Agreement for material breach by the other Party following written notification that the other Party has failed to perform its obligations(s), unless the defaulting Party cures such breach or default in all material respects within ten (10) days after receiving written notice of such breach or default.

## ARTICLE 11 - INDEPENDENT CONTRACTORS

**11.1** The Parties agree that the purpose of this Agreement is to form a "Contractor Team Arrangement" as provided in Federal Acquisition Regulation Subpart 9.6, and more specifically defined in Subpart 9.601 (2). Nothing in this Agreement shall be deemed to constitute, create, give effect to, or otherwise recognize a joint venture, partnership, or formal business entity of any kind between the Parties and the rights and obligations of the Parties shall be limited to those expressly set forth herein.  It is the understanding of both Parties that, as of the Effective Date, there is adequate competition in the industry for both the Prime Contractor's and Subcontractors' scope of work and that neither Party is the sole provider of any single product or service that is essential to compete for award of the Program.

**11.2** It is expressly understood that both Prime Contractor and Subcontractors are, and shall remain at all times, independent contractors pursuant to this Agreement and nothing herein shall be construed as constituting, either directly or indirectly, Prime Contractor or Subcontractors as an agent, servant, representative or employee of the other. Each Party agrees that it does not have, nor shall it hold itself out as having, any right, power, or authority to create any contract obligation, express or implied, on behalf of, in the name of, or binding upon the other and agrees not to undertake any action which would tend to mislead anyone in this regard.

**11.3** Nothing herein shall be construed as providing for joint control, joint property, joint liability for losses and expenses or joint participation in profits or losses.  No relationship other than that created by and set forth in this Agreement shall be established by any reference to the Parties operating as a "team" or "teammates."

## ARTICLE 12 - ADDITIONAL OBLIGATIONS

The Parties agree to comply with the requirements of the Procurement Integrity Act (41 U.S.C. 423), the Byrd Amendment (31 U.S.C. 1352), as amended by the Lobbying Disclosure Act of 1996, applicable federal gift/gratuity and bribery laws and any implementing regulations issued pursuant thereto. Each Party shall require any consultants who are retained by the Party to provide services, information, advice or direction in connection with the work to be performed on such Party's behalf hereunder or in any manner connected with the Solicitation to comply with all reporting, disclosure and certification requirements under the Solicitation and any laws or regulations which now exist or may become effective during the term of this Agreement.



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**ARTICLE 13 - COMPLIANCE WITH EXPORT AND IMPORT LAWS AND REGULATIONS**

**13.1** Each Party agrees to comply with all applicable U.S. export and import laws and regulations, including the International Traffic in Arms Regulations (ITAR) governing the export of technical data and provision of defense services. Performance of this Agreement, including the NDA, and the Subcontract contemplated hereunder are subject to obtaining any licenses or approvals which may be required under the export or import laws or regulations of any country or countries controlling or having jurisdiction over exports or imports covered or contemplated hereunder, including, but not limited to, all applicable U.S. laws and regulations governing the export and import of technical data.

**13.2** The Parties further acknowledge that neither this Agreement nor any Subcontract which may result from this Agreement which contemplates the export of technical data or defense services subject to the ITAR shall be binding until a Technical Assistance Agreement setting forth the terms and conditions governing the export of technical data or defense services from the United States as prescribed in the ITAR has been approved by the requisite U.S. Government authorities.

**ARTICLE 14 – DISPUTES**

**14.1** Any dispute, controversy or claim arising out of or in connection with this Agreement that relates to (a) a Party's breach of confidentiality obligations; (b) exclusivity under this Agreement; (c) infringement or misappropriation of intellectual property rights; or (d) requests for injunctive relief of any kind including, without limitation, the right of a Party to seek a temporary restraining order, preliminary injunctive or other equitable relief to preserve the status quo or prevent irreparable harm, shall be submitted to and finally resolved by a court of competent jurisdiction in the State of Nevada. In the event that an action is commenced by either Party with respect to this Agreement, the substantially prevailing Party (as determined by the court) shall be entitled to recover its reasonable costs and attorney's fees from the other Party.

