# EXHIBIT 1

1  Maurice VerStandig, Esq.
   Nevada Bar No.: 15346
2  **THE VERSTANDIG LAW FIRM, LLC**
   1452 W. Horizon Ridge Pkwy, #665
3  Henderson, NV 89012
   Telephone: (301) 444-4600
4  Facsimile: (301) 444-4600
   Email: *mac@mbvesq.com*
5
   Matthew E. Feinberg (*pro hac vice*)
6  Todd Reinecker (*pro hac vice* motion pending)
   Mansitan Sow (*pro hac vice* motion pending)
7  Matthew T. Healy (*pro hac vice* motion pending)
   **PILIEROMAZZA PLLC**
8  1001 G Street, NW, Suite 1100
   Washington, D.C. 20001
9  Telephone: (202) 857-1000
   Email: *mfeinberg@pilieromazza.com*
10 Email: *treinecker@pilieromazza.com*
   Email: *msow@pilieromazza.com*
11 Email: *mhealy@pilieromazza.com*

12 *Attorneys for Plaintiff, VSolvit LLC*

13                UNITED STATES DISTRICT COURT
                       DISTRICT OF NEVADA
14
   VSOLVIT LLC, a Nevada limited liability    Case Number 2:23-cv-00454-JAD-DJA
15 company

16           Plaintiff,                       **DECLARATION OF MEGHAN LEEMON**

17      v.

18 SOHUM SYSTEMS, LLC, a Kansas limited
   liability company
19
                    and
20
   CREATIVE INFORMATION
21 TECHNOLOGY, INC., a Maryland
   corporation,
22
           Defendants.
23

24

{00166175 }

                                1

I, Meghan Leemon, on oath, depose and state as follows:

1.      I am an adult resident of Colorado, eighteen years of age or older at the time of this writing, and I am competent to testify as to the matters herein as set forth based on my own personal knowledge.

2.      I am an attorney, licensed to practice law in the state of Colorado and the District of Columbia, and I am Counsel at PilieroMazza PLLC.

3.      I graduated from Bradley University in 2011, with a degree in Political Science and Social Work.  In 2015, I graduated with a J.D. from the University of Denver Sturm College of Law.

4.      Since 2015, I have counseled businesses on a wide range of issues affecting government contracts.  I specialize in small business government contracting law, including eligibility for small business set-aside programs and contracts.  I have represented dozens of government contractors in size protests (both advancing them on behalf of disappointed offerors and defending them on behalf of contract awardees) and appeals, have reviewed and advised clients on hundreds of federal government contracts, and I have represented clients in dozens of acquisition/novation transactions for federal contracts.

5.      I frequently speak at conferences and other events and publish blogs and articles on issues related to small business government contracting, including eligibility for small business contracts.

6.      I am also very familiar with the Chief Information Officer – Solutions and Partners 3 Small Business multiple-award contract vehicle ("CIO-SP3 SB") issued by the National Institutes of Health Information Technology Acquisition and Assessment Center ("NITAAC") and, in particular, having counseled many clients on their continuing eligibility for

{00166175 }

1  task order awards under CIO-SP3 SB, based on the United States Small Business

2  Administration's small business regulations, size protest regulations, and the Federal Acquisition

3  Regulations.

4    7.    CIO-SP3 SB is a government-wide multiple-award small business contract.

5  Government-wide multiple-award contracts are indefinite-delivery, indefinite quantity contracts,

6  meaning that federal agencies may procure and award task orders among CIO-SP3 SB contract

7  holders.

8    8.    When a task order is competitively bid under CIO-SP3 SB, bidding is restricted

9  to those offerors who hold an active CIO-SP3 SB contract vehicle.

10    9.    To be eligible for a CIO-SP3 SB award, at the time of submitting a bid for an

11  award of the CIO-SP3 SB multiple award contract vehicle, bidders were required to be "small"

12  under the applicable North American Industry Classification System ("NAICS") code assigned

13  to the contract.  *See* 13 C.F.R. § 121.404(a)(1)(iv).

14    10.    For CIO-SP3 SB, as well as other multiple-award government wide acquisition

15  contracts like it, once a company has been awarded the contract as a small business, the general

16  rule is that a company is considered a small business and is eligible for task orders issued under

17  that contract for the duration of the contract, regardless of whether the company may later grow

18  to be other than small.  *See* 13 C.F.R. § 121.404(g).

