# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

VSolvit, LLC,

       Plaintiff

v.

Sohum Systems, LLC and Creative
Information Technology, Inc.,

       Defendants

Case No.: 2:23-cv-00454-JAD-DJA

**Order Denying Motions for a Temporary
Restraining Order and Preliminary
Injunction**

[ECF Nos. 3, 4]

       Plaintiff VSolvit, LLC filed this action against Sohum Systems, LLC and Creative Information Technology, Inc. (CITI), alleging violations of the parties' "teaming agreement" to submit a joint bid for a government contract.[1]  According to the complaint, the teaming agreement required exclusivity among the parties with respect to the bid, but the defendants breached the exclusivity clause when they terminated the agreement and announced they would be pursuing the bid without VSolvit.[2]  VSolvit also alleges that the defendants have continued to access confidential information that it shared in preparation for the bid.[3]

       VSolvit moves for a temporary restraining order and preliminary injunction prohibiting the defendants from submitting a bid proposal and compelling them to continue working exclusively with VSolvit for this contract.[4]  It alleges that the United States Department of Agriculture—the government agency accepting bids for the contract—is expected to release the

---

[1] ECF No. 1.

[2] *Id.* at ¶ 67.

[3] *Id.* at ¶ 78.

[4] ECF No. 3; ECF No. 4.

bid request for this job "within weeks."[5]  Sohum and CITI respond that they terminated their

involvement in accordance with the express terms of the contract, and the exclusivity clause did

not survive that termination.[6]  They also contend that VSolvit has not shown that it will suffer

irreparable harm absent the relief it seeks.[7]  Because VSolvit has not shown that it will suffer

irreparable harm if this court does not enjoin the defendants from bidding on the contract, that

the court can compel the defendants to compete the project with VSolvit, and that its requested

relief is narrowly tailored to the defendants' alleged use of its confidential information, I deny

VSolvit's motions.

## Background

**A.    Teaming agreement**

The parties are information-technology companies that regularly bid on government

contracts.  VSolvit is designated as a small business under the government's contracting scheme,

allowing it to bid on contracts with specific small-business designations.  In June 2022, the

parties became aware of an upcoming contract with the United States Department of Agriculture

(labeled by the parties as the "Beech contract"), and entered into a "teaming agreement,"

memorializing their intent to submit a joint bid.[8]  VSolvit was given the authority to designate

the prime contractor for the bid and it chose itself, relegating CITI and Sohum to subcontractor

positions.[9]

The contract contains an exclusivity clause:

---

[5] ECF No. 1 at ¶ 91.

[6] ECF No. 18.

[7] *Id.*

[8] ECF No. 1 at ¶ 34 (verified complaint); ECF No. 4-1 (teaming agreement).

[9] ECF No. 1 at ¶ 55; ECF No. 4-1 at § 1.1.

Exclusivity: Under this Agreement, Subcontractors and Prime Contractor commit to an exclusive agreement for Subcontractors to support Prime Contractor.  Subcontractors shall not act as a Prime offeror, have not entered into any teaming arrangements with other offerors under the Program prior to this Agreement, nor will they enter into any teaming arrangements with other offerors under the program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. . . . Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.[10]

The contract also contains a termination-for-convenience clause, stating that "any party may, for its convenience, terminate this agreement, or any portion thereof, upon written notice to the other parties."[11]  It also has a survivability clause, stating that "Articles 4, 6, 7, 12, 13, and 14, as well as the NDA obligations . . . shall survive the termination of this agreement."[12]  The exclusivity agreement, found in Article 1, is not enumerated in the survivability clause.

**B.    Defendants' termination of the agreement**

For nearly eight months, the parties collaborated on their joint bid.  VSolvit also entered into a separate teaming agreement with Science Application International Corporation (SAIC) to pursue the Beech contract, "with SAIC to act as a separate subcontractor to VSolvit."[13]  VSolvit alleges that the parties exchanged confidential and proprietary information related to the upcoming bid, "including VSolvit's proposed technical approach to the Beech work."[14]  VSolvit

---

[10] ECF No. 4-1 at § 1.3 (teaming agreement).

[11] *Id.* at § 10.4 (cleaned up).

[12] *Id.* at § 15.10.

[13] ECF No. 4 at 8.  The parties do not dispute that VSolvit was permitted to enter into a separate agreement with SAIC under the primary agreement, which allowed the prime contractor to "contract with other entities to supplement [its] team for this Solicitation."  ECF No. 4-1 at § 1.3.

