**Marquis Aurbach**
Christian T. Balducci, Esq.
Nevada Bar No. 12688
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
Email: cbalducci@maclaw.com

Maurice VerStandig
Nevada Bar No. 15346
THE VERSTANDIG LAW FIRM, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012
Telephone: (301) 444-4600
Email: mac@mbvesq.com

Matthew E. Feinberg (*pro hac vice*)
Todd Reinecker (*pro hac vice*)
Mansitan Sow (*pro hac vice*)
Matthew T. Healy (*pro hac vice*)
**PILIEROMAZZA PLLC**
1001 G Street, NW, Suite 1100
Washington, D.C. 20001
Telephone: (202) 857-1000
Email: mfeinberg@pilieromazza.com
Email: treinecker@pilieromazza.com
Email: msow@pilieromazza.com
Email: mhealy@pilieromazza.com

*Attorneys for Plaintiff, VSolvit LLC*

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VSOLVIT LLC, a Nevada limited liability company<br><br>Plaintiff,<br><br>v.<br><br>SOHUM SYSTEMS, LLC, and CREATIVE INFORMATION TECHNOLOGY, INC., a Maryland corporation<br><br>Defendants. | Case Number 2:23-cv-00454-JAD-DJA<br><br>**PLAINTIFF VSOLVIT LLC'S AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**PLAINTIFF VSOLVIT LLC'S AMENDED COMPLAINT**

Plaintiff, VSolvit LLC ("Plaintiff" or "VSolvit"), a Nevada limited liability company, in the above-entitled action, by and through its undersigned counsel, hereby demands judgment against Defendants, Sohum Systems, LLC ("Sohum"), a Kansas limited liability company, and Creative Information Technology, Inc. ("CITI"), a Maryland corporation (collectively, "Defendants"), jointly and severally, for the equities and amounts set forth herein, and as its Amended Complaint, states as follows:

**NATURE OF THE CASE**

1. This matter arises out of a dispute between government contracting teaming partners.

2. In preparation for bidding on a lucrative federal contract with the United States Department of Agriculture, VSolvit, Sohum, and CITI (collectively, the "Parties") entered into an exclusive teaming agreement that set forth the requirements of the Parties' joint business relationship.

3. Specifically, VSolvit or its designee was to serve as the prime contractor (the "Prime") for the bid, while Sohum and CITI were to serve as subcontractors.

4. As the formal bidding process neared, however, Sohum and CITI colluded to breach the exclusivity requirements of the teaming agreement, remove VSolvit as the Prime, and bid together using VSolvit's confidential and proprietary information to do so.

5. VSolvit now seeks redress for Defendants' breach of the teaming agreement and other misconduct as described herein.

**PARTIES, JURISDICTION, & VENUE**

6. Plaintiff, VSolvit LLC, is a Nevada limited liability company, duly organized and existing and owned and operated under and by virtue of the laws of the State of Nevada, with a principal place of business at 4171 Market Street, Suite 2, Ventura, California, 93003. For purposes of subject-matter jurisdiction, VSolvit is a citizen of Nevada and Tennessee, which are the states of citizenship of all of its members.

7. Defendant Sohum Systems, LLC is a Kansas limited liability company, duly

organized and existing and owned and operated under and by virtue of the laws of the State of Kansas, with a principal place of business at 9232 W. 143rd Terrace, Overland Park, Kansas 66221. On information and belief, for purposes of subject-matter jurisdiction, Sohum is a citizen of Kansas, which is the state of domicile of all of its members.

8. Defendant Creative Information Technology, Inc. is a Maryland corporation, duly organized and existing and owned and operated under and by virtue of the laws of the State of Maryland, with a principal place of business at 12709 Greenbriar Road, Potomac, Maryland 20854. On information and belief, for purposes of subject-matter jurisdiction, CITI is a citizen of Maryland, which is the state of its incorporation and where its principal place of business is located.

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship among the Parties and the amount in controversy exceeds the value of $75,000.00.

10. This Court has personal jurisdiction over Defendants because Sohum and CITI have purposefully availed themselves of the privilege of conducting activities in the State of Nevada and have sufficient minimum contacts with the State of Nevada such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. Specifically, Sohum and CITI agreed to the exclusive jurisdiction of the state and federal courts in and for the State of Nevada for resolution of disputes related to breach of the exclusivity provisions of their teaming agreement.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this suit occurred in this judicial district, and the Parties agreed that the state and federal courts in and for the State of Nevada would be the stipulated venue for resolution of disputes related to breach of the exclusivity provisions of their teaming agreement.

/ / /

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## FACTS COMMON TO ALL COUNTS

**A. Federal Government Contracting**

12. The Federal Acquisition Regulations ("FAR") system governs the federal government procurement process. The FAR is a codification and publication of uniform procedures for acquisition by all executive agencies.

13. When a government agency has a requirement to be fulfilled by contractors, it may issue a Request for Proposals ("RFP") or Solicitation for bids ("Solicitation"). The type of economic activity that will be performed under the contract is classified under the North American Industry Classification System ("NAICS"). NAICS uses a six-digit hierarchical coding system to classify all economic activity into twenty industry sectors.

14. Contractors that operate under the corresponding NAICS code(s) assigned to the RFP may submit an offer/proposal/bid for award of a federal government contract.

15. Contractors that operate under the same NAICS codes are competitors because they are eligible to bid and actually bid on federal contracts available under those NAICS codes.

16. Upon submissions of offers/proposals/bids by proposed contractors, the government agency issuing the federal contract reviews the offers and issues a contract award to the successful offeror.

17. Depending on the RFP and contract in question, the Government can award a stand-alone contract; a contract vehicle under which awardees will compete for and/or receive task orders; or task orders under those vehicles.

