1  KAEMPFER CROWELL
   Robert McCoy, No. 9121
2  Sihomara L. Graves, No. 13239
   1980 Festival Plaza Drive, Suite 650
3  Las Vegas, Nevada 89135
   Telephone:  (702) 792-7000
4  Facsimile:  (702) 796-7181
   Email: rmccoy@kcnvlaw.com
5  Email: sgraves@kcnvlaw.com

6  HOLLAND & KNIGHT
   Thomas Brownell (*pro hac vice*)
7  1650 Tysons Boulevard, Suite 1700
   Tysons, Virginia 22102
8  Telephone:  (703) 720-8690
   Facsimile:  (703) 720-8610
9  Email: thomas.brownell@hklaw.com

10 Attorneys for Defendants Sohum
   Systems, LLC and Creative
11 Information Technology, Inc.

12              UNITED STATES DISTRICT COURT

13                  DISTRICT OF NEVADA

14 VSOLVIT LLC, a Nevada limited          Case No. 2:23-cv-00454-JAD-DJA
   liability company,
15
                    Plaintiff,
16                                        **MOTION TO DISMISS**
   vs.                                    **PLAINTIFF'S AMENDED**
17                                        **COMPLAINT (ECF NO. 44)**
   SOHUM SYSTEMS, LLC, a Kansas
18 limited liability company; and
   CREATIVE INFORMATION
19 TECHNOLOGY, INC., a Maryland
   corporation,
20
                    Defendants.
21

22      Defendants   Sohum   Systems,   LLC   ("Sohum")   and   Creative

23 Information Technology, Inc. ("CITI") (collectively "Defendants") move to

24 dismiss Counts I and II of Plaintiff VSolvit LLC's ("VSolvit") Amended

Complaint (ECF No. 44) with prejudice.[1]   As explained in the points and authorities below, the Court lacks subject matter jurisdiction for the alleged dispute since the contract in question is moot.  Further, those counts fail to state a claim upon which relief can be granted, since, as a matter of law, VSolvit cannot prove either causation or damages flowing from the breaches alleged.  This motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the attached exhibits, and the following points and authorities.

KAEMPFER CROWELL

Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

HOLLAND & KNIGHT
Thomas Brownell (*pro hac vice*)
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102

Attorneys for Defendants Sohum Systems, LLC and Creative Information Technology, Inc.

---

[1] Defendants do not seek summary dismissal of Counts III and IV of the Amended Complaint, alleging misappropriation of trade secrets, at this time.  Not only are those claims based upon the parties' separate Mutual Non-Disclosure Agreement (ECF No. 44-1 at Ex. C), not the Teaming Agreement itself, but Nevada law makes clear that the Nevada Uniform Trade Secrets Act preempts "(a) contractual remedies, whether or not based upon misappropriation of a trade secret; and (b) other civil remedies that are not based upon misappropriation of a trade secret." N.R.S. 600A.090; *see Frantz v. Johnson*, 999 P.2d 351, 357–58 (Nev. 2000).

**POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In its Amended Complaint, VSolvit picks up where it left off when this Court ruled that Defendants had the right to terminate the parties' Teaming Agreement for convenience and denied VSolvit's motions for injunctive relief in its Order dated May 9, 2023 (ECF No. 33).   VSolvit now seeks the award of damages for Defendants' supposed breach of contract (and breach of the implied covenant of good faith and fair dealing) when, in July, 2023, they submitted their own proposal, in competition with VSolvit, to win the so-called "Beech Solicitation."   Neither VSolvit nor Defendants finally won the Beech contract, however, because VSolvit twice protested USDA's awards to Sohum, prompting the government to cancel the Beech Solicitation in its entirety and seek to procure its needs through another contract vehicle.

In pressing its damages claims, however, VSolvit ignores the fact that with the cancelation of the Beech Solicitation, the Teaming Agreement is now moot and the Court lacks a case or controversy upon which to exercise its jurisdiction.   Neither company won the Beech contract and there are no spoils to allocate or award.

VSolvit also ignores the fact that it cannot show causation for any of its alleged damages, much less their amount, to a reasonable degree of legal certainty.   It is pure speculation for VSolvit to allege, as it does in paragraphs 113 and 125 of the Amended Complaint, that had Sohum not submitted a competitive proposal, VSolvit would necessarily have won the Beech competition, since no party has a right to a government contract and numerous principles of procurement

1   law give direction to or even require a contracting officer to cancel a procurement

2   and resolicit if there is insufficient competition or excessive prices.

