Christian T. Balducci, Esq.
Nevada Bar No. 12688
Tabetha J. Steinberg, Esq.
Nevada Bar No. 16756
**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
Email: *cbalducci@maclaw.com*
Email: *tsteinberg@maclaw.com*

Maurice VerStandig
Nevada Bar No. 15346
**THE VERSTANDING LAW FIRM, LLC**
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012
Telephone: (301) 444-4600
Email: *mac@mbvesq.com*

Matthew E. Feinberg (*pro hac vice*)
Todd Reinecker (*pro hac vice*)
Mansitan Sow (*pro hac vice*)
Matthew T. Healy (*pro hac vice*)
**PILIEROMAZZA PLLC**
1001 G Street, NW, Suite 1100
Washington, D.C. 20001
Telephone: (202) 857-1000
Email: *mfeinberg@pilieromazza.com*
Email: *treinecker@pilieromazza.com*
Email: *msow@pilieromazza.com*
Email: *mhealy@pilieromazza.com*
*Attorneys for Plaintiff, VSolvit LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| VSOLVIT, LLC, a Nevada limited liability company | Case Number 2:23-cv-00454-JAD-DJA |
| Plaintiff, | **PLAINTIFF'S, VSOLVIT, LLC, OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 44)** |
| v. | |
| SOHUM SYSTEMS, LLC, and CREATIVE INFORMATION TECHNOLOGY, INC., a Maryland corporation | |
| Defendants. | |

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Plaintiff, VSolvit, LLC ("Plaintiff" or "VSolvit"), by counsel, files this Opposition ("Opposition") to Defendants', Sohum Systems, LLC ("Sohum") and Creative Information Technology, Inc. ("CITI") (collectively, "Defendants"), Motion to Dismiss Counts I and II of the Amended Complaint ("Amended Complaint") (ECF No. 44) (the "Motion"), and respectfully requests that this Honorable Court deny the Motion in its entirety. As grounds therefor, Plaintiff states as follows:

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

This Court previously determined that VSolvit is likely to succeed on the merits of its breach of contract claims against Defendants, because Defendants were bound by a negotiated exclusivity provision in the parties' Teaming Agreement for a federal government contract. ECF No. 33 at 6-8. Despite the Court's ruling, Defendants continued to breach their Teaming Agreement by competing against Plaintiff for the contract. ECF No. 44 ¶¶ 109-124. The result of that breach was for Defendants to win the federal contract in question, although the award was subsequently vacated after VSolvit challenged the award due to procurement irregularities. *Id.* ¶¶ 115-122. The government intends to re-procure the contract, through a "new procurement process." *Id.* ¶ 124. VSolvit continues to suffer the damages caused by Defendants' egregious contractual breaches. However, Defendants now attempt to skirt liability by claiming Plaintiff cannot prove causation or damages. These arguments are contrary to the well-settled motion to dismiss standard and the facts pled in the Amended Complaint and they are patently incorrect under Nevada law. Indeed, they find no support in the record or reality and represent the thinnest of reeds on which to balance a request for dismissal. This Court must resoundingly reject Defendants' arguments and deny the Motion in its entirety.

## II.    <u>STATEMENT OF FACTS</u>

This matter arises from a dispute between government contracting partners. *Id.* ¶ 1. VSolvit, Sohum, and CITI were incumbent performers on two task orders issued by the United States Department of Agriculture ("USDA"). *Id.* ¶ 36. In June 2023, USDA issued

USDA FPAC Farm Programs Software Delivery ("Beech"), a separate task order procurement opportunity that sought to combine the task orders the parties were presently performing. *Id.* As the task orders they held had become important to the Parties' businesses, VSolvit, Sohum, and CITI entered into a teaming agreement ("Teaming Agreement") for the purpose of retaining, and taking on more of, that work. *Id.* ¶¶ 43-45; ECF No. 44-1.

In the Teaming Agreement, the parties agreed "VSolvit may, at its sole discretion, designate itself . . . as the prime contractor for the pursuit of the Program . . ." and that Sohum and CITI shall act as VSolvit's first-tier subcontractors. ECF No. 44 ¶ 46; ECF No. 44-1 §§ 1.1, 1.2. That VSolvit had the right to designate itself as the parties' Prime offeror was "critical" since it empowered VSolvit to "maintain control over its workshare" for Beech, which "it was not able to do when CITI was Prime" for the two prior task orders. ECF No. 44 ¶¶ 48, 51.

The parties also agreed to be exclusive partners for the Beech work. ECF No. 44 ¶¶ 49-50; ECF No. 44-1 § 1.3. Indeed, the parties expressly agreed as follows: "Under this Agreement, [Defendants] and [Plaintiff] commit to an exclusive agreement for [Defendants] to support [Plaintiff]." ECF No. 44 § 50; ECF No. 44-1 § 1.3. Defendants further agreed that they would not act as a prime offeror, had not teamed with other offerors, and would not team in the future with other offerors, regarding the Program. *Ibid.* Sohum and CITI also agreed that, "as a material condition under this Agreement," they would not "compete directly or indirectly as a teammate or otherwise participate in proposal activities or capture activities for renewals, options or natural follow-on business to [VSolvit's] Prime Contract . . . ." *Ibid.*

Unfortunately, that benefit was not realized, as Defendants unilaterally terminated the Teaming Agreement on February 9, 2023 (after VSolvit provided them with its confidential and proprietary information and trade secrets) and, thereafter, competed against VSolvit for Beech by submitting an independent proposal to USDA. ECF No. 44 ¶¶ 61-62, 66-68, 78-79. Later that year, USDA identified the VSolvit team and Defendants' team as the top two offerors for Beech. *Id.* ¶¶ 111-13.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

