KAEMPFER CROWELL
Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Telephone: (702) 792-7000
Facsimile: (702) 796-7181
Email: rmccoy@kcnvlaw.com
Email: sgraves@kcnvlaw.com

HOLLAND & KNIGHT
Thomas Brownell (*pro hac vice*)
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Telephone: (703) 720-8690
Facsimile: (703) 720-8610
Email: thomas.brownell@hklaw.com

Attorneys for Defendants Sohum Systems, LLC and Creative Information Technology, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VSOLVIT LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SOHUM SYSTEMS, LLC, a Kansas limited liability company; and CREATIVE INFORMATION TECHNOLOGY, INC., a Maryland corporation,<br><br>Defendants. | Case No. 2:23-cv-00454-JAD-DJA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 44)** |

## I. INTRODUCTION

In its opposition (ECF No. 49) to Defendants' motion to dismiss the amended complaint as moot under Fed. R. Civ. P. 12(b)(1) and for failure to state a

claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 45), Plaintiff VSolvit makes a number of arguments that are at odds with the factual allegations in its Amended Complaint (ECF No. 44). VSolvit's arguments have no merit and the Court should reject them.

There is no dispute that the subject and the purpose of the Teaming Agreement (referred to as the "Agreement") has, by the action of a third party—the USDA—been removed, and is no longer available for the parties to dispute. VSolvit admits as much in the Amended Complaint, alleging that the object of the parties' Agreement, the "Beech Solicitation," has been cancelled and that the government will solicit its requirements through a "new procurement process" (Am. Compl. (ECF No. 44) at ¶ 124). VSolvit nevertheless argues that its breach claims are not "moot" because Defendants allegedly cannot show that there is "no effective relief that the court can provide." Opp'n (ECF No. 49) at 8. To show that the Court could theoretically grant such relief, however, VSolvit argues, as "factual allegations" and not as "legal conclusions:" (a) that VSolvit would have won the Beech solicitation but for the alleged breach of the Agreement by Defendants (*Id*. at 15); (b) that VSolvit can prove expectation damages based upon two prior contracts where it served only as a subcontractor to Defendant CITI (*Id*. at 19–20); and (c) that, even if such damages are entirely speculative, VSolvit could nevertheless rely upon the recovery of "nominal damages" or the attorneys' fees it expended in bid protest proceedings with the government concerning award of the Beech contract.

VSolvit's reliance upon the Amended Complaint's "allegations of fact" on the mootness, causation and damages issues is misplaced, since most material allegations are, under *Iqbal* standards, nothing more than speculative conclusions that are entitled to no deference under the Rules.

VSolvit's allegations of the damages it allegedly incurred—both to defend against "mootness" and to attempt to state a claim—likewise are entirely speculative and its claims cannot proceed: Neither the PARMO contracts nor the as-yet-undefined successor to the Beech Solicitation can provide a basis to calculate damages, especially since the presumed successor contract not only is not yet unknown, but would also be subject to termination for convenience by the government. For all these reasons, VSolvit's claims are either moot and/or fail to state a claim and must be dismissed.

## II.   ARGUMENT

### A.   The Amended Complaint Concedes—and the Documents Before the Court Confirm—That The Object of the Parties' Agreement No Longer Exists.

In arguing that this case is not moot and that it should be entitled to recover expectation damages for alleged breaches of the Agreement, VSolvit seeks to expand the scope of the parties' Teaming Agreement well beyond the Beech solicitation issued in June 2023. Indeed, VSolvit seeks to expand the parties' Agreement to cover the two so-called "PARMO" contracts, where defendant CITI was the prime contractor and VSolvit and Sohum were merely subcontractors, and forward, to an undefined "new procurement," for which VSolvit may not even be eligible and which may include multiple contracts or statements of work substantially different from Beech.

That is, however, not what the Agreement says. It defines the "Program" as the "Solicitation" to be issued by the USDA "Customer" "for the acquisition of USDA FPAC Beech." Agreement (ECF No. 44-1) (at first "Whereas"

clause). The parties had nothing else in mind, as review of Section 10 confirms when it states those conditions under which the Agreement "terminates":

- The Agreement terminates when USDA "cancels the Program" or formally "retract[s] the Solicitation." *Id.* at ¶ 10.1.1. Both events have now occurred.

