# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

VSolvit, LLC,

      Plaintiff

v.

Sohum Systems, LLC and Creative
Information Technology, Inc.,

      Defendants

Case No.: 2:23-cv-00454-JAD-DJA

**Order Denying Defendants'
Motion to Dismiss**

[ECF No. 45]

Plaintiff VSolvit, LLC sues Sohum Systems, LLC and Creative Information Technology, Inc. (CITI), alleging violations of the parties' "teaming agreement" to submit a joint bid for a United States Department of Agriculture (USDA) contract.[1]  According to the amended complaint, the teaming agreement required exclusivity among the parties with respect to the bid, and the defendants breached that agreement by pursuing the bid without VSolvit[2] and continuing to access confidential information that VSolvit shared in preparation for their joint bid.[3]

The defendants move to dismiss VSolvit's amended complaint, arguing that the USDA's cancelation of the contract at issue moots VSolvit's claims and that VSolvit has not sufficiently pled causation or damages beyond a speculative level.[4]  VSolvit responds that the defendants have not met their "heavy burden" of "establishing that there is no effective relief that the court can provide"[5] and that it has plausibly alleged causation and damages sufficient to survive a

---

[1] ECF No. 44.

[2] *Id.* at 9, 11, ¶¶ 50, 67, 68.

[3] *Id.* at 12, ¶ 78.

[4] *Id.* at 14–15.

[5] ECF No. 49 at 8.

motion to dismiss.[6]  Although the USDA's cancelation of the contract may foreclose VSolvit's

theory that the defendants' actions caused it to lose the ultimate benefits of that contract, I find

that VSolvit has adequately pled facts showing that the breach caused other damages before the

USDA's cancelation, so its claims as pled are not moot.  I thus deny the motion to dismiss.

**Background**

**A.**   **VSolvit, Sohum, and CITI enter into a teaming agreement containing an exclusivity clause.**

VSolvit, Sohum, and CITI are information-technology companies that regularly bid on

government contracts.[7]  VSolvit is designated as a small business under the government's

contracting scheme, allowing it to bid on contracts with specific small-business designations.[8]  In

June 2022, the parties became aware of an upcoming contract solicitation by the USDA (labeled

by the parties as the "Beech solicitation") and entered into a teaming agreement, memorializing

their intent to submit a joint bid.[9]  The agreement gives VSolvit the authority to designate the

prime contractor for the bid and it chose itself, relegating CITI and Sohum to subcontractor

positions.[10]

The contract contains an exclusivity clause, which barred Sohum and CITI from making

any other teaming arrangement for this program:

> 1.3 Exclusivity: Under this Agreement, Subcontractors and Prime Contractor
> commit to an exclusive agreement for Subcontractors to support Prime
> Contractor.  Subcontractors shall not act as a Prime offeror, have not entered into
> any teaming arrangements with other offerors under the Program prior to this

---

[6] *Id.* at 14–22.

[7] ECF No. 44 at 18–19, ¶¶ 22, 25, 28.

[8] *Id.* at 6, ¶ 31.

[9] *Id.* at 8, ¶ 47; ECF No. 44-1 (teaming agreement).

[10] ECF No. 44 at 9–10, ¶¶ 55, 56.

Agreement, nor will they enter into any teaming arrangements with other offerors under the Program after this Agreement, and that they shall otherwise be teamed exclusively with Prime Contractor with regards to the Program. . . . Subcontractors agree that this restriction is reasonable and agreed to by Subcontractors in consideration for Prime Contractor's execution of this Agreement.[11]

It also contains a termination-for-convenience clause, stating that "any party may, for its convenience, terminate this agreement, or any portion thereof, upon written notice to the other parties."[12]  And it has a survivability clause, which provides that "Articles 4, 6, 7, 12, 13, and 14, as well as the NDA obligations . . . shall survive the termination of this agreement."[13]  The exclusivity agreement, found in Article 1, is not one of the provisions enumerated in the survivability clause.

**B.    After the defendants terminate the agreement, the parties submit separate bids to the USDA, and VSolvit sues Sohum and CITI.**

For nearly eight months, VSolvit, Sohum, and CITI collaborated on their joint bid.[14]  But VSolvit also entered into a separate teaming agreement with a different entity—Science Application International Corporation (SAIC)—to pursue the Beech solicitation, "with SAIC to act as a separate subcontractor to VSolvit."[15]  On February 9, 2023, Sohum and CITI sent VSolvit separate emails stating their desire to terminate the teaming agreement under the contract's termination-for-convenience clause.[16]  Sohum and CITI indicated that they wanted to

---

[11] ECF No. 44-1 at § 1.3.