**14.2** Disputes, claims or controversies (other than those specified in Section 14.1 above) arising out of or relating to this Agreement (hereinafter "**Arbitration Claims**") that cannot otherwise be resolved by good faith negotiations of the Parties, shall, at the request of a Party, be settled by binding arbitration in accordance with the commercial rules of the American Arbitration Association (AAA) that are then in effect. The Parties shall attempt to agree upon the selection of a single arbitrator who is unrelated to either Party and has demonstrable experience in the area of federal procurement law. In the event the Parties are unable to select a mutually acceptable arbitrator, the arbitrator shall be appointed by the AAA. All arbitration proceedings shall be held in the State of Nevada. The arbitrator's costs shall be borne equally by the Parties and each Party shall be responsible for its own preparation, discovery, and internal and external costs incurred to prosecute or defend the Arbitration Claim. The prevailing Party in any arbitration proceeding will be entitled to, in addition to any other relief granted, recover its reasonable costs and attorney's fees, as determined by the arbitrator. The arbitrator shall be bound by the express provisions of this Agreement in deciding any Arbitration Claim. The determination of the arbitrator shall be final, and except as provided by law, shall not be subject to appeal or judicial review. Any court of competent jurisdiction may enforce any award or determination rendered by the arbitrator. The arbitrator shall not have the authority to award damages for lost profits or consequential damages, or special, punitive, or other exemplary damages of any sort.



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

## ARTICLE 15 – MISCELLANEOUS

**15.1 Price Targets.** This Agreement is subject to the Subcontractors' ability to meet the price targets as set by the Prime Contractor.

**15.2 Regulatory Compliance.** This Agreement is subject to all applicable regulations, including, without limitation, the limitations on subcontracting rules prescribed in 13 C.F.R. § 125.6.

**15.3 Governing Law.** This Agreement shall be subject to, and construed and interpreted in accordance with, the laws of the State of Nevada without regard to the conflict of laws and provisions thereof.

**15.4 Notices.** All notices, requests, demands and other communications under this Agreement must be in writing and will be deemed duly given, unless otherwise expressly indicated to the contrary in this Agreement: (a) when personally delivered; (b) upon receipt of a telephone facsimile transmission with a confirmed telephonic transmission answer back; (c) or via email provided that such notice, request, demand or other communication is also sent by a nationally recognized overnight courier; (d) three (3) days after having been deposited in the United States mail, certified or registered, return receipt requested, postage prepaid; or (e) one (1) business day after having been dispatched by a nationally recognized overnight courier service, addressed to the Parties or their permitted assigns at the following address (or at such other address or number as is given in writing by either Party to the other):

*Notices to Prime Contractor shall be sent to:*

VSolvit LLC

4171 Market Street, Suite 2

Ventura, CA 93003

Attention:  Stephen Lee

Phone: (714) 917-9506

FAX: (805) 409-4757

Email: contract.tasks@vsolvit.com

*Notices to Subcontractor shall be sent to:*

Creative Information Technology, Inc. (CITI)

7799 Leesburg Pike, Suite 500N

Falls Church, VA  22043

Attention: Rachana Kulkarni

Phone: (703) 462-3062

FAX: (571) 633-1747

Email: rkulkarni@citi-us.com

*Notices to Subcontractor shall be sent to:*

Sohum Systems, LLC

9232 W 143rd Terrace

Overland Park, KS 66221

Attention:  Srinivas Moshugu

Phone: (913) 221-7204/F (913) 273-0269

Email: reddy@sohumsystems.com

**15.5 Assignment/Binding Effect.** No Party shall assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other Parties, which will not be unreasonably



# TEAMING AGREEMENT
## VSolvit, Sohum Systems, and CITI
### T724-20889

withheld. Any change of control of a Party shall be deemed an assignment of this Agreement. For purposes of this Agreement, "change of control" means any merger, consolidation, sale of all or substantially all of the assets or sale of a substantial block of stock, of a Party. Either Party shall have the right to assign this Agreement and its rights and obligations hereunder in whole, but not in part, to any corporation or other entity with or into which that Party may hereafter merge or consolidate, or to which that Party may transfer all or a portion of its assets, if in any such case said corporation or other entity shall, by operation of law or expressly in writing, assume all obligations of that Party hereunder as fully as if it had been originally made a party hereto. Any other assignment of this Agreement by either Party shall be subject to the other Parties' prior written consent, which will not be unreasonably withheld. Any attempted assignment that is inconsistent with this Article 15.5 shall be void.  This Agreement shall inure to the benefit of and shall be binding upon the valid successors and assigns of the Parties.