19    11.    In other words, if a company is a small business for a multiple-award small

20  business contract at the time of bidding for the contract vehicle, it will be considered a small

21  business for the entire time it holds that contract, with certain, limited exceptions not applicable

22  here.

23    12.    For instance, a company will be required to recertify as small if the contracting

24

{00166175 }

3

1   officer for a specific task order requests size recertification at the time of proposal submission

2   or where the company engages in a merger, novation, or acquisition transaction. *See* 13 C.F.R.

3   § 121.404(g)(1)-(2).

4        13.    VSolvit's CIO-SP3 SB contract vehicle is considered a negotiated procurement,

5   because it has a duration of less than five years. *See* 13 C.F.R. § 121.1004(a)(2).

6        14.    The only times a disappointed offeror on a contract or task order may commence

7   a size protest against an award to Vsolvit under CIO-SP3 SB are: (a) prior to the close of business

8   on the 5th business day after notification that Vsolvit was identified as an apparent successful

9   offeror; or (b) prior to the close of business on the 5th business day after identification of the

10   apparent successful offeror of a task order if the contracting officer requested a size

11   recertification in connection with that task order. *See* 13 C.F.R. § 121.1004(a)(2).

12        15.    According to public records, NITAAC publicly posted a list of prospective

13   awardees for the CIO-SP3 SB contract vehicle on March 16, 2020, which identified VSolvit as

14   a qualified offeror and further noted that "[n]o response is required to this notice unless there

15   exists a basis to challenge the small business status of a selected offeror listed above."[1]

16   Accordingly, any size protest must have been filed by March 23, 2020 (5 days later, excluding

17   weekends and holidays).

18        16.    I have reviewed the draft Task Order Request for Proposals ("RFP") for the

19   United States Department of Agriculture ("USDA") FPAC Farm Programs Software Delivery

20   ("Beech") Program.

21        17.    The draft Beech RFP does not request a size recertification for offerors.

22

23

24

---

[1] Such notice is available at https://sam.gov/opp/4d15001c6756430383433fa5beb24f26/view (last visited Apr. 19, 2023).

{00166175 }

4

18.     Given that the draft Beech RFP is restricted to CIO-SP3 SB contract holders and does not require size recertification, any size protest by a disappointed bidder, in the event VSolvit is identified as the apparent successful offeror and/or wins the Beech award, should be dismissed as untimely.

19.     In my experience, it is rare for contracting officers to request size recertification related to a task order under an indefinite delivery, indefinite quantity multiple-award, federal government contract.

20.     CIO-SP3 SB contracts will expire (*i.e.*, no further task orders can be procured) in the near future.  The original expiration date for ordering under VSolvit's CIO-SP3 SB contract was July 14, 2022, but the expiration date has been extended while the Government procures the next iteration of CIO-SP3, referred to as CIO-SP4.

21.     The current extended expiration date for ordering under CIO-SP3 SB contracts is April 29, 2023, although it is likely that the Government will extend that deadline again shortly to accommodate delays in implementation of CIO-SP4 due to the filing of a number of bid protests.

22.     The acquisition and novation process for a federal contract is a complex one. First, a buyer-company and seller-company must negotiate and enter into an acquisition agreement, under which the buyer will provide some sort of consideration to the seller in exchange for the transfer of the government contract in question.

23.     Once the acquisition documents are complete, the buyer and seller must submit a novation package to the government agency issuing the acquired contract.  This typically involves submitting a novation agreement as well as supporting documentation.  The government agency must approve the novation, and such novations are made in the government's discretion.

{00166175 }

24.    In my experience, novations of government contracts can take anywhere from 3 to 12 months to complete.

25.    According to its own submissions in this litigation, Sohum Systems, LLC obtained a CIO-SP3 SB contract vehicle through government-approved novation in December 2022. Based on my experience, the process for obtaining a novation of a CIO-SP3 SB contract likely would have taken at least 3-4 months, if not longer.

26.    Because CIO-SP3 SB contract vehicles were set to expire on April 29, 2023, a novation of a CIO-SP3 SB contract approved in December 2022, would result in the buyer having limited opportunities to bid on CIO-SP3 task orders before contract expiration. In my experience, these late-contract novations are usually done in order to bid on one or a small number of specific task orders of which the buyer is already aware.

I certify under penalty of perjury that the foregoing statements are true and correct.

Executed on this 20th day of April 2023.

_____
Meghan Leemon

{00166175 }

6