[14] ECF No. 4 at 9.

shared "win[-]theme documents," which "contain VSolvit's internal process for developing win[-]theme statements as well as complete win[-]theme statements and differentiators."[15]

On February 9, 2023, Sohum and CITI sent VSolvit separate emails stating their desire to terminate the teaming agreement under the contract's termination-for-convenience clause.[16] Sohum and CITI indicated that they wanted to form a new teaming agreement with Sohum as the prime contractor and CITI and VSolvit as subcontractors, and they also "wished to engage SAIC as a subcontractor," despite the fact that SAIC had an exclusivity agreement with VSolvit.[17]  On February 11, 2023, VSolvit informed Sohum and CITI that it did not agree to their proposed arrangement.[18]  VSolvit demanded that the defendants cure their breach of the exclusivity agreement and continue to act as subcontractors for the joint bid, but the defendants refused.[19]

VSolvit alleges that after Sohum and CITI terminated the agreement, they "continued to access, review[,] and copy confidential and proprietary documents in the VSolvit Beech team drive, including VSolvit's confidential and proprietary information and technical approach to the Beech program."[20]  VSolvit also accuses Sohum of viewing and copying a technical document "outlin[ing] VSolvit's strategy for developing its technical response to the upcoming RFP" and "other technical outlines, experience narratives, staffing plans, company profiles, [and] key personnel resumes."[21]

---

[15] *Id.*

[16] ECF No. 1 at ¶ 64.

[17] *Id.* at ¶ 67–68.

[18] *Id.* at ¶ 73.

[19] *Id.* at ¶ 75.

[20] *Id.* at ¶ 78.

[21] *Id.* at ¶ 81.

**C.      This action**

        VSolvit now sues Sohum and CITI for anticipatory breach of contract and breach of the

implied covenant of good faith and fair dealing, alleging that they breached the exclusivity

clause of the agreement and that, even if their termination for convenience technically complied

with the terms of the agreement, it was done in bad faith to rob VSolvit of the opportunity to bid

separately on the Beech contract.[22]   VSolvit moves for a temporary restraining order and

preliminary injunction to (1) "enjoin defendants from bidding on the Beech RFP as a prime

contractor (whether independently or as part of a team) or as a subcontractor on any team other

than the VSolvit team expressly contemplated by the agreement"; (2) "enjoin defendants from

entering into any teaming arrangements with other offerors under the Beech program now or at

any time hereafter"; and (3) "compel defendants to team with VSolvit on an exclusive basis for

the award of the Beech contract, including the submission of a proposal in good faith."[23]

**Discussion**

        A preliminary injunction is an "extraordinary" remedy "never awarded as of right."[24]

The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain

an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they

are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of

equities tips in [their] favor, and that an injunction is in the public interest."[25]   The Ninth Circuit

recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions

---

[22] *Id.* at ¶¶ 102–125.

[23] ECF No. 4 at 31.  VSolvit filed two identical motions, one docketed as a motion for a temporary-restraining order (ECF No. 3) and the other as a preliminary-injunction motion (ECF No. 4).  I cite to ECF No. 4 as a reference to both motions.

[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[25] *Id.* at 20.

5

going to the merits'—a lesser showing than likelihood of success on the merits—then a

preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs'

favor,' and the other two *Winter* factors are satisfied."[26]

**A.     VSolvit may succeed on the merits of its anticipatory-breach claim, but not its alternative implied-breach claim.**

   *1.     Anticipatory breach*

        VSolvit's claim for anticipatory breach of contract is bolstered by allegations that the

defendants are likely to form a rival team to bid on the Beech contract that is in direct violation

of the teaming agreement's exclusivity clause.[27]  The defendants respond that they did not breach

the agreement: they exercised their contractual right to terminate for convenience, and no

contractual provision prevented them from doing so.[28]  They also argue that, because they

terminated the agreement, the exclusivity provision no longer governs their actions.[29]  They point

to the fact that the agreement contains a survivability clause, and the exclusivity provision is not

listed in it.[30]  VSolvit accuses the defendants of writing out the portion of the exclusivity clause

that explicitly prohibits the subcontractors from "enter[ing] into any team arrangements with

other offerors under the Program **after this Agreement**," which clearly binds the parties to the

exclusivity clause even when the contract ends.[31]

---

[26] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[27] ECF No. 1 at ¶ 120.

[28] ECF No. 18 at 19–20.

[29] *Id.* at 21–23.

[30] *Id.*

[31] ECF No. 4 at 20–23 (quoting ECF No. 4-1 at § 1.3) (emphasis added).