**B. Teaming Arrangements**

18. Under FAR 9.602(a), contractors can combine their capabilities to bid on federal procurement opportunities by executing a teaming arrangement in order to submit a well-rounded proposal that they believe presents better value than submitting a proposal on their own.

19. Teaming arrangements permit contractors to better respond to Solicitations while offering the federal government the benefits of an improved team bid.

20. Pursuant to FAR 9.603, the Government is required to recognize the integrity and validity of contractor teaming arrangements provided those arrangements are identified and company relationships are fully disclosed in an offer.

21. In accordance with FAR 9.601, a teaming arrangement can be composed of a partnership/joint venture or one of the members of the teaming arrangement can act as the prime contractor with the other companies acting as the prime contractor's subcontractors. The latter type of these arrangements is commonly referred to as a "teaming agreement."

**C. Background on the Parties**

22. VSolvit has been in operation since 2006 as a government contractor that offers various services and products primarily centered on Information Technology ("IT"). VSolvit's services include cyber security management, cloud computing, engineering services, and program and project management.

23. As part of its business, VSolvit participates in the Federal Government's procurement process, wherein VSolvit and other contractors compete against one another by submitting respective bids in response to Solicitations released by various federal agencies. Also as part of its business, VSolvit performs work as a subcontractor under prime contractors that were awarded government contracts.

24. VSolvit operates under the following NAICS codes: 541715, 541330, 541370, 541511, 541512, 541513, 541519, 541611, 541614, 541618, 541620, 541690, 541810, 541990, 561110, 561210, 561410, 561990, and 611420.

25. CITI has been in operation since 1996 as a government contractor that offers various services and products primarily centered on IT. CITI's services include cyber security management, cloud computing, engineering services, and program and project management.

26. As part of its business, CITI participates in the Federal Government's procurement process, wherein CITI and other contractors compete against one another by submitting respective bids in response to Solicitations released by various federal agencies.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Also as part of its business, CITI performs work as a subcontractor under prime contractors that were awarded government contracts.

27. CITI operates under the following NAICS codes: 541511, 323111, 334111, 334112, 334118, 334290, 334511, 334614, 423430, 488119, 488210, 488390, 488490, 488999, 511120, 511210, 517911, 518210, 519120, 519130, 519190, 532420, 541330, 541370, 541430, 541490, 541512, 541513, 541519, 541611, 541614, 541618, 541690, 541990, 561110, 561210, 561320, 561410, 561621, 561990, 611420, 611430, 611710, 621999, 811212, and 811213.

28. Sohum has been in operation since 2013 as a government contractor that offers various services and products primarily centered on IT. Sohum's services include cyber security management, cloud computing, engineering services, and program and project management.

29. As part of its business, Sohum participates in the Federal Government's procurement process, wherein Sohum and other contractors compete against one another by submitting respective bids in response to Solicitations released by various federal agencies. Also as part of its business, Sohum performs work as a subcontractor under prime contractors that were awarded government contracts.

30. Sohum operates under the following NAICS codes: 541511, 541330, 541512, 541513, and 541519.

**D. CIO-SP3 Small Business Contract Vehicle**

31. "Chief Information Officer-Solutions and Partners 3 Small Business" ("CIO-SP3 SB") is an Indefinite Delivery/Indefinite Quantity ("IDIQ"), unrestricted multiple award contract ("MAC"), small business contract vehicle held by 307 businesses, including VSolvit and Sohum.

32. VSolvit was awarded CIO-SP3 on May 11, 2020, and Sohum received it via Government-approved novation (i.e., acquisition or transfer from another contractor) on December 5, 2022.

33. Under CIO-SP3, the Government issues RFPs for task orders.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**E. USDA FPAC Farm Programs Software Delivery (Beech)**

34. USDA FPAC Farm Programs Software Delivery ("Beech") is a task order that was issued by the United States Department of Agriculture ("USDA") for competitive bids on June 16, 2023 under the CIO-SP3 SB contract vehicle.

35. By issuing Beech under CIO-SP3 SB, the USDA limited competition to contractors who hold a CIO-SP3 SB prime contract.

36. Beech was a consolidation of several existing task orders, including two task orders previously being performed by VSolvit and the Defendants under a subcontracting relationship: (1) USDA FSA Application Development Common Farm Program Systems; and (2) USDA FSA Application Development Subsidy and Disaster Systems (hereinafter collectively referred to as the "Task Orders" for the "PARMO" contract). Beech was to be a long-term contract; bidding opportunities do not arise often for such lucrative, long-term contracts, particularly for small businesses.

**F. PARMO Contract**

37. On or about May 23, 2012, the Department of Health and Human Services awarded the CIO-SP3 unrestricted vehicle to CITI.

38. On or about August 15, 2017, the USDA issued to CITI the Application Development Subsidy and Disaster Systems Task Order under the CIO-SP3 unrestricted vehicle.

39. On or about September 11, 2017, the USDA issued to CITI the Application Development Common Farm Program Systems Task Order under the CIO-SP3 unrestricted vehicle.

40. On October 12, 2017 and October 16, 2017, VSolvit and the Defendants entered into agreements ("PARMO Agreements") to split the workshare of the Task Orders, with each party being guaranteed at least 25% of the work performed under the PARMO contract.

41. Per the PARMO Agreements, VSolvit and the Defendants were to share revenue and profits equally. Each of the Parties was to receive a 25% workshare, with the

remaining 25% to either be allocated to a third party or split evenly among the parties. The parties were to true up the revenue share at the end of each quarter in order to ensure each of them met their desired goal.