3          Finally, any damages claimed are purely speculative, where the

4   contract both parties sought was never finally awarded and where the revenues and

5   profits flowing from that contract are not now and never will be known.

6          For all of these reasons, this Court lacks subject matter jurisdiction

7   over VSolvit's claims and VSolvit cannot state a claim upon which relief can be

8   granted.  The Court must accordingly dismiss Counts I and II of the Amended

9   Complaint, with prejudice, as explained below.

10  **II.     RELEVANT FACTUAL BACKGROUND**

11         **A.     This Action Is Based on the Parties' Teaming Agreement.**

12         As the Amended Complaint alleges, this case arises out of a Teaming

13  Agreement (referred to as the "Agreement") to capture a very specific federal

14  government contract, the "Beech" Task Order, which was to be awarded by the

15  United States Department of Agriculture ("USDA").  The Amended Complaint

16  alleges that the Beech Task Order was to be a combination of the work scopes

17  under two earlier contracts, the Application Development Subsidy and Disaster

18  Systems Task Order and the Application Development Common Farm Program

19  Systems Task Order.  Am. Compl. (ECF No. 44) ¶¶ 38, 39.  Defendant CITI was

20  the prime contractor for USDA on both of those contracts, and was thus primarily

21  responsible to the government for their performance.[2]  *Id.*  VSolvit and Sohum

22  were subcontractors to CITI on those two prior contracts.  *Id.* at ¶ 40.

23  _____

24  [2] The undisputed fact that CITI, not VSolvit, was the prime contractor for the work
constituting the Beech Program refutes VSolvit's contentions (e.g., Amend.

**B.      The Terms of the Teaming Agreement.**

In anticipation of USDA's issuance of a Request for Proposals ("RFP") for the Beech Program, the parties entered into the Agreement, on June 13, 2022.  *Id.* at ¶ 45; Agreement (ECF No. 44-1).  The preamble to the Agreement defined its purpose as follows:

> **WHEREAS,** the USDA (hereinafter referred to as "**Customer**") intends to issue a Solicitation No. TBD (hereinafter referred to as the "**Solicitation**") for the acquisition of USDA FPAC Beech (hereinafter referred to as the "**Program**");
>
> **WHEREAS**, Prime Contractor intends to pursue the Program in response to the Solicitation and has proposed that Prime Contractor and Subcontractors team their diverse and complementary capabilities in accordance with Federal Acquisition Regulations (FAR) Subpart 9.6—Contractor Team Arrangements[.... ]

Agreement (ECF No. 44-1) at 1 (emphasis in original).

The Agreement contained several other clauses of significance to the parties' dispute.  Section 1.3 thus provides, as to "exclusivity" and the roles of the parties:

> 1.3 Exclusivity: Under this Agreement, Subcontractors and Prime Contractor commit to an exclusive agreement for Subcontractors to support Prime Contractor. Subcontractors shall not act as a Prime offeror, have not entered into any teaming arrangements with other offerors under the Program prior to this Agreement, nor will they enter into any teaming arrangements with other offerors under the Program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. Prime Contractor shall have the right to contract with other entities to supplement Prime Contractor's team for this Solicitation.

Compl. (ECF No. 44) ¶¶ 83–103) that it had confidential information unavailable to CITI or Sohum that was entitled to protection under the parties' separate Mutual Non-Disclosure Agreement.

> Further, as a material condition under this Agreement, Subcontractors shall not compete directly or indirectly as a teammate or otherwise participate in proposal activities or capture activities for renewals, options or natural follow-on business to Prime Contractor's Prime Contract, without the prior written approval of Prime Contractor. Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.