VSolvit and Defendants were the <u>only</u> teams to advance to the final phase of the Beech procurement process. *Id.* ¶¶ 111-12, 114. That makes it "unmistakable that the VSolvit team contemplated by the Agreement (i.e., VSolvit as Prime with Sohum and CITI as subcontractors) would have won the Beech award if not for Sohum's and CITI's breach of their exclusivity obligations set forth in the [Teaming] Agreement." *Id.* ¶ 113. USDA chose between its two options (the VSolvit team and the Sohum-CITI team) and selected the Sohum-CITI team as the awardee for Beech. *Id.* ¶ 115.

VSolvit then protested that award due to procurement irregularities. *Id.* ¶ 116. That protest "resulted in a stay of the award to the Sohum-CITI team." *Id.* ¶ 117. On January 9, the USDA took corrective action to resolve VSolvit's protest. *Id.* ¶ 119. This reopened the procurement process and "permitted offerors to submit new price proposals and participate in new oral presentations." *Id.* After corrective action was taken, USDA again awarded Beech to Defendants. *Id.* ¶ 120. VSolvit again protested due to procurement irregularities. *Id.* ¶ 121. On March 23, 2024, USDA issued a further Notice of Corrective Action in response to VSolvit's protest, stating that it intended to cancel the Beech solicitation for purposes of re-evaluating the agency's contract requirements. *Id.* ¶ 122. A few months later, in July 2024, "USDA notified VSolvit that it intends to procure the Beech project through a new procurement process." *Id.* ¶ 124.

## III.    STANDARD OF REVIEW

### a.    Subject-Matter Jurisdiction

Defendants challenge this Court's subject-matter jurisdiction claiming that Plaintiff's claims in Counts I and II are moot. ECF No. 45 at 12-14. Motions to dismiss for lack of subject-matter jurisdiction are pursued under Federal Rule of Civil Procedure 12(b)(1). *See, e.g., Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). "A Rule12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By

contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Defendants do not identify whether they are proceeding via a facial or factual attack. ECF No. 45 at 12-14. Although they attach three exhibits to the Motion, those exhibits merely memorialize factual allegations included in the Amended Complaint, and Defendants do not rely on the exhibits to establish or contradict any factual allegation. *See generally* ECF No. 45. Given the framing of the Motion, Defendants appear to be making a facial attack.

The manner in which the jurisdictional challenge is asserted affects its resolution. *Id.* "'In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.'" *Wright v. Incline Village Gen. Improvement Dist.*, 597 F. Supp. 2d 1191, 1198 (D. Nev. 2009) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). "When considering a 'facial' attack . . . a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff." *Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1095 (D. Nev. 2002) (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019)). Unlike with a facial attack, "[i]n resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment . . . ." *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242)). "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Id.* (citing *Savage*, 343 F.3d at 1039 n.2). "'[N]o presumptive truthfulness attaches to plaintiff's allegations [on a factual attack], and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Whitehorn*, 235 F. Supp. 2d at 1096 (quoting *Thornhill*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

*Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977))).

That said, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction . . . where issues of jurisdiction and substance are intertwined." *Roberts v. Carrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted). "A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "In such a case, 'the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'" *Id.* (quoting *Augustine*, 704 F.2d at 1077) (citations omitted).

### b. Failure to State a Claim

Defendants also contend that the Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted. Such motions are considered under Federal Rule of Civil Procedure 12(b)(6). *Wensley v. First Nat'l Bank of Nev.*, 874 F. Supp. 2d 957, 962 (D. Nev. 2012). The purpose of a Rule 12(b)(6) motion is to "test the legal sufficiency of a complaint[,]" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Accordingly, "there is a strong presumption against dismissing an action for failure to state a claim." *Angel v. Eldorado Casino, Inc.*, No. 3:07-cv-00503-BES-VPC, 2008 WL 1914330, at *1 (D. Nev. Apr. 25, 2008) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted)).

Ultimately, a complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and/or does not "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1    (citing *Twombly*, 550 U.S. at 556).

2    When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), "[t]he

3    Court is obliged to 'accept[] all factual allegations in the complaint as true and constru[e]

4    them in the light most favorable to the [plaintiff].'" *Wilson v. Craver*, 994 F.3d 1085, 1089-

5    90 (9th Cir. 2021) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th

6    Cir. 2012)). A complaint must survive dismissal if the factual allegations therein are

7    sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. It

8    is inappropriate to grant a motion to dismiss for failure to state a claim unless the Court finds

9    it "'clear that no relief could be granted under any set of facts that could be proved

10   consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)

11   (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Volvo Constr. Equip.*

12   *Rents, Inc. v. NRL Rentals, LLC*, No. 2:09-cv-00032-JCM-VCF, 2012 WL 27615, at *1 (D.

13   Nev. Jan. 3, 2012) (citations omitted) (same).

14   **IV.    <u>ARGUMENT</u>**

15       **a.    Counts I and II are Not Moot**

16       Defendants first challenge the Court's subject-matter jurisdiction over this action,

17   claiming that Counts I and II are moot. ECF No. 45 at 12-14. Defendants attempt a number

18   of misguided arguments to try to claim mootness, including that: the Teaming Agreements

19   are terminated because the Beech Solicitation was canceled and will be reprocured under a

20   new contract vehicle and the Teaming Agreements themselves have "timed out"; and the

21   cancelation of the Beech Solicitation means the subject matter of the suit has "gone away."