- The Agreement also terminates when "the Customer releases the Solicitation under a different competition type." *Id.* at ¶ 10.1.3. USDA states that it intends to do so. It is unclear whether VSolvit (or even Defendants) will be eligible to compete for any such new solicitation.

- Finally, the Agreement terminates after the expiration of two years (one year plus an extension period) "if the Customer has not yet awarded the Prime Contract." *Id.* at ¶ 10.1.10. This too has happened.

Thus, not only have neither VSolvit nor Defendants been awarded the Beech Solicitation, but neither party will ever be awarded that Solicitation and, by the clear language of the Agreement, its subject matter no longer exists. The case and controversy between the parties is now and will remain moot. *See Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011).

**B.  VSolvit's Key Allegations of "Fact" Are Merely Conclusions or Unreasonable Inferences Not Entitled to Be Taken as True.**

In their motion, Defendants explained that VSolvit's causation and damages allegations are not proper "allegations of fact" at all, but are actually conclusory statements.[1] Mot. (ECF No. 45) at 12–14. "To survive a motion to

---

[1] *E.g.*, that if VSolvit and Defendants submitted a proposal together on the Beech Solicitation, "it is unmistakable" that they "would have won" (Am. Compl. (ECF No. 44) at ¶113); that if Defendants had "met their exclusivity obligations," VSolvit would have been awarded the Beech contract and Defendants would currently be performing as subcontractors (*Id.* at ¶¶ 125, 126); and that "[a]s a direct and proximate result" of Defendants' alleged breach "VSolvit suffered damages, including but not limited to the loss of the Beech contract and all revenues and profits associated therewith" (*Id.* at ¶ 127).

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In *Twombly*, the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  This Court, applying *Twombly* and *Iqbal*, explained that "[l]egal conclusions…are not entitled to" an "assumption of truth even if cast in the form of factual allegations," and that "[m]ere recitals of the elements of a cause of action, *supported only by conclusory statements*, do not suffice." *Alele v. Geico Gen. Ins. Co.*, 420 F. Supp. 3d 1124, 1128 (D. Nev. 2019) (citing *Iqbal*, 556 U.S. at 679; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013)).

In evaluating the motion, however, the Court need only draw "reasonable" inferences in VSolvit's favor. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (*en banc*) ("[W]e construe 'in the light most favorable to the plaintiff[], taking all [its] allegations as true and drawing all reasonable inferences from the complaint in [its] favor.'") (quoting *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to

relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

In opposing this motion, however, VSolvit asks the Court to make inferences that are patently *unreasonable*, because they do not reflect the law of government contracts that applies to the contract work involved. The hinge-point of VSolvit's allegations is that the VSolvit team and the Sohum/CITI team "were the top two ranked teams for the Beech procurement," and that, if they had instead been the same team, they necessarily "would have won" the award. Am. Compl. (ECF No. 44) at ¶ 113. But accepting this assertion as true requires the Court to make assumptions about the actions that the government might have taken, in the absence of Sohum and/or CITI; whether other contractors might have decided to enter the competition and submit proposals; and even what Plaintiff and Defendants would have done with respect to a joint proposal had they remained on the same team. There can be no "reasonable inference" that Plaintiff would necessarily have won the Beech contract even if it were at the head of a team that included the Defendants. To claim that the formation of a team would "unmistakably" lead to the award of a contract, with nothing to go on except the results of a different competition, is not an *allegation*; it is a *conclusion*, one for which Plaintiff has not shown the necessary preliminary steps.

The Amended Complaint likewise asserts as fact that Defendants' termination of the Agreement led directly to VSolvit's loss of profits from the Beech contract. *Id.* at ¶¶ 125–27. But this assumes that VSolvit and Defendants, if teamed, would have won the contract. And it assumes that, following award, VSolvit would have received the entire amount of the profit it projected for the Beech Solicitation.