[12] *Id.* at § 10.4 (cleaned up).

[13] *Id.* at § 15.10.

[14] ECF No. 44 at 10, ¶ 63.

[15] *Id.* at ¶ 56.

[16] *Id.* at 11, ¶ 67.

form a new teaming agreement with Sohum as the prime contractor and CITI and VSolvit as subcontractors, and they also "desire[d] to engage SAIC as a subcontractor," despite the fact that SAIC had an exclusivity agreement with VSolvit.[17]  On February 11, 2023, VSolvit informed Sohum and CITI that it did not agree to their proposed arrangement.[18]  VSolvit demanded that the defendants cure their breach of the exclusivity agreement and continue to act as subcontractors for the Sohum-CITI joint bid, but the defendants refused.[19]

When the Beech bids were due, Sohum submitted a bid that did not include VSolvit, naming CITI as the prime subcontractor.[20]  VSolvit submitted a separate bid, in which Sohum and CITI did not participate.[21]  In March 2023, VSolvit sued Sohum and CITI for, among other claims, anticipatory breach of contract and breach of the implied covenant of good faith and fair dealing.[22]  VSolvit alleged that the Sohum-CITI submission anticipatorily breached their tripartite teaming agreement because it prohibited Sohum from "act[ing] as a Prime offeror" for the Beech solicitation and required Sohum and CITI's exclusivity with VSolvit.[23]

**C.    The USDA cancels the Beech solicitation, VSolvit amends its complaint, and the defendants move to dismiss.**

The VSolvit bid and the Sohum-CITI bid were the only two bids to advance to the second phase of the Beech solicitation procurement process,[24] and on September 20, 2023, the USDA

---

[17] *Id.* at ¶¶ 67–68.

[18] *Id.* at 12, ¶ 73.

[19] *Id.* at ¶ 75.

[20] *Id.* at ¶ 78.

[21] *Id.* at ¶ 79.

[22] ECF No. 1.

[23] *Id.* at 18, ¶ 105.

[24] *Id.* at ¶¶ 111, 112.

notified VSolvit that it had awarded the Beech contract to the Sohum-CITI team.[25]  VSolvit filed a bid protest, challenging the award.[26]  In January 2024, the USDA issued a notice of corrective action, permitting the submission of new price proposals.[27]  The Sohum-CITI team was again awarded the contract, and in February 2024, VSolvit filed another bid protest.[28]

A month later, the USDA provided notice that it intended to cancel the Beech solicitation "for purposes of re-evaluating the agency's contract requirements."[29]  The USDA later notified VSolvit that the agency intended to procure the Beech project through a new solicitation.[30]  After the USDA canceled the Beech solicitation, VSolvit amended its complaint to add that factual development.[31]  And it swapped out its anticipatory-breach-of-contract claim for a breach-of-contract claim.[32]  VSolvit theorizes that, had Sohum and CITI met their exclusivity obligations under the agreement, VSolvit would have been awarded the Beech contract, with Sohum and CITI as subcontractors.[33]  It further claims that Sohum and CITI's breach of the teaming agreement resulted in VSolvit's loss of the Beech contract-associated revenues and profits, costs associated with the bid protests, and other damages.[34]  Sohum and CITI now move to dismiss VSolvit's amended complaint, arguing that there is no case or controversy for this court to

---

[25] *Id.* at ¶ 116.

[26] *Id.* at ¶ 115.

[27] *Id.* at ¶ 119.

[28] *Id.* at ¶¶ 120–121.

[29] *Id.* at ¶ 122.

[30] *Id.* at ¶ 124.

[31] ECF No. 42 at 3; ECF No. 43.

[32] ECF No. 1 at 16; ECF No. 44 at 20.

[33] ECF No. 44 at 19, ¶ 126.

[34] *Id.* at ¶ 127.

1  exercise jurisdiction over because the teaming agreement was mooted by the USDA's

2  cancelation of the bid-solicitation process, and that VSolvit has not stated a claim upon which

3  relief may be granted because it failed to adequately plead facts supporting the causation and

4  damages elements of these contract claims.