**15.6 Severability.**  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the court or other tribunal making such determination is authorized and instructed to modify this Agreement so as to effect the original intent of the parties as closely as possible so that the transactions and agreements contemplated herein are consummated as originally contemplated to the fullest extent possible.

**15.7 Headings.**  The headings and sub-heading included in this Agreement are for convenience only and do not in any way alter or affect the terms of this Agreement.

**15.8 Force Majeure**.  Neither Party shall be liable or deemed to be in default for any delay, interruption, or failure in performance under this Agreement resulting from the following events: acts of God; acts of civil or military authority; acts of the public enemy; war; accidents; fire; explosions; power surges; earthquakes, floods and unusually severe weather; strikes or labor disputes; terrorism or threats of terrorism; delays in transportation or delivery outside the reasonable control of the affected party; epidemics; and any similar event beyond the affected Party's reasonable control.

**15.9 Non-Solicitation of Employees.**  During the term of this Agreement and any resulting Subcontract, and for a period of one (1) year following expiration or termination of this Agreement and any resulting Subcontract, neither Party shall directly or indirectly solicit for hire or knowingly allow any of its employees, agents, officers or representatives to directly or indirectly solicit for hire any employee or employees of the other Party who are materially involved with the performance of this Agreement or any resulting Subcontract.  Notwithstanding the foregoing, the Parties acknowledge and agree that this Agreement will not prohibit (a) solicitations through advertising or other publications of general circulation or (b) the hiring of any employee of a Party who contacts the other Party without such other Party having solicited such employee.

**15.10 Survivability.**  Articles 4, 6, 7, 12, 13 and 14, as well as the NDA obligations, unless otherwise superseded by a subsequent grant between the Parties, shall survive the termination of this Agreement.



# TEAMING AGREEMENT
## VSolvit, Sohum Systems, and CITI
### T724-20889

**15.11 Waiver.**  The failure of either Party to insist upon the performance of any provision herein, or to exercise any right or privilege granted to it hereunder, shall not be construed as a waiver of such provision, and the same shall continue in full force.

**15.12 Representations**.  Each Party to this Agreement represents and warrants to the other Party that: (a) such Party has the full corporate right, power and authority to enter into this Agreement and to perform all acts required of it hereunder; (b) the execution of this Agreement by such Party, and the performance by such Party of its obligations and duties hereunder, do not and will not violate any agreement to which such Party is a Party or by which it is otherwise bound; (c) when executed and delivered by such Party, this Agreement will constitute the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with the terms and conditions of this Agreement; (d) it is not subject to any pending or threatened litigation or governmental action that could interfere with its performance of this Agreement; and (e) such Party, in the performance of this Agreement, will comply with and be bound by all applicable laws, rules and regulations of the U.S. Government, including without limitation, export/import, federal gift/gratuity and bribery laws.  Each Party shall require any consultants that it retains to provide services, information, advice or direction in connection with the work to be performed on such Party's behalf hereunder or in any manner connected with the Solicitation to comply with all reporting, disclosure and certification requirements under the Solicitation and any laws or regulations which now exist or may become effective during the term of this Agreement. Neither Party has been induced to enter into this Agreement by any representations or promises not specifically stated herein.

**15.13 Entire Agreement/Modification.**  This Agreement sets forth the entire understanding between the Parties and supersedes any previous or contemporaneous communications, representations, agreements, and understandings, oral or written, between the Parties with respect to the subject matter hereof. The Parties do not intend by this Agreement to modify the terms of any separate agreement not mentioned herein This Agreement may not be modified in any manner except by a mutually acceptable written amendment executed by all Parties.

(signature page follows)



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**IN WITNESS WHEREOF**, this Agreement was signed by the Parties under the hands of their duly authorized officers and made effective as of the Effective Date.