At this stage I find that VSolvit's argument that the exclusivity clause of the contract survived termination has a likelihood of success on the merits, such that the defendants' obligation not to "enter into any teaming arrangements with other offerors under the program after this Agreement" would remain in effect.  This reading gives meaning to the plain language of the contract, which imposes responsibilities when the agreement ends.[32]

The defendants invoke the *expressio unius est exclusion alterius* doctrine to contend that, because the exclusivity clause is not mentioned in the contract's survivability clause, it does not survive termination.[33]  But the *expression unius* doctrine—a doctrine more often utilized when interpreting statutory text and meaning "the expression of one thing excludes others"—is not absolute, and "is properly applied only when it makes sense" in the context of the parties' expressed intent.[34]  Here, there is no indication that the parties would have preferred the survivability clause to void unambiguous language elsewhere in the contract that also permits survival.[35]  To adopt defendants' interpretation would require me to excise the term "after the

---

[32] *See Fed. Nat'l Mortg. Ass'n v. Westland Liberty Village, LLC*, 515 P.3d 329, 334 (Nev. 2022) (stating that, under Nevada law, courts "interpret unambiguous contracts according to the plain language of their written terms").

[33] ECF No. 18 at 22.

[34] *See United States v. Bert*, 292 F.3d 649, 653 n.12 (9th Cir. 2002) (analyzing the maxim in the statutory-interpretation context and noting that it is "a product of logic and common sense, properly applied only when it makes sense as a matter of legislative purpose" (cleaned up)); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (noting that the *expressio unius* canon applies only when it can reasonably be inferred that the "items not mentioned were excluded by deliberate choice, not inadvertence").  The Supreme Court of Nevada has applied the *expression unius* doctrine to contracts.  *Flyge v. Flynn*, 166 P.2d 539, 557 (Nev. 1946) (noting that the maxim is "frequently applied in the construction of statutes," but also of "deeds, conveyances, contracts, and other instruments"); *Nevada Food King, Inc. v. Reno Press Brick Co.*, 400 P.2d 140, 142 (Nev. 1965) (applying the *expression unius* maxim to interpret a contract).

[35] *See Int'l Longshore & Warehouse Union v. NLRB*, 978 F.3d 625, 642 (9th Cir. 2020) ("[T]he parties would have had no reason to add a term . . . [to one part of a contract] if [another] section has already done so.").

7

agreement" from the contract's exclusivity clause, and this I cannot do.[36]  VSolvit has also shown, and the defendants do not dispute, that Sohum and CITI intend to bid on the Beech contract in a manner that would violate the exclusivity clause.  So VSolvit may be able to succeed on the merits of its anticipatory-breach claim.

### 2.    *Implied breach of the covenant of good faith and fair dealing*

VSolvit alternatively pleads a claim for breach of the implied covenant of good faith and fair dealing under the theory that, even if defendants validly terminated the contract, they acted in bad faith when they terminated "in order to team together to submit a bid for the Beech contract with Sohum to serve" as the prime contractor.[37]  Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract, and a party breaches that covenant when it acts in bad faith.[38]

VSolvit fails to demonstrate that the defendants acted in bad faith when they terminated the agreement.  Indeed, CITI and Sohum present evidence that all parties—including VSolvit— were in discussions to make Sohum the prime contractor and VSolvit a subcontractor and appeared close to reaching an agreement about that change when the defendants sent their termination emails.[39]  VSolvit doesn't dispute that series of events.[40]  So VSolvit's implication that it was somehow caught by surprise by the termination or that the defendants  "laid in wait"[41] before terminating within weeks of the Beech contract's release is just not borne out by the

---

[36] *Westland Liberty Village*, 515 P.3d at 334 ("Contracts must be read as a whole without negating any term").

[37] ECF No. 1 at ¶ 120.

[38] *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989).

[39] *See* ECF No. 18 at 14–15.

[40] *See* ECF No. 28.

[41] *Id.* at 6 (cleaned up).

1     record.  So I find at this stage that VSolvit is unlikely to succeed on the merits of its alternative

2     bad-faith theory, and I proceed with the irreparable-harm analysis on the anticipatory-breach

3     claim only.

4     **B.**     **The damage VSolvit complains of does not stem from violation of the exclusivity clause or can be remedied by monetary damages.**

5

6          ***1.***     ***An order compelling the defendants to bid with VSolvit would not be narrowly tailored to the likely breach of the exclusivity clause.***

7        While VSolvit's argument that the exclusivity clause survives termination may succeed,

8     it does not explain how the breach of that agreement warrants the drastic remedy of compelling

9     the defendants to carry out the entirety of the contract.  VSolvit does not deny that the teaming

10    agreement contains uninhibited permission for any party to terminate the teaming contract at any

11    time with written notice.  And it does not dispute that the defendants gave written notice when

12    they invoked the termination-for-convenience clause.  So, at this stage, VSolvit has not shown

13    that it could succeed on the merits of a claim alleging that the defendants did not validly

14    terminate portions of the agreement that did not survive; it only alleges and it has only shown