42. Over the term of the PARMO Agreements, Defendants failed to allocate equal workshare and revenue to VSolvit. In the quarter ended December 31, 2022, for instance, VSolvit received only 13.46% of the workshare on the PARMO contract, while CITI and Sohum unduly benefited from 36.77% and 49.77% workshare, respectively.

**G. Teaming Agreements for Beech RFP**

43. Given the importance of the Beech contract to the Parties' businesses, in Spring 2022, approximately a year before the Beech RFP would be issued, the Parties began to prepare for the upcoming bid.

44. VSolvit, Sohum, and CITI decided to team together because they each possess unique capabilities, experience, and past performance with USDA, including all serving as incumbent contract performers for USDA on the PARMO contract.

45. On June 13, 2022, VSolvit and Defendants entered into and executed Teaming Agreement T724-20889 (hereinafter, the "Agreement") for the pursuit of Beech. A true and correct copy of the Teaming Agreement, redacted of confidential and proprietary information, is appended hereto and marked as Exhibit A.

46. Under Article 1.1 of the Agreement, VSolvit has the sole and exclusive discretion to serve as or designate the prime contractor ("Prime") for the pursuit of Beech. Exhibit A § 1.1.

47. Indeed, VSolvit could choose to designate itself or a teaming partner or joint venture in which it was an owner as the Prime, depending on the procurement vehicle under which the Beech RFP would be issued. *Id.* At the time the parties entered the Agreement, the USDA had not disclosed the vehicle under which Beech would be issued.

48. The position of Prime was of critical importance to VSolvit because it permits VSolvit to maintain control over its workshare, which, as described above, it was not able to do when CITI was Prime for the PARMO contract.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

49. The Agreement also requires Defendants to commit to an exclusive relationship with each other to support the designated Prime in the pursuit of Beech. *Id.* § 1.3.

50. Specifically, under Article 1.3 of the Agreement, Defendants agreed to

> commit to an exclusive agreement for Subcontractors to support Prime Contractor. Subcontractors shall not act as a Prime offeror, have not entered into any teaming arrangements with other offerors under the Program prior to this Agreement, nor will they enter into any teaming arrangements with other offerors under the program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. [ ] Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.

*Id.*

51. Exclusivity was the primary and material purpose of the Agreement. The fact that the parties had agreed to team exclusively gave VSolvit the trust and peace of mind necessary for VSolvit to share its win themes and strategies and its confidential and proprietary information in pursuit of the best possible proposal for the Beech contract.

52. VSolvit expected Defendants to abide by the exclusivity provisions in the Agreement.

53. The exclusivity provision was material to VSolvit, and VSolvit would not have entered into the Agreement without Defendants' promises of exclusivity.

54. As early as April 2022, VSolvit and Defendants began discussing win themes for their pursuit of the Beech contract.

55. On May 2, 2022, VSolvit sent an Initial Gate Review email to Defendants indicating that VSolvit would be the Prime under Beech. Subsequent documentation and correspondence reinforced this designation, including, without limitation, VSolvit's Request For Information response and USDA FPAC Beech 1 - Pre-Proposal Kickoff Presentation.

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

56. On May 6, 2022, Plaintiff and Science Application International Corporation (hereinafter, "SAIC"), executed Teaming Agreement T712-20889 for the pursuit of Beech, with SAIC to act as a separate subcontractor to VSolvit.

57. This separate teaming arrangement between VSolvit and SAIC was specifically permitted by Section 1.3 of the Agreement. *Id.* ("Prime Contractor shall have the right to contract with other entities to supplement Prime Contractor's team for this Solicitation.").

58. The agreement with SAIC contained the same exclusivity provision that was included in the Agreement. SAIC agreed to this exclusive relationship with VSolvit.

59. VSolvit, Defendants, and SAIC began pre-proposal activities in September 2022.

60. Over the course of the parties' work toward obtaining the Beech contract, VSolvit conducted many team planning meetings designed to move the team's proposal forward in a cohesive and collaborative way.

61. From September 2022 through February 2023, the Parties exchanged confidential and proprietary information related to the upcoming bid, including VSolvit's proposed technical approach for the Beech work.

62. VSolvit provided Defendants its confidential and proprietary information in order to coordinate and enhance the parties' efforts on the Beech bid.

63. From September 2022 through January 2023, the Parties and SAIC worked in collaboration to develop win themes (i.e., strategies for success in the bidding process) for the Beech proposal submission.

64. The win theme documents discussed then-current known challenges on all programs and developed concepts for mitigation strategies to be employed in the event of the award of Beech to the VSolvit team. They also contained VSolvit's internal process of developing win theme statements as well as complete win theme statements and differentiators. Essentially, these documents set forth VSolvit's detailed win strategy for the Beech procurement. Therefore, a competitor's use of this information would give the

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

competitor an undue and unfair competitive advantage in the bidding process and allow the competitor to develop similar win themes or develop points of emphasis against VSolvit's solution to discredit it.

65. These win themes were shared with Sohum and CITI only because the Parties had agreed to an exclusive teaming arrangement where they would combine their capabilities to create the best possible chance that the team, with VSolvit as the Prime, would win the Beech award. VSolvit never would have shared its confidential and proprietary information with Defendants if not for Defendants' clear and unequivocal promise of exclusivity.

66. Meanwhile, unbeknownst to VSolvit, Sohum and CITI were negotiating and colluding behind the scenes to improperly exit the teaming arrangement, wrest control of the upcoming bid, minimize VSolvit's participation (just as they had done with regard to the PARMO contract workshare), and utilize VSolvit's confidential and proprietary information for their own substantial benefit.