*Id.* at 2. Article 10 of the Agreement next defines the Term of the Agreement as well as conditions under which the Agreement ends, either automatically or by the actions of either or both parties. *Id.* at 6. Article 10 of the Agreement, entitled "Term and Termination," thus provides, in part, that

> [t]his Agreement…shall terminate upon the earliest of the following occurrences, unless mutually extended in writing:
>
> 10.1.1 Cancellation of the Program, or formal retraction of the Solicitation; […]
>
> 10.1.3 The Customer releases the Solicitation under a different competition type (e.g., full and open, set aside) than what is specified in this Agreement. […]
>
> 10.1.5 Award of a negotiated subcontract by Prime Contractor to Subcontractors that reflects the Parties' obligations set forth in pertinent provisions of this Agreement, in which case the terms of the Subcontract shall govern the relationship between the Parties and shall supersede the terms hereof; […]
>
> 10.1.10 The elapse of one (1) year after the Effective Date hereof, provided however, that this Agreement shall be extended automatically for one (1) additional year if the Customer has not yet awarded the Prime Contract, or by mutual agreement for a reasonable period of time for completion of pre-contract procurement activities by the Customer, including, without limitation, review and approval of the Prime Contract award, if such have been initiated but not completed by the termination date of this Agreement, or to secure the U.S. Government's Contracting Officer consent/approval for the placement

> of the Subcontract between Prime Contractor and Subcontractors, to the extent such consent/approval is required by the Prime Contract; [….]

*Id.* Article 10 gives any party, including those in the position of Sohum and CITI, the right to terminate the Agreement without cause.  First, § 10.1.9 provides that the Agreement terminates upon:

> 10.1.9 A decision by either Party that it does not wish to participate in the Procurement or in any response to the Solicitation, in any manner, provided that such decision is communicated in writing to the other Party at least thirty (30) days prior to the due date of the initial proposal, offer or quote [….]

*Id.*  Second, § 10.4 gives any party an even broader right, to terminate the Agreement for convenience, at any time:

> 10.4 Any Party may, for its convenience, terminate this Agreement, or any portion thereof, upon written notice to the other Parties.[³]

*Id.* at 7.  Moreover, in Section 15.10 of the Agreement, in Article 15, the parties stipulated which clauses should survive the end of the Term or the termination of the Agreement by the parties.

> 15.10 Survivability. Articles 4, 6, 7, 12, 13 and 14, as well as the NDA obligations, unless otherwise superseded by a subsequent grant between the Parties, shall survive the termination of this Agreement. […]

*Id.* at 9.  Neither Article 1 nor Article 10 survives termination of the Agreement.

---

³ Section 10.4—Termination for Convenience—is not mere surplusage.  Section 10.1.9 allows a party to terminate and withdraw from the Teaming Agreement without cause, but that right is conditioned upon (a) its representation that it does not wish to participate further "in the Procurement or any response to the Solicitation" and (b) that it give notice of its intent to withdraw at least 30 days before proposals are due.  Section 10.4 contains no such conditions.

1

### C.   Defendants' Termination of the Teaming Agreement.

2

Pursuant to Section 10.4, quoted above, Sohum and CITI exercised

3

their right to terminate the Teaming Agreement for their own convenience by

4

separate emails dated February 9, 2023.  Am. Compl. (ECF No. 44) at ¶¶ 67, 68.

5

Even though the parties had previously been negotiating about the possibility of

6

substituting Sohum for VSolvit as the proposed prime contractor for Beech, and

7

even though Sohum and CITI offered to make VSolvit a member of the

8

restructured team,[4] when Sohum and CITI finally acted to terminate the Teaming

9

Agreement on February 9, 2023, VSolvit objected.  *Id.* at ¶ 75.

10

### D.   The Prior Proceedings in This Case.

11

VSolvit then filed a Complaint (ECF No. 1) and Motions for

12

Injunctive Relief (ECF Nos. 3 and 4) in this Court, on March 27, 2023.

13

This Court denied VSolvit's Motions for Injunctive Relief in an Order

14

(ECF No. 33) issued on May 9, 2023.  Among other things, the Court ruled: (a)

15

that the Agreement "contains uninhibited permission for any party to terminate the

16

teaming contract at any time with written notice" (*id.* at 9); (b) that "nothing but

17

lack of preparation prevents VSolvit from putting together a team (for which it

18

already has one subcontracting partner even without Sohum and CITI), and the

19

harm that VSolvit alleges stems from the timing of Sohum and CITI's valid

20

termination of the contract as a whole, not from the anticipatory breach of the

21

---

22

[4] Order (ECF No. 33) at 8 ("CITI and Sohum present evidence that all parties—

23

including VSolvit—were in discussions to make Sohum the prime contractor and VSolvit a subcontractor and appeared close to reaching an agreement about that change when the defendants sent their termination emails. VSolvit doesn't dispute

24

that series of events.") (footnote omitted).

exclusivity clause" (*id.* at 10); and finally, (c) that "VSolvit fail[ed] to demonstrate that defendants acted in bad faith when they terminated the agreement" because "all parties—including VSolvit—were in discussions to make Sohum the prime contractor and VSolvit a subcontractor" at the time of termination (*id.* at 8).