22   *Id.* Notably, beyond an introduction that includes broad references to general provisions of

23   black letter law to establish that federal courts do not consider moot claims, Defendants are

24   unable to cite to a single case, from anywhere in the country, to support their argument. *Id.*

25   All of Defendants' arguments misunderstand Nevada law, misconstrue the Amended

26   Complaint, and over-generalize the issues. The Amended Complaint is well-pled and

27   Plaintiff's claims are not moot; the Motion must be denied as a result.

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Smyczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885))). "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (internal quotation marks omitted) (quoting *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)). Ultimately, a "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001) (internal quotation marks omitted) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). "If there is no longer a possibility that [a party] can obtain relief for his claim, that claim is moot . . . ." *Foster v. Carson*, 347 F.3d 742, 746 (9th Cir. 2003). However, "a case is not moot where *any* effective relief may be granted." *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (citing *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)).

"The Supreme Court has emphasized that the doctrine of mootness is more flexible than other strands of justiciability doctrine." *Karuk Tribe of Cal. v. United States Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (citing *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003)). Thus, the party asserting mootness bears a "heavy burden" of "establishing that there is no effective relief that the court can provide." *Forest Guardians*, 450 F.3d at 461 (citing *S. Or. Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1134 (9th Cir. 2004); *Nw. Env't Def. Ctr.*, 849 F.2d at 1244). When commenting on the mootness doctrine, the

Supreme Court has emphasized just how forgone the prospect of relief must be before a court may dismiss on mootness grounds, stating: "'as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012) (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 442 (1984)).

Defendants fail to establish that VSolvit's contractual claims are moot. Defendants' primary argument is that "the subject matter of the Agreement—the Beech Program—has gone away" following the USDA's decision to cancel the Beech procurement and reprocure the work through a different contract vehicle. ECF No. 45 at 13-14. In Defendants' eyes, "[t]he cancelation of the Beech Solicitation obviates the purpose of the parties' agreement and makes it impossible for VSolvit to prove damages, because there will be no comparable replacement subcontract [sic]." *Id.* at 14. Defendants further argue that "[w]ith the termination of the Beech solicitation, any future solicitation of the work would be a new unique procurement that was not included or anticipated by the parties . . . ." *Id.* Defendants also suggest that Counts I and II are moot because the Teaming Agreements between Plaintiff and Defendants have been terminated, because "the Agency has canceled the Beech Solicitation"; "[t]he Agency . . . has announced its intention to procure the Beech scope of work through a 'new procurement process'"; and the Teaming Agreements have "timed out," *i.e.*, "more than two years have elapsed after the effective date of the Agreement without the award of a Prime Contract under Beech." *Id.* at 13. Defendants are wrong on all counts.

On June 13, 2022, the parties entered into an exclusive Teaming Agreement for the pursuit of the Beech procurement. ECF No. 44 ¶ 45; ECF No. 44-1 § 1.3. The Teaming Agreement defined the "Program" as "a Solicitation No. TBD . . . for the acquisition of USDA FPAC Beech . . . ." ECF No. 44-1 at 1. The Amended Complaint describes that Program in greater detail as USDA FPAC (Farm Production and Conservation) Farm Programs Software Delivery. ECF No. 44 ¶ 34. "Beech was a consolidation of several existing task orders, including two task orders previously being performed by VSolvit and

the Defendants[,]" *i.e.*, CITI's "PARMO" contract. *Id.* ¶¶ 36-42. The purpose of the Teaming Agreements was for the parties to work together to keep the PARMO work they already had after the expiration of CITI's PARMO contract. *Id.* ¶¶ 43-44.

The parties agreed to "commit to an exclusive agreement for [Defendants] to support [Plaintiff]." *Id.* ¶ 50; ECF No. 44-1 § 1.3. Defendants expressly agreed that they would not act as a Prime offeror and would not team with any other contractors (other than Plaintiff) to pursue the Beech procurement Program. *Ibid.* As this Court has previously determined in this case, these exclusivity provisions survive termination of the Teaming Agreement. ECF No. 33 at 7 ("At this stage I find that VSolvit's argument that the exclusivity clause of the contract survived termination has a likelihood of success on the merits, such that the defendants' obligation not to 'enter into any teaming arrangements with other offerors under the program after this Agreement' would remain in effect.") (citing *Fed. Nat'l Mortg. Ass'n v. Westland Liberty Village, LLC*, 515 P.3d 329, 334 (Nev. 2022)).

Even after the Court noted that Defendants intended to bid on Beech "in a manner that would violate the exclusivity clause[,]" Defendants continued to pursue Beech together, without VSolvit, breaching the Teaming Agreement. ECF No. 44 ¶¶ 110-115. And that breach caused VSolvit damages. *Id.* ¶¶ 113, 127, 138, 152. These damages include the "loss of the Beech contract and all revenues and profits associated therewith, the costs associated with all bid protests (including attorneys' fees incurred to resolve the agency's incorrect and unlawful award to the Sohum-CITI team), and other damages." *Id.* ¶ 127.