As explained below, this assumption is unfounded, as the government has the right to terminate a contract for convenience at any time. There can be no "reasonable inference" that, even if awarded the Beech contract, Plaintiff would have received the amount that it now seeks as lost profits. This is speculative *conclusion*, not a *factual allegation* the Court must assume is true in deciding this motion.

### C. Plaintiff's Alleged Expectation Damages Are Inherently Speculative and Cannot Form the Basis of a Valid Claim.

In their motion, Defendants rely upon *Dynalectric Co. of Nev. v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286 (Nev. 2011) for the proposition that it is impossible for VSolvit to plead (or prove) damages—a required element of a contract claim—above the level of speculation. *See* Mot. (ECF No. 45) at 18–20. Under *Dynalectric*, VSolvit must have a reference point to measure lost profits—a replacement contract to measure against the promised contract. In response, VSolvit tries to distinguish *Dynalectric*[2] and advances four different arguments for why it believes it has plausibly alleged damages. These arguments have no merit.

#### 1. VSolvit Cannot Rely on the PARMO Contracts to Prove Its Damages.

The Amended Complaint allege no facts on how VSolvit's damages should be measured. The closest that VSolvit gets is to argue that damages should be measured by analogy to Defendants' pre-Beech Solicitation work on the PARMO contract. However, the Agreement, by its own terms, limited its applicability to work on a contract awarded under the Beech Solicitation, which was issued in June

---

[2] Plaintiff's argument that *Dynalectric* is inapposite, because it deals with a promissory estoppel cause of action, is entirely misplaced. The case makes clear that the theory of recovery discussed is the same as this case, expectation damages. *See Dynalectric, supra,* 255 P.3d at 289–291.

2023 and canceled on April 5, 2024. VSolvit's proposed measure of damages, therefore, is excluded by the terms of the contract Plaintiff seeks to enforce.

In any event, under *Dynalectric*, relying on the PARMO contract to calculate lost profits for the Beech contract fails because, as VSolvit admits, PARMO was only part of the task orders that were consolidated to form the work covered by the Beech contract (Am. Compl. (ECF No. 44) at ¶ 36), and the PARMO contract was not a "replacement" contract for the Beech contract. In fact, it preceded Beech and was awarded under entirely different circumstances. Therefore, the PARMO contract cannot function as a comparator under *Dynalectric*.

### 2. VSolvit's Damages Claim Cannot Rely on the Unawarded Beech Contract or any Successor, Because It Could Be Terminated at Any Time By the Government.

Nor can VSolvit measure damages by the Beech contract itself, which, as Plaintiff itself has conceded, is likely never to be awarded. Moreover, VSolvit's argument ignores the fact that *both* contracts at issue in its damages claims—the Agreement and any resulting prime contract—are terminable at the will of one or more of the parties and are thus cannot support expectation damages under Nevada law. *See Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984) (*per curiam*); *see also Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (confirming that *Dalton* applies to "unearned profits").

The reason for this rule is clear. Under long-established precedents, government contracts are terminable at the government's convenience, in which event anticipatory profits are not available, without regard to the contractor's performance. *See, e.g., Kalvar Corp., Inc. v. United States*, 211 Ct. Cl. 192, 202 (1976). When invoked, a contractor may seek anticipatory profits only if it can show

the government acted in bad faith or abused its discretion to terminate the contract for convenience. *See, e.g., Boarhog LLC v. United States*, 129 Fed. Cl. 130 (2016).

Plaintiff's argument that, even if its contract were terminated for convenience, "VSolvit would nevertheless suffer damages," is both speculative and wrong as a matter of law. The contract could be terminated before performance begins, on the first day of performance, or half way to completion. Whichever should happen, it is impossible to predict, in advance, what damages the plaintiff may have lost, as a result of being deprived the theoretical benefits of the terminable-at-will contract. Moreover, in the event of a termination for convenience, VSolvit would not be entitled to recover anticipatory profits on work not done and thus there can never be any assurance that the plaintiff will incur any damages, much less the amount of profits that would flow from performance of the entire contract for its term. *See* 48 C.F.R. (Federal Acquisition Regulation ("FAR")) § 49.201. Thus, VSolvit's damages argument thus depends upon the assumptions not only that Plaintiff would have been *awarded* the Beech contract, but also that Plaintiff would have *completed* it, and thus that Plaintiff is entitled to lost profits of the *entire projected life* of that contract. This is unfounded speculation and would be an unreasonable inference from the actual facts alleged in the Amended Complaint.