**Discussion**

5

6  **A.   The defendants fail to establish that VSolvit's amended complaint should be**

7       **dismissed on mootness grounds.**

8       The defendants argue that, because the Beech solicitation was canceled by the USDA,

9  this case is now moot.[35]  They theorize that the cancelation of the Beech solicitation effectively

10 terminated the teaming agreement and that, regardless, the teaming agreement "timed out," so

11 the live case or controversy has "gone away."[36]  VSolvit counters that the defendants have failed

12 to carry their "heavy burden" to show that no live controversy remains and insists that it "would

13 still have a valid breach-of-contract claim under Nevada law and could recover" despite the

14 government canceling the Beech solicitation.[37]

15       Courts must "determine only actual matters in controversy essential to the decision of the

16 particular case before it,"[38] and that "controversy must be definite and concrete, touching the

17 legal relations of parties having adverse legal interests."[39]  A case becomes moot when a live

18 controversy does not exist such that it is "impossible for a court to grant any effectual relief

19

20

---

21 [35] ECF No. 45 at 3.

   [36] *Id.* at 13.

22 [37] *Id.* at 3 (cleaned up).

23 [38] *United States v. Alaska S.S. Co.*, 253 U.S. 113, 115 (1920).

   [39] *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937).

whatever to the prevailing party."[40]  So a case is not moot as long as the parties have a concrete

interest in the outcome of the litigation.[41]  The party alleging mootness bears the "heavy burden"

of "establishing that there is no effective relief that the court can provide."[42]

I find that there is an existing controversy here such that VSolvit's claims are not entirely

moot.  The defendants' arguments boil down to the assertion that because the teaming agreement

would have been terminated by now—either by the government's cancelation of the Beech

solicitation or by the operation of other clauses in the agreement—Vsolvit cannot maintain an

action for the defendants' breach of the teaming agreement.  But even if the defendants are

correct that the teaming agreement was mooted by the USDA's cancelation, VSolvit's claims

encompass injuries that predate that development.  VSolvit alleges that its damages from the

breach include the attorneys' fees and costs it had to expend on its bid protests.[43]  These damages

relate to events that occurred before the USDA canceled the Beech solicitation,[44] so a live

controversy remains.  I thus deny the defendants' request to dismiss the claims in the amended

complaint as moot.

**B.    VSolvit has sufficiently pled claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Sohum and CITI.**

The defendants next argue that VSolvit's amended complaint should be dismissed for the

second reason that VSolvit has not adequately plead the causation and damages elements of its

contract claims.  Federal Rule of Civil Procedure 8 requires a complaint to contain "[a] short and

---

[40] *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (cleaned up).

[41] *Chafin v. Chafin*, 568 U.S. 165, 173 (2013).

[42] *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006).

[43] ECF No. 44 at 19, ¶ 127.

[44] *Id.* at 18, ¶¶ 115–123.

1   plain statement of the claim showing that the pleader is entitled to relief" to make it past a

2   motion to dismiss.[45]  And while Rule 8 does not require detailed factual allegations, a properly

3   pled complaint must contain enough facts to "state a claim to relief that is plausible on its

4   face."[46]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me

5   accusation"; the facts alleged must raise the claim "above the speculative level."[47]  In other

6   words, a complaint must make direct or inferential allegations about "all the material elements

7   necessary to sustain recovery under *some* viable legal theory."[48]

8          District courts employ a two-step approach when evaluating a complaint's sufficiency on

9   a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual

10  allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

11  of truth.[49]  Mere recitals of a claim's elements, supported by only conclusory statements, are

12  insufficient.[50]  The court must then consider whether the well-pled factual allegations state a

13  plausible claim for relief.[51]  A claim is facially plausible when the complaint alleges facts that

14  allow the court to draw a reasonable inference that the defendant is liable for the alleged

15  misconduct.[52]

16

17

---

18  [45] Fed R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

19  [46] *Twombly*, 550 U.S. at 570.

20  [47] *Iqbal*, 556 U.S. at 678.

    [48] *Twombly*, 550 U.S. at 592 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106
21  (7th Cir. 1984)).

    [49] *Iqbal*, 556 U.S. at 678–79.

22  [50] *Id.*

23  [51] *Id.* at 679.