**VSolvit LLC**

Signature: _Stephen Lee_

Name: Stephen Lee

Title: General Counsel

Date: June 14, 2022

**Creative Information Technology, Inc. (CITI)**

Signature: _Rachana Kulkarni_

Name: Rachana Kulkarni

Title: Sr. VP, Federal Services

Date: June 14, 2022

**Sohum Systems, LLC**

Signature: _Srinivas Reddy_

Name: Srinivas Moshugu

Title: CEO

Date: 06/14/2022



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**TEAMING AGREEMENT**
**Exhibit A - STATEMENT OF WORK**

This Exhibit A outlines the agreement between the Parties with respect to any work from the Prime Contract that may be assigned by Prime Contractor to Subcontractors under the Subcontract.

A draft Statement of Work has not been promulgated at this time and expected service requirements will be based on the Solicitation. Work may be allocated to the Subcontractors in any functional area of the Statement of Work in which the experience and the expertise of the Subcontractors are applicable, as determined by Prime Contractor and this SOW. All work share allocation, percent or actual dollars, will be as specified below.

Assuming Prime Contractor is awarded the Prime Contract, the Parties agree to the following with regard to Subcontractors role on the Program and subsequent work share:

● Specific levels of effort and rates shall be defined in the Subcontract. It is understood that all organizational conflict of interest (OCI) provisions of the contract or task order shall take precedence and may exclude Subcontractors' participation on any specific task order.

● For any small business award (e.g., SB, 8(a), WOSB), it is anticipated that Prime Contractor will not pay more than 50 percent of the amount paid by the Government for contract performance to subcontractors that are not similarly situated entities. The work percentages established below are based on the contract level and will play a major role in establishing work share and which team member may be selected to accomplish any specific work.

● **All contemplated workshare hereunder to other than small businesses are subject to change based on compliance with all applicable regulations, namely but not exclusively, FAR Clause 52.219-14 Limitations on Subcontracting, and any other small business workshare terms in the solicitation for the Program (e.g., subcontracting plan).**

● At this time, the Subcontractors' allocated workshares shall be subject to their ability to provide qualified personnel in a timely manner and within cost constraints, as well as satisfactory performance of work and continued Customer satisfaction regarding that work performance. Prime Contractor will notify the Subcontractors in writing of any staff performance issues warranting replacement. In the event of such notice, Subcontractors shall have two weeks from the date of receipt of the notice (or a shorter period if stipulated by the Customer) to propose to Prime Contractor a replacement candidate and provide the resume of the replacement candidate. Upon Prime Contractor's receipt of the replacement candidate's resume, Prime Contractor shall either accept or reject the proposed candidate within 48 hours (or a longer period of time if the Customer requires review). If the Subcontractors fail to timely correct the staff performance issue, Prime Contractor shall have the right to replace that Subcontractor staff member at its sole discretion.

● Subcontractors' actual work will be determined by several factors, including, without limitation: (1) the Customer's acceptance of Subcontractors under the Prime Contract; (2) Subcontractors' ability to provide professional services consistent with performance standards established by Prime Contractor and the Customer; (3) Subcontractors' ability to bid and maintain competitive rates within Prime Contractor's price targets; (4) Subcontractors' ability to provide fully qualified personnel as and when requested by Prime Contractor; (5) the scope and nature of tasking funded/ordered by the Customer; and (6) any potential, actual, or perceived organizational conflicts of interest, as determined by Prime Contractor or Customer.

# TEAMING AGREEMENT
## VSolvit, Sohum Systems, and CITI
### T724-20889

The Parties agree that this Exhibit A is a preliminary and tentative description of work based on current understanding and available information. The Solicitation will include requirements for work under the Prime Contract, including the statement of work, scope, and levels of effort. Each Party reserves the right to modify this Exhibit A based on the Program or Solicitation requirements, Prime Contractor's and the Customer's subcontracting goals, Subcontractors' representations and certifications, Subcontractors' performance under this Agreement and the Subcontract, and other factors outlined herein.

Workshare for the Parties under the Program shall be as follows:

- ███████████████████████████████
- ███████████████████████████████
- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ███████████████████████

## Revenue Sharing

Each company will initially start with initial workshare percentage as proposed above. We will true up revenue share at the end of each quarter helping all partners to reach their desired goals.

## WRAP Rate for BEECH contract for all three partners:

Fringe Benefit – TBD

OH – TBD

G&A – TBD

Profit – TBD

## Total WRAP Rate – TBD (rounded)

The exact wrap rate will be decided at the time of pricing on the proposal effort.