15    that the defendants violated the surviving exclusivity clause.  And if the agreement has been

16    terminated, there is nothing left to compel compliance with because there no longer exists a valid

17    and enforceable contract between the parties to enforce, at least as it relates to completing the bid

18    as a team.  So at least part of the relief VSolvit seeks—compelling the defendants to unite with

19    VSolvit to bid on the Beech contract—is unavailable here.

20

21

22

23

**2.       *VSolvit has not shown that it would suffer irreparable harm if the defendants are not enjoined from separately bidding on the contract.***

"An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility or some remote future injury, or a conjectural or hypothetical injury."[42] Showing only "mere monetary harm" or even "financial hardship" will typically not do[43] because "[s]uch injury can be remedied by a damage award."[44]  VSolvit contends that it will suffer irreparable harm in the form of a lost opportunity to fairly compete for the contract if Sohum and CITI bid without it.  I find this argument unconvincing.

VSolvit's out-of-circuit authority to support its assertion that the "lost opportunity to compete on a level playing field for a contract" constitutes irreparable harm is readily distinguishable from the facts of this case.  In those cases, the courts found irreparable harm when companies sued the United States for creating barriers to bidding for a government contract at all.[45]  This situation is not analogous: nothing but lack of preparation prevents VSolvit from putting together a team (for which it already has one subcontracting partner even without Sohum and CITI), and the harm that VSolvit alleges stems from the timing of Sohum and CITI's valid termination of the contract as a whole, not from the anticipatory breach of the exclusivity clause.

---

[42] *Park Village Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011).

[43] *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990).

[44] *Rent–a–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

[45] *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 495 (2013); *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 544 (2010); *see also United Techs. Commc'ns. Co. v. Wash. Cnty. Bd.*, 624 F. Supp. 185, 188 (D. Minn. 1985) (similarly holding that a county's bidding process could deprive companies of the opportunity to compete).

1   The court cannot award injunctive relief to correct for an outcome expressly permitted by the

2   parties' contract.[46]

3          The most analogous case VSolvit cites—*Beacon Associates Inc. v. Apprio, Inc.*—is also

4   distinguishable.  There, the parties' contract restricted the availability of monetary damages and

5   specifically anticipated the potential of equitable remedies.[47]  It prohibited any party from

6   recovering damages for "lost profits, lost revenues, or lost business opportunities," which would

7   have prevented the complaining party from getting damages for the potential loss of the

8   government contract at issue.[48]  VSolvit's teaming agreement has no comparable restriction and

9   indeed specifies that all parties can be held liable for "consequential, incidental, special, punitive,

10  and any other type of indirect damages arising out of or relating to this agreement," including

11  "recovery of loss of use, lost income, lost or anticipated profits, lost revenue or business, and the

12  cost of procuring substitute goods or services."[49]  So because VSolvit has not shown that the

13  harm it faces rises above economic and compensable harm, the drastic relief it seeks is not

14  available.

15

16         **3.      *VSolvit did not seek narrowly tailored relief for its allegations that the
                     defendants have access to its confidential information.***

17         The only remaining harm that VSolvit alleges stems from the defendants' alleged receipt

18  and use of VSolvit's confidential and proprietary information.  The parties dispute whether the

19

20  [46] *See, e.g.*, *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (noting that "self-inflicted wounds are not irreparable injury"); *Epic Games, Inc. v. Apply Inc.*, 493 F. Supp. 3d 817, 845

21  (N.D. Cal. 2020) (noting that "courts generally decline to find irreparable harm that 'results from the express terms of the[ir] contract'") (quoting *Salt Lake Trib. Pub. Co., LLC v. AT&T Corp.*,

22  320 F.3d 1081, 1106 (10th Cir. 2003)).

    [47] *Beacon Assoc., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 290 (D.D.C. 2018).

23  [48] *Id*. at 289.

    [49] ECF No. 4-1 at § 4.2.

information VSolvit identifies is truly confidential and whether the defendants had access to it at all.  But even if I found that the defendants do have access to VSolvit's confidential documents, the relief VSolvit seeks is not narrowly tailored to this specific harm.  Normally, a plaintiff in this situation would seek a court order directing the defendant to destroy any confidential information in its possession and enjoining its use in the upcoming Beech contract bid.  VSolvit has not requested this relief, instead requesting that the defendants be enjoined from bidding at all.  That request reaches far beyond the harm caused by a competitor using a company's proprietary documents.  I thus deny VSolvit's motions for a temporary-restraining order and a preliminary injunction in their entirety.

## Conclusion

**IT IS THEREFORE ORDERED** that plaintiff VSolvit Inc.'s motions for a temporary restraining order and preliminary injunction **[ECF Nos. 3 and 4] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
May 9, 2023