**H. Defendants' Improper Termination for Convenience & Anticipatory Breach of the Agreement**

67. Sohum's and CITI's scheme came to fruition when, on February 9, 2023, Sohum sent an email to VSolvit stating its desire to terminate the Agreement for convenience pursuant to Article 10.4 and pursue Beech as a Prime offeror. Sohum also stated its desire to engage SAIC as a subcontractor and to modify the terms of VSolvit's teaming agreement with SAIC.

68. That same day, February 9, 2023, CITI also sent an email to VSolvit stating that it was terminating the Agreement for convenience pursuant to Article 10.4 and would be moving forward under Beech on a team with Sohum as Prime. CITI also expressed its desire to use in its alternate teaming arrangement with Sohum as Prime all of the information that had been collected from VSolvit.

69. A termination for convenience of the Agreement does not absolve Defendants of their obligation to team exclusively with VSolvit as the Prime.

70. Sohum's and CITI's notices to VSolvit that they intended to enter into a separate teaming arrangement for the Beech RFP with SAIC were anticipatory breaches or repudiations of the Agreement.

71. Section 1.3 of the Agreement specifically states that the Parties "shall not act as a Prime offeror" and will not "enter into any teaming arrangements with other offerors under the Program after this Agreement[,]" which is a specific reference to exclusivity continuing even after a termination.

72. Nevertheless, on February 9, 2023, both Sohum and CITI expressly and/or impliedly informed VSolvit that they would not perform their obligations under the Agreement.

73. On February 11, 2023, VSolvit responded back to Sohum to inform it that VSolvit did not agree to a change in Prime. In this email, VSolvit also reminded Sohum that discussions with SAIC were unacceptable given VSolvit's exclusive relationship with SAIC. CITI was copied on this email.

74. SAIC also informed VSolvit that CITI reached out to SAIC directly to discuss Beech.

75. On February 21, 2023, VSolvit sent letters to Defendants demanding that the Defendants cure their breach of the Agreement by February 23, 2023. Defendants refused.

76. Thereafter, the parties continued to discuss possible solutions to resolve Defendants' anticipatory breach of the Agreement.

77. Defendants refused to cure or to commit to performing their obligations under the Agreement.

78. Instead, when the Beech bids were due, Sohum submitted a bid as Prime with CITI as a primary subcontractor. VSolvit was not included in the Sohum bid.

79. VSolvit also submitted a bid in response to the Beech request for proposals. Sohum and CITI did not participate in VSolvit's bid.

80. Sohum's submission of a bid in response to Beech without VSolvit was a breach of the Agreement. Specifically, the Agreement prohibited Sohum from "act[ing] as a

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Prime offeror" for the Beech procurement. The Agreement also required Sohum to team exclusively with VSolvit.

81. CITI's participation on the Sohum bid for Beech also breached the Agreement. Specifically, the Agreement prohibited CITI from entering into a teaming arrangement with Beech offerors other than VSolvit. The Agreement also required CITI to team exclusively with VSolvit.

82. Sohum's and CITI's breaches of the Agreement were material because exclusivity was the primary purpose of the Agreement. The fact that the parties had agreed to team exclusively gave VSolvit the trust and peace of mind necessary for VSolvit to share its win themes and strategies and its confidential and proprietary information in pursuit of the best possible proposal for the Beech contract. VSolvit would not have entered into the Agreement without Defendants' promises of exclusivity.

**I. Defendants' Access of VSolvit's Beech Team Drive**

83. After Defendants terminated the Agreement, and while VSolvit was attempting to resolve Defendants' anticipatory breaches, Defendants continued to access, review, and copy confidential and proprietary documents in the VSolvit Beech team drive, including VSolvit's confidential and proprietary information and technical approach to the Beech program.

84. Sohum's and CITI's access to VSolvit's confidential and proprietary information and technical approach to the Beech program gave Sohum and CITI an unfair advantage in the Beech procurement. Indeed, Sohum and CITI knew, in advance of submitting an offer for the Beech program, what VSolvit intended to include in its proposal to the USDA and its strategies for mitigating performance risks and vulnerabilities.

85. As of no later than February 9, 2023, Sohum and CITI knew that they would not team with VSolvit on the Beech procurement. Nevertheless, on February 10, 2023, Sohum viewed and copied a technical outline the Parties had compiled for their team use on the Beech proposal which was kept on VSolvit's team share drive.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

86. This document outlined VSolvit's strategy for developing its technical response to the upcoming RFP. Use of this information by a competitor would give that competitor insight into VSolvit's technical approach and knowledge of how VSolvit would present that information to the Government, which they could exploit as a building block to improve upon their proposal.

87. On February 14, 2023, Sohum viewed and copied a number of other technical documents, including other technical outlines, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information that had been created for use on VSolvit's bid for the Beech contract.

88. On February 15, 2023, Sohum viewed and copied documents related to the Parties' prior experience on similar projects and resumes of key personnel.

89. On March 2, 2023, Sohum viewed VSolvit's technical outline. The document includes highly confidential and proprietary details leading into VSolvit's proposed solution for the Beech RFP.

90. Sohum viewed the USDA Beech Technical 1 Outline twice: first during a live collaborative technical outline discussion in which Sohum was able to see all of the updates made to the document as they occurred; and the second time after the discussion had concluded.

91. A bidding party's technical approach is a critical factor—indeed often the most critical factor—in government procurements. Technical capability is often what distinguishes a successful contractor from an unsuccessful one.

92. All of the information viewed and downloaded was confidential and proprietary and, if obtained by a competitor, would give that competitor an unfair advantage in the bidding for the Beech contract through detailed knowledge of VSolvit's approach to winning the contract.

93. All of VSolvit's Confidential Information viewed and downloaded by Sohum and CITI constitutes VSolvit's trade secrets.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

94. Once VSolvit's Confidential Information was known to Sohum and CITI, it was impossible for Sohum and CITI to segregate that knowledge from its preparation of a proposal in competition with VSolvit.