### E.    The Subsequent Events with the Beech Solicitation.

Subsequent to the Court's decision, and more than four months after the termination for convenience of the Teaming Agreement, USDA issued its RFP for the Beech Solicitation.  VSolvit admits that, despite its prior complaints of prejudice, it timely submitted a "complete proposal" in response to the Beech Solicitation on or about July 5, 2023.  Am. Compl. (ECF No. 44) at ¶ 109.  Later in July, USDA notified VSolvit that its proposal was competitive enough that it advanced to the second phase of the procurement process.  *Id.* at ¶ 111.  Sohum also submitted a proposal in response to the Beech Solicitation, listing CITI as its proposed subcontractor.  *Id.* at ¶ 110.  The Sohum/CITI proposal also advanced to the second phase of the procurement.  *Id.* at ¶ 112.

USDA announced its decision to award the Beech Task Order to the Sohum/CITI team on September 29, 2023.  *Id.* at ¶ 115.  VSolvit then filed a bid protest challenging the award with the U.S. General Accountability Office ("GAO") on October 10, 2023.[5]  *Id.* at ¶ 116.

USDA issued a Notice of Corrective Action with respect to the bid protest on January 9, 2024.  *Id.* at ¶ 119.[6]  Following the submission of new price

---

[5] *See* GAO Bid Protest Regulations, 4 C.F.R. Part 21.

[6] A copy of the Notice of Corrective Action is attached at Exhibit 1.

1   proposals and oral presentations by the offerors, USDA *again* awarded the Beech

2   Task Order to Sohum.  *Id.* at ¶ 120.

3           VSolvit filed yet another bid protest of the award with GAO on

4   February 23, 2024.  *Id.* at ¶ 121.  As the result of that second bid protest, USDA on

5   March 23, 2024 issued a second Notice of Corrective Action.  *Id.* at ¶ 122.[7]  This

6   time USDA stated that it intended to cancel the Beech Solicitation for purposes of

7   re-evaluating the agency's contract requirements.  *Id.*  USDA terminated the Beech

8   Solicitation, in its entirety, by Amendment No. 7 to the Solicitation, signed by the

9   Contracting Officer on April 5, 2024.[8]

10         **F.**    **VSolvit's New Amended Complaint.**

11           VSolvit obtained leave to and filed the Amended Complaint on

12   September 24, 2024.  It alleges that, in July 2024, USDA notified VSolvit that it

13   intended to procure the Beech scope of work "through a new procurement

14   process."  *Id.* at ¶ 124.  Because VSolvit's contract claims are moot, however, and

15   because, even if they are not moot, any damages that VSolvit seeks to claim are

16   speculative and not recoverable as a matter of law, Defendants Sohum and CITI

17   bring this motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

18   **III.**    **ARGUMENT**

19         **A.**    **Standard of Review.**

20           When challenged by a motion to dismiss for lack of subject matter

21   jurisdiction under Rule 12(b)(1), "[t]he party asserting jurisdiction bears the burden

22

23   [7] A copy of this Notice of Corrective Action is attached at Exhibit 2.

24   [8] A copy of Amendment No. 7 is attached at Exhibit 3.

1  of establishing subject matter jurisdiction." *In re Dynamic Random Access*

2  *Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984 (9th Cir. 2008) (citing

3  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Dismissal

4  "is appropriate if the complaint, considered in its entirety, on its face fails to allege

5  facts sufficient to establish subject matter jurisdiction." *Id.* at 984–85.  The Ninth

6  Circuit has recognized that a party may bring a motion to dismiss for lack of

7  subject matter jurisdiction under Rule 12(b)(1) on "factual" grounds—presenting

8  facts outside the complaint—as well as "facial" grounds.  *See White v. Lee*, 227

9  F.3d 1214, 1242 (9th Cir. 2000).

10          With respect to a motion to dismiss for failure to state a claim under

11  Rule 12(b)(6), "the trial court must accept as true all facts alleged in the complaint

12  and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut,*

13  *LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (citing *Maya v. Centex Corp.*, 658 F.3d

14  1060, 1067–68 (9th Cir. 2011)).  But "the trial court does not have to accept as true

15  conclusory allegations in a complaint or legal claims asserted in the form of factual

16  allegations." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

17  To survive a Rule 12(b)(6) motion, "a plaintiff must aver in the complaint

18  'sufficient factual matter, accepted as true, to state a claim to relief that is plausible

19  on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

20  quotations omitted)).