The lost profits from the Beech contract are recoverable in this action. As noted in the Amended Complaint, both VSolvit and Defendants submitted separate bids in response to the Beech procurement. *Id.* ¶¶ 109-110. Those two teams were the only bidders whose proposals were of sufficient quality to advance to the second phase of the procurement process. *Id.* ¶¶ 111-112. "Because the VSolvit team and the Sohum-CITI team were the top two ranked teams for the Beech procurement, it is unmistakable" and an abundantly reasonable inference drawn from the facts, "that the VSolvit team contemplated by the [Teaming] Agreement (*i.e.*, VSolvit as Prime with Sohum and CITI as subcontractors)

would have won the Beech award" absent Defendants' breach. *Id.* ¶ 113. Indeed, there is no reasonable basis to believe Defendants' conjecture, unsupported by evidence, that the USDA might have awarded a contract to any other contractor besides the team made up of the #1 and #2 ranked offerors. Thus, if Defendants had met their exclusivity obligations under the Teaming Agreements, the VSolvit team would have won the award of the Beech contract; Defendants' breach therefore caused Plaintiff damages associated with the loss of that contract. *Id.* ¶¶ 113, 127.

Defendants' argument that Counts I and II of the Amended Complaint should be dismissed because any damages Plaintiff allegedly suffered associated with the loss of the Beech contract are speculative is inappropriate for resolution at this stage of the case. Such an argument will depend on factual development through discovery. *Guanci v. Kessler*, No. 2:14-cv-01299-APG-GWF, 2015 WL 442587, at *3 n.18 (D. Nev. July 17, 2015) (citing *Enigma Info. Retrieval Sys., Inc. v. Radian, Inc.*, No. CIV.A. 04C06069FSS, 2005 WL 445568, at *3 (Del. Super. Feb. 23, 2005) (rejecting argument that damages are speculative at motion to dismiss stage because issue is one for trial or summary judgment); *NGV Gaming, Ltd. v. Upstream Point Malate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) ("however difficult it might be to prove damages at trial, ultimately this is a question of fact subject to proof, and is inappropriate to support this motion to dismiss"), *disapproved in later proceedings on other grounds sub nom. Guidiville Band of Pomo Indians v. NGV Gaming Ltd.*, No. C 04-3955-SC, C 05-1605-SC, 2005 WL 5503031 (N.D. Cal. Oct. 19, 2005), *reversed in part, vacated in part on other grounds*, 531 F.3d 767 (9th Cir. 2008)); *see also Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1071 (D. Minn. 1999) (rejecting dismissal based on argument that damages were "completely 'dependent upon the hypothetical actions of third-parties'" and therefore speculative because speculative damages argument required factual development). To dismiss at this stage would require the Court to resolve genuinely disputed facts that go to the merits of Plaintiff's claims; this, the Court cannot do. *Roberts*, 812 F.2d at 1177; *Augustine*, 704 F.2d at 1077.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Defendants' argument that dismissal is appropriate because "an objective review of the facts (or the pleaded allegations) shows that it was VSolvit's multiple protests of USDA actions that caused the cancelation of the Program" fails for a similar reason. ECF No. 45 at 13-14. While it is true that VSolvit filed bid protests of the USDA's award to the Sohum-CITI team due to irregularities in the selection process, ECF No. 44 ¶ 116, that was Plaintiff's right as a disappointed offeror on a federal procurement, *Raymond Express Int'l, LLC v. United States*, 120 Fed. Cl. 413, 422 (2015) (any interested party "whose direct economic interest in the procurement has been prejudiced by the government's actions has standing" to bring a bid protest). The bid protest process (which twice caused the Government to vacate the award to Sohum to correct its mistakes), ECF No. 44 ¶¶ 119-122, also served as VSolvit's effort to mitigate its damages, *see Mason v. Artworks Pictures, LLC*, No. 03:03-CV-00188-LRH-VPC, 2008 WL 2486029, at *5 (D. Nev. June 12, 2008) ("While there is no legal 'duty' to mitigate damages in a breach of contract action, . . . a plaintiff may not recover for losses which it was possible to mitigate.") (citations omitted). Defendants' Motion asks this Court to resolve the question of the cause of Plaintiff's damages at the motion to dismiss stage; however, causation is a question of fact inappropriate for resolution at the motion to dismiss stage. *See Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 34 F.3d 753, 756 (9th Cir. 1994) ("a question of causation is preeminently a question of fact, to be decided after trial.") (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)).

The attorneys' fees incurred in the bid protest litigation are also recoverable under Nevada law as an element of damages. Indeed, attorneys' fees are a "recoverable element of damages . . . 'when a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract . . . .'" *Mitchell v. Nype*, 517 P.3d 905, at *3 (Nev. Sept. 23, 2022) (quoting *Sandy Valley Assocs. v. Sky Ranch Ests. Owners Ass'n*, 35 P.3d 964, 969 (Nev. 2001), *receded from on other grounds by Horgan v. Helton*, 170 P.3d 982 (2007), and *Liu v. Christopher Homes, LLC*, 321 P.3d 875 (2014)). Nevada law also allows for the recovery of attorneys' fees "incurred in mitigation activities . . . ."

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

*Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nev. Nat'l Bank*, 607 F. Supp. 1129, 1136 (D. Nev. 1985), *rev'd on other grounds*, 811 F.2d 1255 (9th Cir. 1987) (citing *Am. Fed. of Musicians v. Reno's Riverside Hotel, Inc.*, 475 P.2d 220, 222 (Nev. 1970), *disapproved of on other grounds by Sandy Valley Assocs.*, 35 P.3d 964).