**3.     Nominal Damages Are Not a Substitute for Otherwise Speculative Expectation Damages.**

VSolvit's argument that it can recover nominal damages cannot save Counts I and II from mootness or from failure to state a claim. The cases VSolvit cites for this point allowed nominal damages only *after* deciding that the evidence offered was insufficient to support an award of the damages claimed. *See Gramanz*

*v. T-Shirts & Souvenirs, Inc.*, 894 P.2d 342, 343 (Nev. 1995) (reversing the award of the trial court with respect to the award of damages and stating "[w]e conclude that only nominal damages are warranted because no evidentiary basis exists for the $345,000 damages award entered by the district court."); *id.* at 347 ("The evidence does not, however, provide the required evidentiary basis for determining a reasonably accurate award of damages…We therefore conclude that T-Shirts is entitled only to nominal damages."); *Wade v. Univ. Med. Ctr. of S. Nev.*, Case No. 2:18-cv-1927-RFB-EJY, 2023 WL 9598746, at *5 (D. Nev. Feb. 13, 2023) (awarding nominal as "a generally accepted remedy" appropriate for violations of the Rehabilitation Act after plaintiff was unable to provide evidence support other damages); *Martin v. Clark Cnty.*, Case No. 2:19-cv-01623-APG-DJA, 2022 WL 16964649, at *1 (D. Nev. Nov. 15, 2022) (awarding nominal damages on summary judgment because the movant had not "offered an evidentiary basis for determining a reasonably accurate valuation" of damages).

In these cases, the court awarded nominal damages only when the evidence proffered by the plaintiff failed. In no case were plaintiffs allowed in advance to substitute nominal damages for their obligation to allege and prove contract-based damages claims that are not purely speculative.

### 4. Attorney Fees VSolvit Incurred for Bid Protests Are Not Recoverable As Expectation Damages.

Finally, VSolvit cannot recover, as a component of expectation damages, the attorney fees it incurred when it twice protested the USDA's

procurement actions under the now-canceled Beech Solicitation.[3] VSolvit's argument on this issue misreads the *Sandy Valley* line of cases. "Nevada adheres to the American Rule that attorney fees may only be awarded when authorized by statute, rule or agreement," and *Sandy Valley* "recognized" one "exception" to this rule, "for attorney fees as special damages." *Pardee Homes of Nevada v. Wolfram*, 444 P.3d 423, 426 (Nev. 2019) (citing *Thomas v. City of N. Las Vegas*, 127 P.3d 1057, 1063 (Nev. 2006); *Sandy Valley Assocs. v. Sky Ranch Ests. Owners Ass'n*, 35 P.3d 964, 971 (Nev. 2001)). But *Pardee Homes* rejected the theory that "any breach-of-contract suit would warrant attorney fees as special damages because it would be foreseeable that an aggrieved party would retain the services of an attorney to remedy a breach," explaining instead that "*Sandy Valley*'s holding embraced the general concept that attorneys' fees as special damages, as with any other item of damages, must be pleaded and proven by competent evidence."[4] *Id.* at 426. The amended complaint contains no allegation—or even mention of—attorneys' fees as special damages.  And the Nevada Supreme Court was emphatic that, "to the extent *Sandy Valley* has been read to broadly allow attorney fees as special damages

---

[3] The Amended Complaint alleges that "After [the January 9, 2024] corrective action, the USDA again awarded the Beech contract to the Sohum-CITI team." Am. Compl. (ECF No. 44) at ¶120.  This is incorrect.  VSolvit's second protest, on February 23, 2024, was filed prior to any second award to Sohum-CITI.

[4] The *unpublished* decision upon which Plaintiff relies to make its attorney's fees argument even recognized this development: "[T]he ability to recover…has been narrowed by requiring that the resulting attorney fees arise from more than simply the costs incurred as part of 'prosecuting a breach-of-contract action.'" *Mitchell v. Nype*, 517 P.3d 905 at *3 (Nev. Sept. 23, 2022) (unpublished table decision) (quoting *Pardee Homes*, 444 P.3d at 426).