    [52] *Id.*

VSolvit asserts two claims in its amended complaint: breach of contract and breach of the implied covenant of good faith and fair dealing.[53] "Under Nevada law, 'the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.'"[54] To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead facts showing: (1) the existence of a contract between the parties, (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract, and (3) that the plaintiff was denied its justified expectations from the contract.[55]

The defendants contend that VSolvit's claims must be dismissed because it cannot prove causation. In the amended complaint, VSolvit alleges that it suffered various damages resulting from the defendants' conduct, "including but not limited to the loss of the Beech contract and all revenues and profits associated therewith."[56] The defendants contend that VSolvit cannot prove that it would necessarily have been awarded the Beech contract, and regardless, the government could have canceled the solicitation for any reason separate from the parties' agreement—and it did.[57] According to the defendants, VSolvit's contract claims "depend on a causal chain that is entirely speculative and that does not take into account the uncertainties of bidding in the government procurement space."[58] And because "the government has the right to terminate a

---

[53] ECF No. 44 at 21–25.

[54] *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919–20 (D. Nev. 2006)).

[55] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

[56] ECF No. 44 at 19, ¶ 128.

[57] ECF No. 45 at 16.

[58] *Id.* at 16.

contract for convenience at any time," a jury could not draw a reasonable inference "that, even if
awarded the Beech contract, [VSolvit] would have received the amount it now seeks as lost
profits."[59]   The defendants further argue that the USDA's cancelation of the Beech contract
"make[s] it impossible for VSolvit to plead (or prove) damages . . . above the level of pure
speculation."[60]   VSolvit counters that it does not need to "prove" anything at the motion-to-
dismiss stage and that it has sufficiently pled facts that, taken as true, meet all elements of these
causes of action.[61]

        It is true that VSolvit does not need to prove anything at the motion to dismiss stage;[62]
"it need only allege sufficient facts, taken as true, to meet the elements of its cause of action."[63]
But even if all of VSolvit's factual allegations are taken as true, as is required at this stage of the
proceedings, it has still failed to plausibly allege that it would have been awarded the Beech
contract if not for the defendants' alleged breach.   VSolvit argues that its amended complaint
sufficiently shows that it would have gotten the Beech contract but for the defendants' conduct.
But its amended complaint includes a factual allegation demonstrating that VSolvit did not get
the Beech contract for another reason—that the government "intended to cancel the Beech
solicitation for purposes of re-evaluating the agency's contract requirements."[64]   Taking that
allegation as true, VSolvit cannot establish that, absent the defendants' breach, it would have
been the prime contract awardee on the Beech contract.   And any conclusion that it was the

---

[59] ECF No. 50 at 7.

[60] ECF No. 45 at 19.

[61] ECF No. 49 at 16.

[62] *Id.* at 16.

[63] *Id.*

[64] ECF No. 44 at 18, ¶ 122.

defendants' conduct that caused the USDA to re-evaluate the agency's contract requirements would be pure speculation on the facts alleged. So I find that VSolvit has not sufficiently alleged facts that demonstrate a causal connection between the defendants' breach and the ultimate loss of the Beech contract.

But the loss of the contract and its benefits isn't VSolvit's only alleged injury. VSolvit also alleges that the defendants' breach caused it to incur "costs associated with all bid protests," "attorneys' fees incurred to resolve the agency's . . . award to the Sohum-CITI team," and "other damages."[65] I find it plausible from the face of VSolvit's complaint that these damages resulted from the alleged breach, and the defendants do not argue otherwise. So VSolvit has adequately pled the causation element of its contract claims based on these other damage theories.

The defendants argue that VSolvit can't recover the attorneys' fees incurred in submitting its bid protests because "the amended complaint contains no allegation—or even mention of— attorneys' fees as special damages."[66] But they misapply this special-damages rule in making this argument. The rule in Nevada is that attorneys' fees may not be awarded as special damages if "a plaintiff merely seeks to recover fees incurred for prosecuting a breach-of-contract action against a breaching defendant," but they may be recovered as special damages, pleaded as an element of a cause of action.[67] And VSolvit has done that here. It alleges in its amended complaint that it "suffered damages, including . . . the costs associated with all bid protests (including attorneys' fees incurred to resolve the agency's incorrect and unlawful award to the

---

[65] *Id.* at ¶ 127.

[66] ECF No. 50 at 11.

[67] *Pardee Homes of Nevada v. Wolfram*, 444 P.3d 423, 426 (Nev. 2019); *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 35 P.3d 964, 969 (Nev. 2001).

Sohum-CITI team)."[68]  So, because VSolvit is not "merely seek[ing] to recover fees incurred for prosecuting [the] breach of contract action," it has sufficiently pled attorneys' fees as special damages to survive this motion to dismiss.[69]

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 45] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
April 23, 2025

---

[68] ECF No. 44 at 19, ¶¶ 127, 128.

[69] *Wolfram*, 444 P.3d at 426 (Nev. 2019).