NITAAC fee for CIOSP3 contract, is TBD percentage of the revenue.

In addition, ████████████████████████████████.

## Profit Sharing – Scenario 1 – Revenue is unbalanced but profits are shared equally

Each company will use a wrap rate of TBD (████████████████████████) with ███ assumed to be in profits. Assuming quarterly revenue of ██████ of one company, ███████ for other company and ██████ for third company, we will split the total profits equally and will true up the profits at the end of each quarter. The total profits for the combined CTA will be ████████████████████████. The total profits each company will get is ██████.

## Profit Sharing – Scenario 2 – Employee vs Corp to Corp



## TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

There may be a scenario where one company may have employees and other company may have disproportionate number of corporate to corporate candidates. For the purpose of this informal CTA, we will consider the WRAP rate for employees to be TBD (█████████████████████████) and profits to be ██ and for corp to corp candidates, wrap rate will be TBD ██████████████████████████) (████████████████████ and ██ profit.  Quarterly profit will be calculated as follows for each company:

| Resources | Salary | Bill Rate | Minimum Allowable Profit |
|---|---|---|---|
| Employee | ██████ | ██████ | ██████ |
| Corp-to-Corp | ██████ | ██████ | ██████ |

In case of losses on a labor category, company will try to make up for the losses with profits in other labor categories and calculate the blended profit or loss. If the company does not achieve ██ profit overall, then the other companies will share their profits with the company if other companies are making ██ or higher.

### Profit Sharing – Scenario 3 – One company making losses or making less profit than ██

Company A

| Resources | Salary | Bill Rate | Profit |
|---|---|---|---|
| ██████ | ██████ | ██████ | ██████ |
| ██████ | ██████ | ██████ | ████████ |
| ██████ | ██████ | ██████ | ██████ |
| ███ █ ██ ██ ██ | | | ██████ |

In this scenario, Company A should be making a profit of ███████████████████████ but instead made a profit of █████████████████ on first labor category. Company B and C will share their profits with Company A to equalize the profits between all three companies.

There are many scenarios possible, but these three scenario provides a summary of some possible cases and we will work them out as they are presented to the board.  **Goal is to be fair in revenue sharing and profit sharing!**



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

TEAMING AGREEMENT
**Exhibit B – SUBCONTRACTORS' OCCI STATEMENT**

**SUBCONTRACTOR ORGANIZATIONAL AND CONSULTANT CONFLICTS OF INTEREST STATEMENT**

The undersigned subcontractors for the opportunity referenced in the Agreement, (hereinafter, "Subcontractors") acknowledge and understand the subject solicitation's requirements to identify any potential or actual Organizational and Consultant Conflicts of Interest ("OCCI") as described in Federal Acquisition Regulation ("FAR") Subpart 9.5.

Subcontractors hereby represent that they are aware of no past, present, or currently planned interest (financial, contractual, organizational, or otherwise) or activity relating to the work to be performed under the contract resulting from the subject solicitation that would indicate any impingement upon their ability to render impartial, technically sound, and objective assistance or advice or result in the appearance that they may have an unfair competitive advantage. This representation applies to all affiliates of Subcontractors and their proposed consultants or subcontractors of any tier.

For the subject contract, Subcontractors represent and warrant that they are able to provide impartial and objective assistance or advice to the customer. Subcontractors' other activities, relationships, contracts, and circumstances will not impair their objectivity or impartiality in serving the customer under the subject contract. Subcontractors do not have any other work with the customer that would raise concerns of bias or partiality. Subcontractors have not obtained access to nonpublic information during the performance of other contracts that will give them an unfair competitive advantage over other offerors in pursuing the subject opportunity.

Lastly, Subcontractors, in performing prior contracts, have not established the ground rules for the subject procurement. Specifically, Subcontractors have not developed any specifications, evaluation factors, or similar documents for this procurement. Subcontractors did not have any influence whatsoever in the preparation and issuance of the subject solicitation, and did not otherwise provide any other acquisition-related support in relation to the subject solicitation.