95. The only reason Sohum and CITI would access, review, and download VSolvit's confidential and proprietary information after termination is to use the same to compete against VSolvit for Beech.

96. Prior to and during all times relevant to the Beech procurement, VSolvit has invested considerable amounts of time, money, and resources in developing and maintaining its valuable confidential information, including but not limited to, its procurement strategies, win theme details, technical outlines, technical approaches, technical write-ups, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information (collectively, "Confidential Information").

97. In order to protect its Confidential Information, VSolvit, among other things, restricts access to its Confidential Information to employees with a need-to-know; it requires its employees who will have access to such Confidential Information to sign non-disclosure and confidentiality agreements; it limits teaming partners' access to Confidential Information to specific employees with a need-to-know; it enters into non-disclosure and confidentiality agreements with its teaming partners; and it tracks use of its Confidential Information, including by tracking when documents are downloaded from share files. VSolvit also applies restrictive confidentiality legends to Confidential Information to ensure that documents are not shared inadvertently outside the small circle of individuals who are granted access to such information.

98. Thus, VSolvit takes reasonable measures to protect and preserve the secrecy and confidentiality of its Confidential Information and trade secrets.

99. VSolvit has spent many years and considerable sums of money and resources, to develop its valuable confidential information concerning its business, competitive win strategies, and Confidential Information.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

100. VSolvit's Confidential Information and trade secrets described herein relate to products and services VSolvit uses in and intends to use in interstate or foreign commence, including with the USDA and other federal government agencies.

101. VSolvit derives independent economic value, actual and/or potential, from its Confidential Information and trade secrets described herein not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of such information.

102. VSolvit entered into confidentiality and non-disclosure agreements with Sohum and CITI. Indeed, the parties entered into stand-alone non-disclosure agreements to protect the confidentiality of information exchanged in furtherance of the Beech procurement. In addition, Article 6 of the Agreement referenced the parties' non-disclosure agreements and ensured that their confidentiality obligations would survive termination of the Agreement.

103. VSolvit invested many hours and company resources in proposal preparation efforts for the benefit of all team members, and exchanged confidential and proprietary information with Defendants, in reliance on the Parties' mutual promises, as set forth in the Agreement, specifically their agreement to combine their capabilities and team exclusively to respond to the Beech RFP.

104. Those exclusivity requirements were intended by all Parties to last even "after this Agreement" was terminated. Exhibit A § 1.3.

105. VSolvit's attempts to encourage Defendants to cure their anticipatory breach were unsuccessful, and Defendants refused to abide by the exclusivity requirements of the Agreement continues.

106. Defendants misappropriated VSolvit's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq. Specifically, Defendants requested, received, accessed, downloaded (including after Defendants knew they would compete against VSolvit for the Beech procurement), VSolvit's Confidential Information and trade secrets, and, on information and belief, have used VSolvit's Confidential Information and

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

trade secrets, including but not limited to VSolvit's procurement strategies, win theme details, technical outlines, technical approaches, technical write-ups, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information, for Defendants' own commercial advantage to, among other things, compete against VSolvit and pursue the Beech award.

107. At the time of Defendants' acquisition, misappropriation, and misuse of VSolvit's trade secrets, Defendants knew that they did not have VSolvit's consent, either express or implied, to share or use VSolvit's Confidential Information or trade secrets. Moreover, at the time Defendants downloaded and used VSolvit's Confidential Information and trade secrets, they knew or had reason to know that their knowledge of VSolvit's Confidential Information and trade secrets was derived solely and exclusively because of their agreement to use VSolvit's Confidential Information and trade secrets solely and exclusively in conjunction with VSolvit's bid for Beech.

108. Given Sohum's and CITI's knowledge of and access to VSolvit's Confidential Information and trade secrets, Sohum and CITI had an unfair competitive advantage during the procurement process.

**J. The Beech Competition**

109. On July 5, 2023, VSolvit submitted a complete proposal for the Beech procurement.

110. Sohum also submitted a proposal in response to the Beech procurement, with CITI as a teaming partner and proposed subcontractor.

111. Later in July 2023, VSolvit was notified that the USDA had selected VSolvit to advance to the second phase of the procurement process.

112. The only other offeror that advanced to the second phase of the procurement process was the Sohum-CITI team.

113. Because the VSolvit team and the Sohum-CITI team were the top two ranked teams for the Beech procurement, it is unmistakable that the VSolvit team contemplated by the Agreement (i.e., VSolvit as Prime with Sohum and CITI as subcontractors) would have

won the Beech award if not for Sohum's and CITI's breach of their exclusivity obligations set forth in the Agreement.

114. Phase two of the procurement process involved oral presentations to the USDA by the VSolvit team and the Sohum-CITI team.

115. On September 29, 2023, VSolvit was notified that the USDA had awarded the Beech contract to the Sohum-CITI team.

116. On October 10, 2023, VSolvit filed a bid protest with the U.S. Government Accountability Office ("GAO") challenging the USDA's award to Sohum on several grounds.

117. Because the bid protest resulted in a stay of the award to the Sohum-CITI team, the USDA issued a bridge contract (i.e., a contract to bridge the gap between the end of CITI's PARMO contract and the beginning of performance on the eventual Beech contract) to the team of Sohum and CITI.

118. Sohum and CITI excluded VSolvit from the bridge contract and awarded VSolvit no workshare.

119. On January 9, 2024, the USDA issued a Notice of Corrective Action with respect to VSolvit's bid protest. As part of the corrective action, the USDA permitted offerors to submit new price proposals and participate in new oral presentations.