21          The Ninth Circuit has explained that district courts generally "may not

22  consider material outside the pleadings when assessing the sufficiency of a

23  complaint" attacked by a Rule 12(b)(6) motion to dismiss for failure to state a

24  claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)

1   (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  However,

2   two exceptions exist: incorporation by reference, and judicial notice pursuant to

3   Fed. R. Evid. 201.  *See id.*  A complaint may incorporate a document by reference

4   "if the plaintiff refers extensively to the document or the document forms the basis

5   of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 907-09 (9th Cir.

6   2003).  While "the mere existence of a document is insufficient to incorporate" its

7   contents into a complaint, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

8   Cir. 2010), incorporation by reference is proper when "the plaintiff's claim

9   depends on the contents of a document, the defendant attaches the document to its

10  motion to dismiss, and the parties do not dispute the authenticity of the document,

11  even though the plaintiff does not explicitly alleged the contents of that document

12  in the complaint."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

13          With respect to judicial notice, "Rule 201 permits a court to notice an

14  adjudicative fact if it is 'not subject to reasonable dispute,'" meaning "it is

15  'generally known' or 'can be accurately and readily determined from sources

16  whose accuracy cannot reasonably be questioned.'"  *Khoja*, 899 F.3d at 999

17  (quoting Fed. R. Evid. 201(b)).  As such, "[a] court may take judicial notice of

18  matters of public record…[b]ut a court cannot take judicial notice of disputed facts

19  contained in such public records."  *Id.* (internal quotations omitted) (first alteration

20  in original).

21      **B.    Rule 12(b)(1) Requires That Counts I and II of the Amended**
        **Complaint Be Dismissed for Mootness Because the Object of the**
22      **Parties' Dispute Has Thus Ended.**

23          The Court should dismiss Counts I and II for lack of subject matter

24  jurisdiction.    The  Constitution  grants  the  federal  judiciary  the  authority  to

KAEMPFER
CROWELL

1    adjudicate only "cases and controversies;" as a consequence, any dispute which is

2    no longer "live" is moot and therefore outside the jurisdiction of the federal courts.

3    *See Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018).  Otherwise stated, an event

4    subsequent to the filing of the case which effectively resolves the parties' dispute

5    will render the case moot.  *See Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1087

6    (9th Cir. 2011).

7             The Agreement which VSolvit claims to have been breached was

8    entered into in order to pursue an award under the Beech Solicitation.  Since that

9    time, however, the Agency has canceled the Beech Solicitation, in its entirety.

10   That in itself constitutes grounds for termination under § 10.1.1 of that Agreement.

11            The Agency likewise has announced its intention to procure the Beech

12   scope of work through a "new procurement process."  This constitutes yet another

13   grounds for termination, under § 10.1.3 of the Agreement, which expresses the

14   parties' intent to abandon the Agreement in the event the government should

15   "release the Solicitation under a different competition type than what was specified

16   in the Agreement."

17            Finally, the Agreement has "timed out," since more than two years

18   have elapsed after the effective date of the Agreement without the award of a

19   Prime Contract under Beech.  *See* Agreement (ECF No. 44-1) § 10.1.10.

20            In short, the subject matter of the Agreement—the Beech Program—

21   has gone away and the Agreement itself has expired, by its own terms.  VSolvit

22   may argue that the action by Sohum in submitting a competing proposal for Beech

23   was the cause of some or all of these events, but an objective review of the facts

24

**KAEMPFER**
**CROWELL**

1  (or the pleaded allegations) shows that it was VSolvit's multiple protests of USDA

2  actions that caused the cancelation of the Program.

3         The cancelation of the Beech Solicitation obviates the purpose of the

4  parties' agreement and makes it impossible for VSolvit to prove damages, because

5  there will be no comparable replacement subcontract.  With the termination of the

6  Beech solicitation, any future solicitation of the work would be a new unique

7  procurement that was not included or anticipated by the parties, with different

8  number solicitation requirements, a new size standard verification and other

9  requirements which each party would have to evaluate independently to determine

10 whether to bid. Therefore, the Agency's decision to cancel the Beech Procurement

11 and issue the Beech 2 procurement is an event subsequent to the filing of the case

12 which resolves the parties' dispute.  Accordingly, the case is moot and the Court

13 must dismiss it.