Even if this Court were to rule that neither the lost profits from the Beech procurement, nor the attorneys' fees from the bid protest matters, are recoverable, Plaintiff would still have a valid breach of contract claim under Nevada law and could recover, at a minimum, nominal damages. *Gramanz v. T-Shirts & Souvenirs, Inc.*, 894 P.2d 342, 343, 347 (Nev. 1995) (where a plaintiff offers insufficient evidence to determine a reasonably accurate damage award, the plaintiff is "entitled only to nominal damages"); *Wade v. Univ. Med. Ctr. of S. Nev.*, Case No. 2:18-cv-1927-RFB-EJY, 2023 WL 9598746, at *5 (D. Nev. Feb. 13, 2023) ("In a contract action, if a plaintiff cannot show actual damages flowing from the breach of contract, she is entitled to nominal damages."); *Martin v. Clark Cnty.*, Case No. 2:19-cv-01623-APG-DJA, 2022 WL 16964649, at *1 (D. Nev. Nov. 15, 2022) ("If a party in a breach of contract action cannot show actual damages, then it may recover only nominal damages.") (citations omitted). Thus, regardless of the mechanism of termination of the Teaming Agreement, Plaintiff has "'a concrete interest, however small, in the outcome of the litigation," and the Court must not find it moot. *Knox*, 567 U.S. at 307-08 (quoting *Ellis*, 466 U.S. at 442). Indeed, as the Ninth Circuit has explained, "'[a] live claim [even] for nominal damages will prevent dismissal for mootness.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (quoting *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002)).

> **b.    The Amended Complaint States Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendants next argue, incorrectly, that Counts I and II of the Amended Complaint must be dismissed because Plaintiff cannot prove the causation or damages elements of Plaintiff's contract-related claims. "Under Nevada law, 'the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    (3) damage as a result of the breach." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899

2    (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev.

3    2006) (other citation omitted)). Meanwhile, the elements of Plaintiff's breach of the implied

4    covenant of good faith and fair dealing claim are: (1) the plaintiff and defendant were parties

5    to a contract; (2) the defendant owed a duty of good faith and fair dealing to plaintiff; (3) the

6    defendant breached that duty by performing in a manner unfaithful to the contract's purpose;

7    and (4) the plaintiff was denied its justified expectations from the contract. *Eagle SPE NV 1,*

8    *Inc. v. S. Highlands Dev. Corp.*, 36 F. Supp. 3d 981, 990 (D. Nev. 2014) (citing *Perry v.*

9    *Jordan*, 900 P.2d 335, 338 (Nev. 2008)). Defendants' arguments fail on the facts and under

10    the motion to dismiss standard of review.

### 1.    Plaintiff Properly Pleads Causation

12    Defendants' contention that the Amended Complaint fails to sufficiently allege

13    causation is both inappropriate for the Court to resolve at this stage of the case and incorrect

14    under the motion to dismiss standard. As a threshold matter, it is well-settled and often

15    repeated that Nevada law regards "[c]ausation [to be] . . . a question for the finder of fact

16    . . . ." *Frantz v. Johnson*, 999 P.2d 351, 359 (Nev. 2000) (citing *Hermann Tr. v. Varco-*

17    *Pruden Bldgs.*, 796 P.2d 590, 591-92 (Nev. 1990); *Frances v. Plaza Pac. Equities*, 847 P.2d

18    722, 724 (Nev. 1993)); *see also Liu v. Christopher Homes, LLC*, 321 P.3d at 881

19    ("Determining whether a party's breach of contract caused another party to incur attorney

20    fees in defending himself or herself from a third party's complaint involves factual

21    inquiries.") (citing *Frantz*, 999 P.2d at 359). Questions of fact, such as causation, "cannot be

22    resolved or determined on a motion to dismiss for failure to state a claim upon which relief

23    can be granted." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242,

24    245 (9th Cir. 1990) (citing *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 212

25    (9th Cir. 1957)). The issue of causation may only be resolved on a motion to dismiss where

26    "no reasonable juror would dispute its absence." *Contreras v. Am. Fam. Mut. Ins. Co.*, 135

27    F. Supp. 3d 1208, 1228 (D. Nev. 2015) (citations omitted). Defendants do not suggest they

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

can meet that standard here, ECF No. 45, at 15-18; indeed, they cannot, and Defendants' Motion must be denied.

Should the Court nonetheless entertain Defendants' misguided challenge, the Amended Complaint sufficiently alleges causation under the motion to dismiss review standard. As noted above, on a motion to dismiss, "[t]he Court is obliged to 'accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the [plaintiff].'" *Wilson*, 994 F.3d at 1089-90 (quoting *Skilstaf*, 669 F.3d at 1014). Further, all reasonable inferences drawn from those allegations must be construed in Plaintiff's favor—"'not only those that support his claim, but also those that defeat [a] defense.'" *Perez v. Daniels*, Case No. 2:21-cv-02061-CDS-MDC, 2024 WL 1377109, at *4 (D. Nev. Mar. 31, 2024) (quoting *McDaniel v. Diaz*, Case No. 1:20-cv-00856-NONE-SAB, 2021 WL 147125, at *10 (E.D. Cal. Jan. 15, 2021), *report and recommendation adopted*, 2021 WL 806346 (E.D. Cal. Mar. 3, 2021) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004))). The Amended Complaint meets that standard with ease.