*whenever the fees were a reasonably foreseeable consequence* of injurious conduct, *we disavow such a reading*."[5]  *Id.* (emphasis added).

Equally important, bid protests are not "mitigation" activities, as that term is understood in Nevada law.  As the *reversed* decision upon which VSolvit relies makes clear, one of the factors of a "mitigation" activity is that the activity "must be undertaken in a reasonably justified belief that it will avoid or reduce the damage otherwise to be expected from the defendant's wrongful acts."  *Women's Fed. Sav. & Loan Ass'n of Cleveland v. Nev. Nat'l Bank*, 607 F. Supp. 1129, 1135 (D. Nev. 1985), *rev'd on other grounds*, 811 F.2d 1255 (9th Cir. 1987) (citing *Tulsa Municipal Airport Trust v. Nat'l Gypsum Co.*, 551 P.2d 304, 311 (Okla. App. 1976)).  Bid protests, particularly at the United States Government Accountability Office ("GAO"), are a routine part of the Federal public procurement process and challenge decisions *of the government* in the solicitation and contract award process.  However, bid protests only rarely result in sustained protests, according to GAO data.[6]

Bid protests likewise fail to qualify as mitigation activities because they are not a vehicle for resolution of private disputes, which are excluded from bid protest jurisdiction.  *See, e.g., IBM Corp.*, B-415798.2, Feb. 14, 2019, 2019 CPD ¶ 82 at 7.  VSolvit thus would not have been "reasonably justified" in a "belief" that

---

[5] The "Disputes" clause of the Agreement (Art. 14), provides only for the recovery of reasonable attorney fees by the prevailing party in a litigation or arbitration between the parties.  The Disputes clause does not authorize recovery of the bid protest attorney fees that VSolvit seeks to recover *as damages* in this case.

[6] *See GAO Bid Protest Annual Report to Congress for Fiscal Year 2023*, GAO-24-900538 at 4 (showing that between fiscal years 2019 and 2022, sustains constituted 13% to 15% of protests resolved on the merits each year).

it could "avoid or reduce the damage" of Defendants' alleged breach by bringing a bid protest against the Beech contract award.

## III. CONCLUSION

For these reasons, the Court should dismiss Counts I and II of the Amended Complaint, with prejudice.

KAEMPFER CROWELL

Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

HOLLAND & KNIGHT
Thomas Brownell (*pro hac vice*)
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102

Attorneys for Defendants Sohum Systems, LLC and Creative Information Technology, Inc.

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Kaempfer Crowell and that service of the **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 44)** was made on today's date by submitting electronically for filing and service with the United States District Court for the District of Nevada through the PACER Electronic Filing System to the addressee(s) shown below:

| | |
|---|---|
| Maurice B. VerStandig, No. 15346<br>THE VERSTANDIG LAW FIRM, LLC<br>1452 W. Horizon Ridge Pkwy, Suite 665<br>Henderson, Nevada 89012<br>mac@mbvesq.com | Matthew E. Feinberg *(pro hac vice)*<br>Todd Reinecker *(pro hac vice)*<br>Mansitan Sow *(pro hac vice)*<br>Matthew T. Healy *(pro hac vice)*<br>PILIERO MAZZA PLLC<br>1001 G Street, NW, Suite 1100<br>Washington, D.C. 20001<br>mfeinberg@pilieromazza.com<br>trienecker@pilieromazza.com<br>msow@pilieromazza.com<br>mhealy@pilieromazza.com |
| Christian T. Balducci, No. 12688<br>Tabetha J. Steinberg, No. 16756<br>MARQUIS AURBACH<br>10001 Park Run Drive<br>Las Vegas, Nevada 89145<br>cbalducci@maclaw.com<br>tsteinberg@maclaw.com | |
| Attorneys for Plaintiff<br>VSolvit LLC | Attorneys for Plaintiff<br>VSolvit LLC |

DATED November 1, 2024

_____
Desiree Endres
An employee of Kaempfer Crowell