Given the above, Subcontractors firmly believe that no actual or potential conflict exists. However, should an actual conflict arise in the future during contract performance, or should Subcontractors have any noteworthy concerns or issues regarding a potential conflict at any point in time, Subcontractors shall: (1) fully and immediately notify Prime Contractor in writing of the conflict and the steps they have taken or proposes to take to address the conflict; (2) avoid, neutralize, or mitigate the conflict by executing their internal actions; and (3) confirm with Prime Contractor once the actual or potential conflict has been neutralized or mitigated. Subcontractors shall fully cooperate with Prime Contractor to address the conflict with the customer to its satisfaction.

Subcontractors acknowledge and agree that, if at any point in time prior to or after award of the contract, an actual or potential conflict attributable to Subcontractors is discovered, Prime Contractor may, subject to its sole discretion and/or the direction of the Customer, firewall Subcontractors from any portion of the work or eliminate Subcontractors from the team and terminate any corresponding agreements between Prime Contractor and Subcontractors without penalty.

Subcontractors acknowledge and understand that, if Subcontractors' actual or potential conflicts results



## TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

in damage or harm to Prime Contractor, Prime Contractor will pursue all available remedies to protect its rights and interests to the fullest extent of the law.

Subcontractors hereby certify that the information contained in this certification is accurate, complete, and current.

**Sohum Systems, LLC**

Signature: _Srinivg Dedy_

Name: _srinivas moshugu_

Title: _ceo_

Organization: _, Sohum Systems LLC_

Date: _06/14/2022_

**Creative Information Technology, Inc. (CITI)**

Signature: _Rachana Kulkarni_

Name: _Rachana Kulkarni_

Title: _Sr. VP, Federal Services_

Organization: _Creative Information Technology, Inc._

Date: _June 14, 2022_



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**TEAMING AGREEMENT**
**Exhibit C – MUTUAL NON-DISCLOSURE AGREEMENT**
**VS1622-20889**

This Non-Disclosure Agreement ("**Agreement**") is made as of June 13, 2022 ("**Effective Date**"), by and among:

1.  VSolvit LLC, a Nevada limited liability company with an office located at 4171 Market Street, Suite 2, Ventura, CA 93003, ("**VSolvit**"),

2.  Creative Information Technology, Inc. (CITI), a Maryland corporation with an office located at 7799 Leesburg Pike, Suite 500N, Falls Church, VA 22043 ("**CITI**"), and

3.  Sohum Systems, LLC, a Kansas limited liability company with an office located at 7900 College Boulevard, Suite 135, Overland Park, KS 66210 ("**Sohum**").

VSolvit, CITI, and Sohum are hereinafter collectively referred to as the "**Parties**" and individually as a "**Party**." The Party receiving Confidential Information or Trade Secrets, as defined below, shall be referred to as the "**Confidant**" and the Party disclosing the Confidential Information or Trade Secrets shall be referred to as the "**Owner**."

## RECITALS

A.  The Parties own and possess certain Confidential Information and Trade Secrets, as hereinafter defined.

B.  The Parties desire to use the Confidential Information and Trade Secrets solely for the purpose of jointly pursuing RFPs released by USDA/FPAC-BC for USDA FPAC Beech ("**Purpose**").

**NOW THEREFORE,** in consideration of the mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  "**Confidential Information**" shall mean all nonpublic information other than Trade Secrets that either Party discloses hereunder, whether in writing, electronically, or orally and in any form (tangible or intangible), that is confidential, the confidentiality of which the Owner has taken reasonable efforts to maintain its secrecy, including, but not limited to, (a) if provided in writing or other tangible format, marking the writing or including a legend therein as "Confidential" or "Proprietary", (b) if provided orally, identifying the information as confidential, in writing, within fifteen (15) days from such disclosure, or (c) is information which is derived from the information in (a) or (b).

2.  Confidential Information does not include: (i) any information which now or hereafter is generally available to and known by the public other than as a result of a disclosure in violation of this Agreement; (ii) information which was known to the Confidant at the time of disclosure, as demonstrated by written records; (iii) information rightfully received by the Confidant from a third party without a duty of confidentiality; (iv) information independently developed by the Confidant without reference or reliance on the Confidential Information of the Owner; and (v) any other information that all the Parties agree in writing is not confidential.