120. After corrective action, the USDA again awarded the Beech contract to the Sohum-CITI team.

121. On February 23, 2024, VSolvit filed new bid protest of the corrective action proposed by the Agency.

122. On March 23, 2024, the USDA gave a further Notice of Corrective Action stating that it intended to cancel the Beech solicitation for purposes of re-evaluating the agency's contract requirements.

123. Sohum and CITI have been performing on the bridge contracts since the improper award of Beech to Sohum, without VSolvit's participation.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

124. In July 2024, the USDA notified VSolvit that it intends to procure the Beech project through a new procurement process.

125. Had Sohum and CITI met their exclusivity obligations under the Agreement, VSolvit would have been awarded Beech and would not have filed a bid protest.

126. Had Sohum and CITI met their exclusivity obligations under the Agreement, VSolvit would be performing on the Beech contract currently, with Sohum and CITI as subcontractors.

127. As a direct and proximate result of Sohum's and CITI's breach of the Agreement, VSolvit suffered damages, including but not limited to the loss of the Beech contract and all revenues and profits associated therewith, the costs associated with all bid protests (including attorneys' fees incurred to resolve the agency's incorrect and unlawful award to the Sohum-CITI team), and other damages.

128. As a direct and proximate result of Sohum's and CITI's misappropriation of VSolvit's Confidential Information and trade secrets, VSolvit has suffered damages, including but not limited to the loss of the Beech contract and all revenues and profits associated therewith, the costs associated with all bid protests (including attorneys' fees incurred to resolve the agency's incorrect and unlawful award to the Sohum-CITI team), and other damages.

129. VSolvit's damages shall be determined at trial, but in all cases exceed the amount of $75,000.00.

130. Defendants actions in misappropriating VSolvit's Confidential Information and trade secrets was wanton, willful, malicious, and in conscious disregard of VSolvit's rights, thus entitling VSolvit to monetary, exemplary, and punitive damages, as well as attorneys' fees and costs.

/ / /

/ / /

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## CAUSES OF ACTION

### Count I – Breach of Contract
### (Against Defendants Sohum and CITI)

131. VSolvit incorporates by reference the allegations contained in Paragraphs 1 through 130 of this Complaint as if fully set forth and restated herein.

132. On June 13, 2022, Plaintiff and Defendants entered into the Agreement, which is a valid and binding contract.

133. Plaintiff satisfied and performed all of its conditions and obligations under the Agreement and was at all times ready, willing, and able to continue performing under the terms of the Agreement.

134. The Agreement contains an exclusivity clause at Article 1.3, which obligated Defendants to "commit to an exclusive agreement for Subcontractors to support Prime Contractor" and "be teamed exclusively with Prime Contractor with regards to the" Beech program and prohibited Defendants from "enter[ing] into any teaming arrangements with other offerors under the Program after this Agreement . . . ." It also expressly prohibited Defendants from acting as a Prime offeror for the Beech contract. Exhibit A § 1.3.

135. Defendants breached the Agreement starting on February 9, 2023 by, *inter alia*, informing VSolvit that they were terminating the Agreement for convenience in order to team together to submit a bid for the Beech contract with Sohum to serve as the Prime.

136. Defendants further breached the Agreement when, *inter alia*, (a) Sohum submitted a bid in response to Beech without VSolvit, because the Agreement prohibited Sohum from "act[ing] as a Prime offeror" for the Beech procurement; (b) Sohum failed to team exclusively with VSolvit for the Beech procurement; (c) CITI participated on the Sohum bid for Beech, because the Agreement prohibited CITI from entering into a teaming arrangement with Beech offerors other than VSolvit; and (d) CITI failed to team exclusivity with VSolvit for the Beech procurement, among other breaches.

137. Sohum's and CITI's breaches of the Agreement were material because exclusivity was the primary purpose of the Agreement. The fact that the parties had agreed

to team exclusively gave VSolvit the trust and peace of mind necessary for VSolvit to share its win themes and strategies and its Confidential Information and trade secrets in pursuit of the best possible proposal for the Beech contract. VSolvit would not have entered into the Agreement without Defendants' promises of exclusivity.

138. As a direct and proximate result of Defendants' breach of the Agreement, their improper access and use of VSolvit's confidential and proprietary information, and the other wrongdoing described herein, Plaintiff has been and will continue to be damaged in an amount to be determined at trial but in no event less than $75,000.00.

**Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Defendants Sohum and CITI)**

139. VSolvit incorporates by reference the allegations contained in Paragraphs 1 through 130 of this Complaint as if fully set forth and restated herein.

140. On June 13, 2022, Plaintiff and Defendants entered into the Agreement, which is a valid and binding contract.

141. Plaintiff satisfied and performed all of its conditions under the Agreement and is ready, willing, and able to continue performing under the terms of the Agreement.

142. The Agreement contains an exclusivity clause at Article 1.3, which obligated Defendants to "commit to an exclusive agreement for Subcontractors to support Prime Contractor" and "be teamed exclusively with Prime Contractor with regards to the" Beech program and prohibited Defendants from "enter[ing] into any teaming arrangements with other offerors under the Program after this Agreement . . . ."

143. The exclusivity provisions of the Agreement were an integral and material part of the Agreement because they fostered trust among the Parties and allowed VSolvit to share confidential and proprietary information about the upcoming bid and VSolvit's strategy for winning the Beech contract as a Prime without the inherent risk and concern that such information would be shared with competitors or used to VSolvit's detriment.

144. Defendants breached their duty of good faith and fair dealing when they undermined the intent and spirit of the Agreement which was centered around exclusivity.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

145. Specifically, on February 9, 2023, Defendants breached the implied covenant of good faith and fair dealing by, *inter alia*, informing VSolvit that they were terminating the Agreement for convenience in order to team together to submit a bid for the Beech contract with Sohum to serve as the Prime.