14  **C.     Counts I and II of the Amended Complaint Must Be Dismissed**
    **for Failure to State a Claim Because VSolvit Cannot, as a Matter**
15  **of Law, Prove Either Causation or Damages.**

16         A motion to dismiss for failure to state a claim tests the sufficiency of

17 the complaint, and facts alleged in the complaint are assumed to be true and

18 construed in favor of the nonmoving party. *See Sprewell v. Golden State Warriors*,

19 266 F.3d 979, 988 (9th Cir. 2001).  "A complaint should not be dismissed unless it

20 appears beyond doubt that the plaintiff can prove no set of facts in support of the

21 claim that would entitle the plaintiff to relief." *Id.*

22         In Count I, VSolvit alleges a claim for breach of contract based on

23 Defendants' termination of the Agreement.  VSolvit must show (1) the existence of

24 a  contract,  (2)  VSolvit  performed  or  was  excused  from  performance,  (3)

KAEMPFER
CROWELL

3820756_2 20934.1

1    Defendants breached the contract, and (4) VSolvit suffered damages as a result of

2    the breach.  *See Patel v. Am. Nat'l Property & Casualty Co.*, 367 F. Supp.3d 1186,

3    1191 (D. Nev. 2019).

4            In Count II, VSolvit alleges a claim for breach of the implied

5    covenant of good faith and fair dealing contained in the Agreement.  VSolvit must

6    show (1) the existence of a contract, (2) Defendants owed a duty of good faith to

7    VSolvit, (3) Defendants breached that duty, and (4) VSolvit was denied its justified

8    expectations.  *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).  The Court

9    previously recognized that Defendants had presented evidence that all parties

10   "were in discussions to make Sohum the prime contractor and VSolvit a

11   subcontractor and appeared close to reaching an agreement about that change when

12   the defendants sent their termination emails." Order (ECF No. 33) at 8.   The Court

13   therefore rejected VSolvit's claim "that it was somehow caught by surprise by the

14   termination" as "just not borne out by the record," and concluded that VSolvit is

15   unlikely to succeed on the merits of this argument, which is now asserted as Count

16   II of the Amended Complaint.  *Id.* at 8–9.

17           **1.      VSolvit Cannot Prove Causation.**

18           The parties' teaming agreement is governed by Nevada law.  Under

19   Nevada law, a plaintiff is required to prove both the *fact* and the *amount* of

20   damages as an element of its contract claim.  *See Mort Wallin of Lake Tahoe, Inc.*

21   *v. Commercial Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989); *Lee v. Enterprise*

22   *Leasing Co.-West, LLC*, 30 F. Supp. 3d 1002, 1019 (D. Nev. 2014); *see also*

23   *Iliescu v. Reg'l Trans. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App.

24   2022) ("a plaintiff must prove both (1) a causal connection between the

KAEMPFER
CROWELL

1    defendant's breach and the damages asserted, and (2) the amount of those

2    damages") (citing *Mort Wallin*, 784 P.2d at 955).  The measure of damages in a

3    repudiated subcontract case is the difference between the price of the original

4    promise and the price of the replacement subcontractor.  *See Dynalectric Co. of*

5    *Nev., Inc. v. Clark & Sullivan Consts., Inc.*, 255 P.3d 286, 290 (Nev. 2011).

6              With respect to both Counts I and II, the Court must dismiss VSolvit's

7    claims because VSolvit cannot demonstrate causation.   Specifically, VSolvit

8    cannot prove that it would have been awarded the Beech Contract in the absence of

9    competition from Sohum where there is no allegation that VSolvit and Sohum

10   were the only teams participating in the solicitation and where the government

11   could have canceled the solicitation for any reason at any time.

12             VSolvit's claims depend on the theory that, absent Defendants'

13   alleged breach, VSolvit would necessarily have been the prime contract awardee of

14   the Beech contract, and therefore, that Defendants' alleged breach denied VSolvit

15   that award.   Am. Compl. (ECF No. 44) ¶¶ 113, 125.   However, as VSolvit

16   acknowledges, the VSolvit team and the Sohum-CITI team were merely the "top

17   two ranked teams" in the competition, not the *only* teams.  *Id.* at ¶ 113.  Therefore,

18   there is no guarantee that, if Defendants had not submitted a separate proposal,

19   VSolvit would have been the *only* offeror to advance to the second phase of the

20   competition.   Indeed, the Agency could have and likely would have selected at

21   least one other team to advance from phase one to phase two of the procurement,

22   and it could have made award to that other offeror, not VSolvit.