As noted in the Amended Complaint, both Plaintiff and the Sohum-CITI team submitted bids to the USDA in pursuit of the Beech procurement. ECF No. 44 ¶¶ 109-110. Only two bidders survived the first phase of the procurement process—Plaintiff's team and Defendants' team. *Id.* ¶¶ 111-112. In other words, only two bidders advanced to the final round of competition, and only two teams were ultimately considered for award. *Id.* As expressly alleged in the Amended Complaint, "[b]ecause the VSolvit team and the Sohum-CITI team were the top two ranked teams for the Beech procurement, it is unmistakable that the VSolvit team contemplated by the [Teaming] Agreement[,]" which would be a team comprised of VSolvit, Sohum, and CITI, "would have won the Beech award if not for Sohum's and CITI's breach of their exclusivity obligations set forth in the [Teaming] Agreement." *Id.* ¶ 113. That is a factual allegation, not a legal conclusion. Therefore, this Court must take that allegation as true. *Wilson*, 994 F.3d at 1089-90. And, alone, that allegation is sufficient to defeat Defendants' Motion.

Defendants' flawed arguments to the contrary ignore the mandatory motion to dismiss standard of review. For instance, Defendants claim that "VSolvit cannot prove that it would have been awarded the Beech Contract in the absence of competition from Sohum . . . ." ECF No. 45 at 16. However, VSolvit does not need to *prove* anything at the motion to dismiss stage. Rather, it need only *allege* sufficient facts, taken as true, to meet the elements of its cause of action. *Iqbal*, 556 U.S. at 696 (Souter, J., dissenting) ("*Twombly* does not require a court at the motion-to-dismiss state to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be."). Defendants also suggest that "the government could have canceled the solicitation for any reason at any time." ECF No. 45 at 16. The Court cannot make the assumption, however, that the government could have canceled VSolvit's award. Such an allegation does not appear in the Amended Complaint. *See generally* ECF No. 44. Accordingly, making such an assumption would run directly contrary to the requirement that the Court resolve all inferences in Plaintiff's favor. *Perez*, 2024 WL 1377109, at *4 (citations omitted).

The same fate befalls Defendants' claim that, if Defendants had participated on VSolvit's bid team, as they contracted to do, "the Agency could have and likely would have selected at least one other team to advance from phase one to phase two of the procurement, and it could have made award to that other offeror, not VSolvit." ECF No. 45 at 16. Again, Defendants encourage the Court to ignore the standard of review, ignore the well-pled facts in the Amended Complaint, and construe unpled inferences *against* Plaintiff, as opposed to *for* Plaintiff. *Wilson*, 994 F.3d at 1089-90 (facts and inferences must be construed in plaintiff's favor).

Defendants also argue that "[e]ven after submission of proposals, there is no guarantee that any awardee will receive award." ECF No. 45 at 17. Yet again, for the Court to adopt such an argument, it would have to construe the facts against Plaintiff and in favor of Defendant. *Wilson*, 994 F.3d at 1089-90 (facts and inferences must be considered in plaintiff's favor). The Court must disregard Defendants' arguments in this regard. *See, e.g.,*

*Fastrich v. Cont'l Gen. Ins. Co.*, 8:16CV487, 2017 WL 3610535, at *6 (D. Neb. Aug. 21, 2017) ("At the pleading stage, the Court assumes the veracity of Plaintiffs' allegation that their contracts with CGI entitled them to commissions, renewals, and overrides and that they have been deprived of that compensation by CGI.").

Defendants' citations to various cases from outside the Ninth Circuit are inapposite and unpersuasive. For instance, Defendants cite *ATL, Inc. v. United States*, 736 F.2d 677, 683 (Fed. Cir. 1984), for the argument that "a citizen has no right to a Government contract." Defendants' Motion misleadingly omits the full context of the quote, including the critical qualifying language: "**in suspension cases** it is recognized that, although a citizen has no *right* to a Government contract, and a bidder has no constitutionally protected *property* interest in such a contract, a bidder does have a liberty interest at stake, where the suspension is based on charges of fraud and dishonesty." *Id.* (italics in original, bold underlining added). In other words, *ATL* has no application here, because this is not a "suspension" case, *e.g.*, one where a contractor is challenging the government's decision to prohibit it from participating in government contracting for bad behavior. *See generally id.*

Defendants' reliance on *DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501-02 (2008), also is misplaced for these proceedings. In that case, the United States Court of Federal Claims was deciding a bid protest challenging a federal agency's decision to reject all bids and cancel a solicitation. Under the bid protest standard of review, the government has discretion to decide to reject all bids and cancel a solicitation if the procuring agency reasonably believes doing so is in the government's best interests. *Id.* at 511. While a federal agency has discretion to cancel a solicitation, the Court cannot assume that the government would have done so in this instance. Again, that would violate the motion to dismiss standard by taking an inference (not a reasonable one) in Defendants' favor. To the contrary, the Court must take Plaintiff's allegation that VSolvit would have been awarded the Beech contract as true. *Wilson*, 994 F.3d at 1089-90. That factual allegation is well-supported, given that the USDA twice awarded a contract to the Sohum-CITI team before eventually canceling the solicitation; the reasonable inference that must be drawn is that the USDA

would have awarded the contract to the team Sohum and CITI were on again, had they met their contractual obligations. *Id.* For these reasons, Plaintiff adequately pleads causation in the Amended Complaint, and Defendants' Motion must be denied.

### 2.        Plaintiff Properly Pleads Damages

Defendants close their Motion by arguing, incorrectly, that dismissal is warranted because VSolvit's damages are speculative in nature. *See generally* ECF No. 45 at 18-20. Defendants' arguments rely on inapplicable law, misapply the law in other respects, and fail to follow the motion to dismiss standard of review. For these reasons, their arguments must be rejected and their Motion denied.