# TEAMING AGREEMENT
## VSolvit, Sohum Systems, and CITI
### T724-20889

3.   Confidential Information shall be used solely for the Purpose and not for any other purpose, and such information will be kept confidential by the Confidant. With the advance written permission of the Owner, the Confidant may disclose the Confidential Information or portions thereof, to those of its directors and officers, representatives or advisors ("**Representatives**") who need to know such information and who have signed like agreements of non-disclosure. In requesting permission from the Owner, the Confidant shall provide the identity of the Representatives and all relevant biographical information, including but not limited to, any outside employment, affiliations and potential conflicts of interest. Confidant shall not disclose Confidential Information to any other party without the prior written consent of the Owner. Each Party agrees to exercise the same degree of care with the other Parties' Confidential Information as it applies to its own Confidential Information, but in no event less than reasonable care, to prevent access to the Confidential Information by persons not authorized by the terms of this Agreement to have such access. Confidential Information shall not be copied or reproduced by the Confidant without the express written consent of the Owner, except for such copies as may be reasonably required for accomplishment of the Purpose.

4.   The Confidant may disclose Confidential Information pursuant to a valid order issued by a court of competent jurisdiction or government agency, administrative agency or by any rule or regulation, or by subpoena, or any other administrative or legal process, or by applicable regulatory or professional standards, provided that prior to any such disclosure, the Confidant, to the extent permitted by applicable law, provides the Owner prior written notice of such obligation and the opportunity to oppose such disclosure or obtain a protective order. The Confidant agrees to provide reasonable assistance to the Owner in opposing such disclosure or obtaining a protective order preventing or narrowing the scope of such disclosure and/or use of Confidential Information and shall disclose such Confidential Information only to the extent necessary to comply with such disclosure obligations.

5.   All Confidential Information disclosed hereunder shall remain the property of the Owner.  Each Party shall keep a record of the Confidential Information furnished to it and the location of such Confidential Information, including any copies made by the Confidant.  Upon termination of this Agreement, or upon the demand of the Owner, the Confidant shall promptly return or destroy all of the Confidential Information and all copies thereof in its possession, custody or control, or in the possession, custody or control of its Representatives, or otherwise received, produced or disseminated by the Confidant, and Confidant shall make no further use of the Confidential Information.  Upon request, the Confidant shall provide the other Parties with written certification of destruction.

6.   This Agreement shall terminate within three (3) years from the Effective Date or upon issuance of thirty (30) days prior written notice from one Party to another.  Termination shall not, however, affect the rights and obligations contained herein with respect to Confidential Information disclosed hereunder prior to termination which shall continue for a period of three (3) years from the date of termination of this Agreement. Notwithstanding the above, the obligation to protect proprietary information that relates to either Party's intellectual property (e.g., copyright, patents, trade secrets) shall survive termination and until legal protection thereof is no longer applicable.

7.   Each Party agrees to be responsible for enforcing the confidentiality of the Confidential Information provided to it, and agrees to take such action, legal or otherwise, to the extent necessary to prevent any disclosure by it, or any of its Representatives, of any of the Confidential Information.  In the event the



# TEAMING AGREEMENT
### VSolvit, Sohum Systems, and CITI
### T724-20889

Owner is required to initiate any action or proceeding to enforce the Confidant's, or any Representative's, obligations hereunder, or in the event of a breach by the Confidant's, or any Representative's, obligations hereunder, the Confidant agrees to reimburse the Owner for all loss, cost, liability, damage and expense, included, but not limited to, reasonable attorneys' fees and expenses, incurred by the Owner in connection with, related to, or resulting from such action, proceeding or breach. It is further understood and agreed that money damages alone may not be a sufficient remedy for any breach of this Agreement by the Confidant, and/or its Representatives, and that the Owner may be entitled to seek specific performance and injunctive relief as remedies for any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or equity. This does not preclude employees or subcontractors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information as outlined in FAR clauses 52.203-18 and 52.203-19.

8. Neither the execution of this Agreement nor the furnishing of any information hereunder shall be construed as granting either expressly or by implication, estoppel, or otherwise, any license to make, use, or sell any Confidential Information under any discovery, invention, patent, trade secret, copyright or other form of intellectual property now or hereafter owned by or controlled by the Owner.