146. Defendants then breached the implied covenant of good faith and fair dealing again when, *inter alia*, (a) Sohum submitted a bid in response to Beech without VSolvit, because the Agreement prohibited Sohum from "act[ing] as a Prime offeror" for the Beech procurement; (b) Sohum failed to team exclusively with VSolvit for the Beech procurement; (c) CITI participated on the Sohum bid for Beech, because the Agreement prohibited CITI from entering into a teaming arrangement with Beech offerors other than VSolvit; and (d) CITI failed to team exclusivity with VSolvit for the Beech procurement, among other breaches.

147. Even if Defendants' termination for convenience technically complied with the terms of the Agreement, the termination was made in bad faith in an attempt to circumvent Defendants' obligations under the Agreement and undermined the intent and spirit of the Agreement which was centered around exclusivity and collaboration.

148. The parties explicitly agreed that VSolvit would designate the Prime and the others would serve as subcontractors in sole pursuit of Beech. Sohum's independent decision to serve as Prime despite the prohibitions it agreed to in the Agreement, and CITI's desire to team with Sohum in lieu of its binding arrangement with VSolvit, all facilitated through a misguided and bad faith termination for convenience, deprives VSolvit of the benefit of the bargain it justifiably expected at the time of contracting.

149. Furthermore, Defendants' termination for convenience with the intention of bidding competitively against VSolvit is an unfair act that works to VSolvit's disadvantage since it deprives VSolvit of its right to designate the Prime and the benefit of teaming with the other parties as subcontractors.

150. Because Defendants terminated the Agreement for convenience in an attempt to avoid their obligations under the exclusivity clause, they deprived VSolvit of its justified

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

expectations under the Agreement, specifically that it would exclusively team with and combine capabilities with Sohum and CITI in order to put forth a strong bid for the Beech work.

151. The termination for convenience by Sohum and CITI was entirely and exclusively a self-motivated action so that Sohum could control the workshare distribution on the eventual Beech contract award, reduce VSolvit's workshare, just as CITI did on the PARMO contract, and increase Sohum's and CITI's revenues, profits, and workshare on Beech.

152. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing Plaintiff has been and will continue to be damaged in an amount to be determined at trial but in no event less than $75,000.00.

**COUNT III – Misappropriation of Trade Secrets**
**(Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.)**
**(Against Defendants Sohum and CITI)**

153. VSolvit incorporates by reference the allegations contained in Paragraphs 1 through 130 of this Complaint as if fully set forth and restated herein.

154. As set forth above, VSolvit's Confidential Information includes its trade secrets, which are related to products and services VSolvit uses in and intends to use in interstate or foreign commence, including with the USDA and other federal government agencies.

155. VSolvit derives independent economic value, actual and/or potential, from its Confidential Information and trade secrets described herein not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of such information.

156. Prior to and during all times relevant to the Beech procurement, VSolvit has invested considerable amounts of time, money, and resources in developing and maintaining its valuable Confidential Information and trade secrets.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

157.    In order to protect its Confidential Information, VSolvit, among other things, restricts access to its Confidential Information to employees with a need-to-know; it requires its employees who will have access to such Confidential Information to sign non-disclosure and confidentiality agreements; it limits teaming partners' access to Confidential Information to specific employees with a need-to-know; it enters into non-disclosure and confidentiality agreements with its teaming partners; and it tracks use of its Confidential Information, including by tracking when documents are downloaded from share files. VSolvit also applies restrictive confidentiality legends to Confidential Information to ensure that documents are not shared inadvertently outside the small circle of individuals who are granted access to such information.

158.    Thus, VSolvit takes reasonable measures to protect and preserve the secrecy and confidentiality of its Confidential Information and trade secrets.

159.    VSolvit has spent many years and considerable sums of money and resources, to develop its valuable confidential information concerning its business, competitive win strategies, and Confidential Information.

160.    VSolvit entered into confidentiality and non-disclosure agreements with Sohum and CITI.  Indeed, the parties entered into stand-alone non-disclosure agreements to protect the confidentiality of information exchanged in furtherance of the Beech procurement.  In addition, Article 6 of the Agreement referenced the parties' non-disclosure agreements and ensured that their confidentiality obligations would survive termination of the Agreement.

161.    Defendants misappropriated VSolvit's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.  Specifically, Defendants requested, received, accessed, downloaded (including after Defendants knew they would compete against VSolvit for the Beech procurement), VSolvit's Confidential Information and trade

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

secrets, and, on information and belief, have used VSolvit's Confidential Information and trade secrets, including but not limited to VSolvit's procurement strategies, win theme details, technical outlines, technical approaches, technical write-ups, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information, for Defendants' own commercial advantage to, among other things, compete against VSolvit and pursue the Beech award.

162. At the time of Defendants' acquisition, misappropriation, and misuse of VSolvit's trade secrets, Defendants knew that they did not have VSolvit's consent, either express or implied, to share or use VSolvit's Confidential Information or trade secrets. Moreover, at the time Defendants downloaded and used VSolvit's Confidential Information and trade secrets, they knew or had reason to know that their knowledge of VSolvit's Confidential Information and trade secrets was derived solely and exclusively because of their agreement to use VSolvit's Confidential Information and trade secrets solely and exclusively in conjunction with VSolvit's bid for Beech.

163. As a direct and proximate result of Defendants' misappropriation of VSolvit's Confidential Information and trade secrets, VSolvit has suffered damages in an amount to be determined at trial, but in no event less than $75,000.00.

164. Defendants' actions were wanton, willful, malicious, and in conscious disregard of VSolvit's rights, thus entitling VSolvit to monetary, exemplary, and punitive damages, plus attorneys' fees and costs.