23             Likewise, as the courts have recognized, "a citizen has no *right* to a

24   Government contract." *ATL, Inc. v. United States,* 736 F.2d 677, 683 (Fed. Cir.

1984)*, (emphasis in original) (citing *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964)); *see Advanced Systems Technology, Inc. v. United States*, 69 Fed. Cl. 474, 483 n.13 (2006) (explaining that a contractor "does not have a protected property or liberty interest in OHA's designation of a NAICS code that would enable it to qualify as a small business in a given procurement").  Thus, even if VSolvit were the *only* top-ranked offeror, the Agency could still have canceled the procurement and resolicited, as it in fact it is now in the process of doing.  Thus, courts have recognized that there is a "great degree of discretion" given to agency decisions to cancel a solicitation, and a cancellation will be upheld if challenged so long as "the agency provide[s] a coherent and reasonable explanation of its exercise of discretion."  *DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501, 511 (2008) (quoting *Cygnus Corp. v. United States*, 72 Fed. Cl. 380, 385 (2006) (internal quotations omitted)).

Even after submission of proposals, there is no guarantee that any awardee will receive award.  *See* Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 15.305(b) ("The source selection authority *may reject all proposals* received in response to a solicitation, if doing so is in the best interest of the Government.") (emphasis added).  Under certain circumstances and according to "the judgment of the contracting officer," the FAR sometimes even *requires* the agency to "cancel the original solicitation and issue a new one" when, for example, "an amendment proposed for issuance after offerors have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the

1  substance of the amendment been known to them"   *See* FAR § 15.206(e)

2  (emphasis added).

3         Accordingly, regardless of the fact that VSolvit submitted its proposal

4  and regardless of which proposed subcontractors teamed with it, there was never

5  any guarantee of award to VSolvit (or to any offeror), as the agency could have, for

6  example, based on new market research, determined to cancel the solicitation

7  because of changed requirements, substantially amended the solicitation, rejected

8  all offers, or reissued the solicitation as a small business or minority set-aside.

9  VSolvit's allegations rest on the unsupported assumption that none of these

10 actions, which are within the broad discretion of the agency, could have happened.

11        VSolvit's Counts I and II thus depend on a causal chain that is entirely

12 speculative and that does not take into account the uncertainties of bidding in the

13 government procurement space.

14        **2.    Counts I and II Must Be Dismissed Because Any Damages**
          **That VSolvit Claims to Have Suffered Are Entirely**
15        **Speculative.**

16        As explained above, under Nevada law, "a plaintiff must prove both

17 (1) a causal connection between the defendant's breach and the damages asserted,

18 and (2) the amount of those damages." *Iliescu*, 522 P.3d at 458 (citing *Mort*

19 *Wallin*, 784 P.2d at 955).  The amount of damages, in turn, is determined by the

20 difference between the price of the original promise and the price of the

21 replacement subcontractor.  *See Dynalectric Co.*, 255 P.3d at 290.  VSolvit may

22 not succeed based solely on speculative damages, although courts do not require

23 "mathematical certainty."  *See Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*,

24 168 P.3d 87, 97 (Nev. 2007).

KAEMPFER
CROWELL

3820756_2 20934.1

1    As VSolvit acknowledges in the Amended Complaint, on March 23,

2  2024, the Agency announced that it would cancel the Beech Procurement, and in

3  July 2024, the Agency notified VSolvit that it would pursue a new procurement

4  process.  The Agency's actions make it impossible for VSolvit to plead (or prove)

5  damages—a required element of a contract claim—above the level of speculation.

6    First, because damages in this case would be determined based on the

7  difference in price between the original promise and a replacement subcontract, the

8  cancellation of the Beech Procurement removes any measure of damages for

9  VSolvit, as there is and will be no replacement subcontract against which to

10  determine a price difference.  *See Dynalectric Co.*, 255 P.3d at 289–90 (citing

11  *Drennan v. Star Paving Co.*, 333 P.2d 757, 761 (Cal. 1958), for its affirmance that

12  a jilted general contractor was entitled to "the difference between the

13  subcontractor's bid and the amount that the general contractor had to pay the

14  replacement subcontractor to complete the work.")