First, Defendants suggest that, under Nevada law, "a plaintiff must prove both (1) a causal connection between the defendant's breach and the damages asserted, and (2) the amount of those damages." *Id.* at 18 (quoting *Iliescu v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. 2022) (citations omitted)). This general statement of the law applies at the summary judgment and trial stage of the case, not the motion to dismiss stage. *See Iliescu*, 522 P.3d at 458 (reviewing whether trial court properly granted summary judgment in favor of defendants). Defendants also suggest that "VSolvit may not succeed based solely on speculative damages, although courts do not require 'mathematical certainty.'" ECF No. 45 at 18 (quoting *Clark Cnty. Sch. Dist. v. Richardson Constr., Inc.*, 168 P.3d 87, 97 (Nev. 2007)). The case on which Defendants rely for this argument was an appeal from a jury verdict, not a case resolved at the motion to dismiss stage. Accordingly, Defendants' arguments, and their citations to inapplicable legal principles, are misplaced.

The motion to dismiss standard merely requires, on a breach of contract claim, that Plaintiff plausibly *allege* that it suffered damages, with the support of factual allegations. *See Petroleum Wholesale, L.P. v. Sagebrush 66 Inv. Co., Inc.*, Case No. 3:19-cv-00516-MMD-WGC, 2021 WL 5108756, at *4 (D. Nev. Aug. 23, 2021). In *Petroleum Wholesale*, a court in this district denied the defendant's motion for summary judgment challenging the plaintiff's damage allegations because the plaintiff properly alleged that it had a claim for nominal damages; attorneys' fees and costs, which were available under the parties' written

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

agreement; and actual damages from lost sales. *Id.* Those damage claims are virtually identical to the claims raised herein, and this Court should rule the same way the Court did in *Petroleum Wholesale*.

Defendants next argue that the measure of damages in this case will be "the difference in price between the original promise and a replacement subcontract." *Dynalectric Co. of Nev., Inc. v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286, 290 (Nev. 2011). This argument is entirely misplaced. Indeed, the very first sentence of *Dynalectric* shows it has no application here: "In this appeal, we address the measure of damages applicable to promissory estoppel claims." *Id.* at 287. This is not a promissory estoppel case.

Contrary to Defendants' position, the Supreme Court of Nevada has explained: "It is well established that in contract cases, compensatory damages 'are awarded to make the aggrieved party whole and . . . should place the plaintiff in the position he would have been in had the contract not been breached.'" *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (quoting *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 211 (Nev. 1991)). "This includes awards for lost profits or expectancy damages." *Id.* (citing *Colo. Env'ts v. Valley Grading*, 779 P.2d 80, 84 (Nev. 1989)). Indeed, the Court has adopted the Restatement (Second) of Contracts § 347 (1981), which states that "the injured party has a right to damages based on his expectation interest as measured by . . . the loss in value to him of the other party's performance caused by its failure or deficiency," in addition to "any other loss, including incidental or consequential loss, caused by the breach," minus "any cost or other loss that he has avoided by not having to perform." *Id.* (citations omitted). Although Defendants cite to *Road and Highway Builders*, they ignore all of this controlling law.

Defendants next challenge the potential manner of calculation of Plaintiff's damages, suggesting that "there is no cost history to show what Sohum's profits would have been, or what profits VSolvit would have earned on the same work." ECF No. 45 at 19. On one hand, this is factually incorrect. The parties performed CITI's PARMO contract, which would

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

have been substantially similar to the Beech contract. ECF No. 44 ¶¶ 34-44. Thus, damages could be calculated to reasonable certainty based on data related to the PARMO contract. However, regardless, Defendants' argument goes to the credibility and reliability of Plaintiff's *proof* of damages, not whether Plaintiff plausibly *pled* that it suffered damages. This Court does not make credibility or reliability determination on a motion to dismiss. *C.f. Innovative Media Grp., Inc. v. Beys*, Case No. 2:22-cv-1184-JCM (EJY), 2024 WL 4349457, at *2 (D. Nev. Sept. 30, 2024) ("court does not make credibility determinations or weigh conflicting evidence" in resolving a summary judgment motion; rather, "it draws all inferences in the light most favorable to the nonmoving party") (citations omitted); *see also Iqbal*, 556 U.S. at 696 (Souter, J., dissenting) ("a court must take the allegations as true, no matter how skeptical the court may be.").

Finally, Defendants argue that "Nevada courts have held that '[w]here a contract provides that either party may terminate the agreement at will, the party so terminated may not recover damages for those profits he purportedly could have gained over the maximum life of the contract.'" ECF No. 45 at 20 (quoting *Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (1984)). Defendants claim that the Teaming Agreement was terminable at will, thus "VSolvit would be restricted to the award of only lost profits due to the alleged breach, but no such lost profits are recoverable for the alleged breach under Nevada law." *Id.* In this regard, Defendants misunderstand and misapply the law. The relevant contract for purposes of VSolvit's damages is not the Teaming Agreement; VSolvit's damages are calculated based on the loss of a federal government contract (Beech). ECF No. 44 ¶ 127 ("VSolvit suffered damages, including but not limited to the loss of the Beech contract and all revenues and profits associated therewith"). Federal government contracts are terminable under only certain circumstances: for default or for convenience. *See Dart Advantage Warehousing, Inc. v. United States*, 52 Fed. Cl. 694, 706 (2002) (describing potential manner of termination for given federal contract). In either case, the contractor would very likely receive some compensation, because some performance would take place before a termination for default, and a termination for convenience requires to government to pay

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

compensation to the contractor. 48 C.F.R. § 49.401(a) ("Termination for default is generally the exercise of the Government's contractual right to completely or partially terminate a contract because of the contractor's actual or anticipated failure to perform its contractual obligations" absent excuse); 48 C.F.R. § 49.201 (contractor receives payment after termination for convenience in an amount that "fairly" compensates the contractor "for the work done and the preparations made for the terminated portions of the contract, including a reasonable allowance for profit."). Thus, even if the Court were to assume that VSolvit's federal contract would be terminated "at will" at some point—and it would be inappropriate to do so at the motion to dismiss stage—VSolvit would nevertheless suffer damages.