9. Nothing in this Agreement shall grant to any Party the right to make commitments of any kind, for or on behalf of any other Party. This Agreement is not intended to be, nor shall it be construed as a joint venture, partnership, or other formal business organization and no Party shall have the right or obligation to share any of the profits or bear any of the losses of any other Party under any contract or subcontract performed in conjunction herewith.

10. This Agreement shall not be construed in any manner to be an obligation to enter into a subcontract or contract or to result in any claim whatsoever by a Party against the other Parties for reimbursement of cost for any effort expended.

11. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to the conflict or choice of law provisions thereof. The Parties hereto submit to the exclusive jurisdiction of any Federal or State court located in the State of Nevada, Clark County, in connection with any matter arising under this Agreement.

12. Any notice or other communication made or given by any Party in connection with this Agreement shall be sent via facsimile (with confirmation) or by registered or certified mail, postage prepaid, return receipt requested, or by courier service addressed to the other Parties at their addresses set forth below:

| | |
|---|---|
| Sohum Systems, LLC | VSolvit LLC |
| 7900 College Boulevard, Suite 135 | 4171 Market Street, Suite 2 |
| Overland Park, KS 66210 | Ventura, CA 93003 |
| Attn: Srinivas Moshugu | Attn: Stephen Lee |
| Phone: (913) 221-7204 | Phone: (805) 850-1253 |
| Fax: (913) 273-0269 | Fax: (805) 409-4757 |
| Email: reddy@sohumsystems.com | Email: contract.tasks@vsolvit.com |



## TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

Creative Information Technology, Inc. (CITI)
7799 Leesburg Pike, Ste. 500N
Falls Church, VA 22043
Attention: Rachana Kulkarni
Telephone: (703) 462-3062
FAX:
E-mail: rkulkarni@citi-us.com

13. Confidential Information and Trade Secrets disclosed hereunder may be export controlled and subject to the laws and regulations of the United States pertaining to export control. Therefore, all Parties agree to comply with all the applicable requirements of said laws and regulations of the United States including but not limited to, the International Traffic In Arms Regulations (ITAR), the Export Administration Regulations (EAR) and the Office of Foreign Assets Control (OFAC). In particular, all Parties warrant that they will not disclose any export controlled Information provided hereunder to a Non United States Person without prior U.S. Government approval to include use of exceptions/exemptions and will notify other Parties in writing regarding disclosure and the authorization used.

14. No Party shall assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other Parties, which will not be unreasonably withheld. Any change of control of a Party shall be deemed an assignment of this Agreement. For purposes of this Agreement, "change of control" means any merger, consolidation, sale of all or substantially all of the assets or sale of a substantial block of stock, of a Party. Any attempted assignment that is inconsistent with this Paragraph 14 shall be void. This Agreement shall inure to the benefit of and shall be binding upon the valid successors and assigns of the Parties.

15. This Agreement contains the entire agreement among the Parties with respect to confidentiality and may only be modified by an amendment executed in writing and signed by all Parties.

16. The waiver or failure to enforce any provision of this Agreement shall not operate as a waiver of any future breach of such provision or any other provision.

17. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the court or other tribunal making such determination is authorized and instructed to modify this Agreement so as to effect the original intent of the parties as closely as possible so that the transactions an agreements contemplated herein are consummated as originally contemplated to the fullest extent possible.

18. This Agreement may be signed in any number of counterparts, all of which shall constitute but one and the same instrument.

(signature page follows)



# TEAMING AGREEMENT
VSolvit, Sohum Systems, and CITI
T724-20889

**IN WITNESS WHEREOF,** the Parties hereto have entered into this Agreement as of the Effective Date first above written, and agree to the terms and conditions set forth herein.

**VSOLVIT LLC**

Signature: _Stephen Lee_

Name: Stephen Lee

Title: General Counsel

Date: June 14, 2022

**CREATIVE INFORMATION TECHNOLOGY, INC. (CITI)**

Signature: _Rachana Kulkarni_

Name: Rachana Kulkarni

Title: Sr. VP, Federal Services

Date: June 14, 2022

**SOHUM SYSTEMS, LLC**

Signature: _srinivas moshugu_

Name: srinivas moshugu

Title: CEO

Date: 06/14/2022