**COUNT IV – Misappropriation of Trade Secrets**
**(Nevada Trade Secrets Act, Nev. Rev. Stat. §§ 600A.101, et seq.)**
**(Against Defendants Sohum and CITI)**

165. VSolvit incorporates by reference the allegations contained in Paragraphs 1 through 130 of this Complaint as if fully set forth and restated herein.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

166. As set forth above, VSolvit's Confidential Information includes its trade secrets, which are related to products and services VSolvit uses in and intends to use in interstate or foreign commence, including with the USDA and other federal government agencies.

167. VSolvit derives independent economic value, actual and/or potential, from its Confidential Information and trade secrets described herein not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of such information.

168. Prior to and during all times relevant to the Beech procurement, VSolvit has invested considerable amounts of time, money, and resources in developing and maintaining its valuable Confidential Information and trade secrets.

169. In order to protect its Confidential Information, VSolvit, among other things, restricts access to its Confidential Information to employees with a need-to-know; it requires its employees who will have access to such Confidential Information to sign non-disclosure and confidentiality agreements; it limits teaming partners' access to Confidential Information to specific employees with a need-to-know; it enters into non-disclosure and confidentiality agreements with its teaming partners; and it tracks use of its Confidential Information, including by tracking when documents are downloaded from share files. VSolvit also applies restrictive confidentiality legends to Confidential Information to ensure that documents are not shared inadvertently outside the small circle of individuals who are granted access to such information.

170. Thus, VSolvit takes reasonable measures to protect and preserve the secrecy and confidentiality of its Confidential Information and trade secrets.

171. VSolvit has spent many years and considerable sums of money and resources, to develop its valuable confidential information concerning its business, competitive win strategies, and Confidential Information.

172. VSolvit entered into confidentiality and non-disclosure agreements with Sohum and CITI. Indeed, the parties entered into stand-alone non-disclosure agreements to

protect the confidentiality of information exchanged in furtherance of the Beech procurement. In addition, Article 6 of the Agreement referenced the parties' non-disclosure agreements and ensured that their confidentiality obligations would survive termination of the Agreement.

173. Defendants misappropriated VSolvit's trade secrets, in violation of the Nevada Trade Secrets Act, Nev. Rev. Stat. §§ 600A.010, et seq. Specifically, Defendants requested, received, accessed, downloaded (including after Defendants knew they would compete against VSolvit for the Beech procurement), VSolvit's Confidential Information and trade secrets, and, on information and belief, have used VSolvit's Confidential Information and trade secrets, including but not limited to VSolvit's procurement strategies, win theme details, technical outlines, technical approaches, technical write-ups, experience narratives, staffing plans, company profiles, key personnel resumes, and other confidential and proprietary information, for Defendants' own commercial advantage to, among other things, compete against VSolvit and pursue the Beech award.

174. At the time of Defendants' acquisition, misappropriation, and misuse of VSolvit's trade secrets, Defendants knew that they did not have VSolvit's consent, either express or implied, to share or use VSolvit's Confidential Information or trade secrets. Moreover, at the time Defendants downloaded and used VSolvit's Confidential Information and trade secrets, they knew or had reason to know that their knowledge of VSolvit's Confidential Information and trade secrets was derived solely and exclusively because of their agreement to use VSolvit's Confidential Information and trade secrets solely and exclusively in conjunction with VSolvit's bid for Beech.

175. As a direct and proximate result of Defendants' misappropriation of VSolvit's Confidential Information and trade secrets, VSolvit has suffered damages in an amount to be determined at trial, but in no event less than $75,000.00.

176. Defendants' actions were wanton, willful, malicious, and in conscious disregard of VSolvit's rights, thus entitling VSolvit to monetary, exemplary, and punitive damages, plus attorneys' fees and costs.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff VSolvit prays for judgment against Defendants, jointly and severally, and respectfully requests that this Court award the following relief:

1. An award of actual damages, compensatory damages, and consequential damages in an amount to be proven at the time of trial, but in no event less than $1,000,000.00;

2. An award of pre-judgment and post-judgment interest on such monetary relief;

3. An award of restitution and the disgorgement from the Defendants of all amounts obtained through their wrongful conduct;

4. An award of attorneys' fees and costs VSolvit incurs in litigating this dispute; and

5. Any and all other relief which this Court deems necessary and appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests trial by jury on all matters so triable as of right.

Dated this 24th day of September 2024.

**MARQUIS AURBACH**

/s/ *Christian T. Balducci*
Christian T. Balducci, Esq., NV Bar No. 12688
10001 Park Run Drive
Las Vegas, Nevada 89145

Maurice VerStandig, NV Bar No. 15346
**THE VERSTANDIG LAW FIRM, LLC**
1452 W. Horizon Ridge Pkway, #665
Henderson, Nevada 89012

Matthew E. Feinberg (*pro hac vice*)
Todd Reinecker (*pro hac vice*)
Mansitan Sow (*pro hac vice*)
Matthew T. Healy (*pro hac vice*)
**PILIEROMAZZA PLLC**
1001 G Street, NW, Suite 1100
Washington, D.C. 20001
*Attorneys for Plaintiff, VSolvit LLC.*

**CERTIFICATE OF SERVICE**

On September 24, 2024, I certify that a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will electronically notify all counsel of record.

Thomas Brownell, Esq.
**HOLLAND & KNIGHT, LLP**
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102

Robert R. McCoy, Esq.
**KAEMPFER CROWELL, LTD**
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

Shimora L. Graves, Esq.
**KAEMPFER CROWELL, LTD**
50 West Liberty Street, Suite 700
Reno, Nevada 89501

/s/ *Kellie Piet*
An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816