15    Second, not only is there no replacement subcontract for Beech, but

16  assuming there were, VSolvit would not be entitled to recover the full amount of

17  any resulting *revenues* under that subcontract, but only lost *profits*.  This being a

18  new contract, with no task orders issued for any work, there is no cost history to

19  show what Sohum's profits would have been, or what profits VSolvit would have

20  earned on the same work.  *See, e.g., Road & Highway Builders v. N. Nev. Rebar*,

21  284 P.3d 377, 382 (Nev. 2012) (confirming that the appropriate measure of

22  expectancy damages is lost profits).

23    Third, even if the Defendants executed a new subcontract agreement

24  following a potential award of the to-be-announced procurement that will replace

KAEMPFER
CROWELL

Beech, that subcontract would be for a different procurement—potentially one on which VSolvit could ineligible for award, if it is set-aside for small or minority businesses or competition is otherwise restricted.   As such, a new subcontract would not be a proper comparator "replacement" subcontract; it would be a different subcontract entirely.  *See Dynalectric Co.*, 255 P.3d at 289–90.

Finally, Nevada courts have held that "[w]here a contract provides that either party may terminate the agreement at will, the party so terminated may not recover damages for those profits he purportedly could have gained over the maximum life of the contract."  *Dalton Properties, Inc. v. Jones*, 683 P.2d 30, 31 (1984) (*per curiam*); *see also Road & Highway Builders*, 284 P.3d at 382 (confirming that *Dalton* applies in cases concerning "unearned profits").   The Agreement at issue in this case was terminable at will—and Defendants exercised their right to terminate the Agreement.  As such, VSolvit would be restricted to the award of only lost profits due to the alleged breach, but no such lost profits are recoverable for the alleged breach under Nevada law.  *See Dalton Properties*, 683 P.2d at 31.

Accordingly, VSolvit cannot plead its damages above the level of pure speculation, and there is no set of facts which VSolvit could prove which would show damages under Nevada law.  Therefore, the Court must also dismiss Counts I and II for failure to state a claim.

## IV.   CONCLUSION

For these reasons, the Court should dismiss Counts I and II of the Amended Complaint, with prejudice.

KAEMPFER CROWELL

Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

HOLLAND & KNIGHT
Thomas Brownell (*pro hac vice)*
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102

Attorneys for Defendants Sohum
Systems, LLC and Creative
Information Technology, Inc.

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Kaempfer Crowell and that service of the **MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 44)** was made on today's date by submitting electronically for filing and service with the United States District Court for the District of Nevada through the PACER Electronic Filing System to the addressee(s) shown below:

| | |
|---|---|
| Maurice B. VerStandig, No. 15346<br>THE VERSTANDIG LAW FIRM, LLC<br>1452 W. Horizon Ridge Pkwy, Suite 665<br>Henderson, Nevada 89012<br>mac@mbvesq.com | Matthew E. Feinberg *(pro hac vice)*<br>Todd Reinecker *(pro hac vice)*<br>Mansitan Sow *(pro hac vice)*<br>Matthew T. Healy *(pro hac vice)*<br>PILIERO MAZZA PLLC<br>1001 G Street, NW, Suite 1100<br>Washington, D.C. 20001<br>mfeinberg@pilieromazza.com<br>trienecker@pilieromazza.com<br>msow@pilieromazza.com<br>mhealy@pilieromazza.com |
| Christian T. Balducci, No. 12688<br>MARQUIS AURBACH<br>10001 Park Run Drive<br>Las Vegas, Nevada 89145<br>cbalducci@maclaw.com | |
| Attorney for Plaintiff<br>VSolvit LLC | Attorneys for Plaintiff<br>VSolvit LLC |

DATED September 27, 2024

_____
Desiree Endres
An employee of Kaempfer Crowell

KAEMPFER
CROWELL

3820756_2 20934.1

# EXHIBIT INDEX

Exhibit 1:   01/09/2024 USDA Notice of Corrective Action

Exhibit 2:   03/23/2024 USDA Notice of Corrective Action

Exhibit 3:   04/05/2024 Amendment No. 7 to Beech Solicitation

KAEMPFER
CROWELL

3820756_2  20934.1