Plaintiff has adequately pled damages sufficient to withstanding Defendants' misplaced Motion. *Petroleum Wholesale*, 2021 WL 5108756, at *4, is instructive on the issue. As noted above, in that case, the defendants filed a motion for summary judgment arguing that the plaintiff "failed to show damages caused by the breach . . . ." *Id.* at *3. In denying the motion, the Court explained that the plaintiff "points to various types of damages . . . that are recognized by Nevada courts as damages recoverable for breach of contract." *Id.* at *4. For instance, the plaintiff "raises nominal damages, which the Nevada Supreme Court has found to be a viable form of damage for breach of contract claims." *Id.* (citing *Gramanz*, 894 P.2d at 343; *Harris v. Shell Dev. Corp., Nev., Inc.*, 594 P.2d 731, 734 (Nev. 1979)). Further, the plaintiff "raises attorney fees and costs, which the [parties'] Agreement explicitly awards to the prevailing party in a legal action." *Id.* Accordingly, the Court found that "attorney fees and costs are also viable damages" on the plaintiff's "breach of contract claim." *Id.* And, finally, the plaintiff raises "actual damages from loss of fuel sales." *Id.* at *5. "Nevada courts have held that compensatory damages or actual damages may be awarded in a breach of contract action 'to make the aggrieved party whole and . . . should place the plaintiff in the position he would have been in had the contract not been breached.'" *Id.* (quoting *Hornwood*, 807 P.2d at 211). For these reasons, the Court denied the summary judgment motion. *Id.*

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Here, VSolvit may recover exactly the types of damages the Court found sufficient to survive dismissal in *Petroleum Wholesale.* Specifically, VSolvit pled that it suffered actual damages "including but not limited to the loss of the Beech contract and all revenues and profits associated therewith . . . ." ECF No. 44 ¶ 127. VSolvit further alleged that it incurred attorneys' fees and costs associated with the bid protest actions necessitated by Defendants' breach. *Id.* ¶ 127. VSolvit also noted that it is entitled to recover attorneys' fees and costs associated with this litigation. ECF No. 44 at 28. Those attorneys' fees and costs are specifically recoverable under the Teaming Agreement. ECF No. 44-1 § 14.1 ("In the event that an action is commenced by either Party with respect to this Agreement, the substantially prevailing Party (as determined by the court) shall be entitled to recover its reasonable costs and attorney's fees from the other Party."). Finally, even if its other claims for damages fail—a question not relevant on a motion to dismiss—VSolvit will be entitled to recover nominal damages under Nevada law. *See Com. Cabinet Co., Inc. v. Mort Wallin of Lake Tahoe, Inc.*, 737 P.2d 515, 517 (1987) ("A plaintiff who proves a right to damages without proving the amount as well is only entitled to nominal damages.").

## V.     CONCLUSION

For all the foregoing reasons, Plaintiff, VSolvit, LLC, respectfully requests that the Court deny Defendants', Sohum Systems, LLC and Creative Information Technology, Inc., Motion to Dismiss Counts I and II of the Complaint. To the extent the Court is inclined to grant the Motion in some respect, Plaintiff respectfully requests that it be permitted to file an amended complaint to further plead causation and/or damages.

//

//

//

//

//

//

//

1   Dated this 18th day of October, 2024.

2

3                                        **MARQUIS AURBACH**

4                                        */s/ Tabetha J. Steinberg*
                                         Christian T. Balducci, Esq., NV Bar No. 12688
5                                        Tabetha J. Steinberg, Esq. NV Bar No. 16756
                                         10001 Park Run Drive
6                                        Las Vegas, Nevada 89145

7                                        Maurice VerStandig, NV Bar No. 15346
                                         **THE VERSTANDING LAW FIRM, LLC**
8                                        1452 W. Horizon Ridge Pkwy, #665
                                         Henderson, Nevada 89012
9

10                                       Matthew E. Feinberg (*pro hac vice*)
                                         Todd Reinecker (*pro hac vice*)
11                                       Mansitan Sow (*pro hac vice*)
                                         Matthew T. Healy (*pro hac vice*)
12                                       **PILIEROMAZZA PLLC**
                                         1001 G Street, NW, Suite 1100
13                                       Washington, D.C. 20001
                                         *Attorneys for Plaintiff, VSolvit LLC*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S, VSOLVIT, LLC, OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 44)** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 18th day of October, 2024.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:  N/A

Thomas Brownell, Esq.
**HOLLAND & KNIGHT, LLP**
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102

Robert R. McCoy, Esq.
**KAEMPFER CROWELL, LTD**
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

Shimora L. Graves, Esq.
**KAEMPFER CROWELL, LTD**
50 West Liberty Street, Suite 700
Reno, Nevada 89501

*/s/ Jessica Madsen*
An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816